**UNITED STATES BANKRUPTCY COURT**
**FOR THE WESTERN DISTRICT OF MICHIGAN**

In re:                                          **CHAPTER 11**

**FAMILY CHRISTIAN, LLC** *et al.* [1]            **CASE NO. 15-00643-jtg**
                                                **(Joint Administration)**

                    **Debtors.**

_____/             **HON. JOHN T. GREGG**


**DEBTORS' THIRD AMENDED JOINT PLAN OF LIQUIDATION**


KELLER & ALMASSIAN, PLC
A. Todd Almassian (P55467)
Greg J. Ekdahl (P67768)
230 East Fulton
Grand Rapids, MI 49503
(616) 364-2100

- and -

BURR & FORMAN LLP
Erich N. Durlacher (Ga Bar No. 235563)
Brad A. Baldwin (Ga Bar No. 034220)
171  17th Street, N.W. - Suite 1100
Atlanta, Georgia  30363
(404) 815-3000
*Attorneys for the Debtors*

---

[1]    The Debtors are: Family Christian, LLC(Case No. 15-00643-jtg), Family Christian Holding, LLC (Case No. 15-00642-jtg), and FCS Giftco, LLC (Case No. 15-00644-jtg).

## TABLE OF CONTENTS

| | | |
|---|---|---|
| **ARTICLE 1** | **DEFINITIONS AND GENERAL PROVISIONS** | **1** |
| 1.1 | DEFINITIONS | 1 |
| 1.2 | TIME | 9 |
| 1.3 | RULES OF CONSTRUCTION | 9 |
| **ARTICLE 2** | **TREATMENT OF NON-CLASSIFIED CLAIMS** | **10** |
| 2.1 | PRIORITY TAX CLAIMS | 10 |
| 2.2 | ADMINISTRATIVE EXPENSE CLAIMS | 10 |
| **ARTICLE 3** | **CLASSIFICATION AND TREATMENT OF CLAIMS** | **11** |
| 3.1 | CLASSES OF CLAIMS AND INTEREST | 11 |
| 3.2 | CLASS 1: PRIORITY NON-TAX CLAIMS | 12 |
| 3.3 | CLASS 2: SENIOR LENDER SECURED CLAIM | 12 |
| 3.4 | CLASS 3 TERM LENDER SECURED CLAIM | 12 |
| 3.5 | CLASS 4 CONSIGNMENT CLAIMS | 13 |
| 3.6 | CLASS 5: SECURED TAX CLAIMS | 14 |
| 3.7 | CLASS 6: MISCELLANEOUS SECURED CLAIMS | 15 |
| 3.8 | CLASS 7: UNSECURED CLAIMS | 15 |
| 3.9 | CLASS 8: EQUITY INTERESTS | 16 |
| 3.10 | RESERVATION | 16 |
| **ARTICLE 4** | **ACCEPTANCE OR REJECTION OF PLAN** | **16** |
| 4.1 | IMPAIRED CLASSES ENTITLED TO VOTE | 16 |
| 4.2 | UNIMPAIRED CLASSES PRESUMED TO ACCEPT PLAN | 16 |
| 4.3 | IMPAIRED CLASSES PRESUMED TO REJECT PLAN | 16 |
| 4.4 | ESTIMATION OF CLAIMS FOR VOTING PURPOSES | 17 |
| 4.5 | DESIGNATION OF VOTES | 17 |
| 4.6 | CRAMDOWN | 17 |
| **ARTICLE 5** | **EXECUTORY CONTRACTS AND UNEXPIRED LEASES** | **17** |
| 5.1 | GENERAL INFORMATION | 17 |
| 5.2 | TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES | 17 |
| **ARTICLE 6** | **MEANS FOR THE IMPLEMENTATION OF THE PLAN** | **19** |
| 6.1 | THE SALE | 19 |
| 6.2 | REVESTING OF PROPERTY IN THE ESTATE | 20 |
| 6.3 | PLAN ADMINISTRATOR | 20 |
| 6.4 | DISSOLUTION OF THE DEBTORS | 21 |
| 6.5 | DISSOLUTION OF THE COMMITTEE | 22 |
| 6.6 | CLAIMS OVERSIGHT COMMITTEE | 22 |
| 6.7 | CAUSES OF ACTION AND SETTLEMENT | 22 |
| 6.8 | FURTHER AUTHORIZATION | 24 |
| **ARTICLE 7** | **DISTRIBUTIONS** | **24** |
| 7.1 | DISBURSING AGENT | 24 |
| 7.2 | DISTRIBUTIONS OF CASH | 25 |
| 7.3 | DELIVERY OF DISTRIBUTIONS | 25 |
| 7.4 | UNCLAIMED DISTRIBUTIONS | 25 |
| 7.5 | DISTRIBUTIONS TO HOLDERS AS OF THE RECORD DATE | 25 |

i

| | | |
|---|---|---|
| 7.6 | FRACTIONAL DOLLARS | 25 |
| 7.7 | WITHHOLDING TAXES | 25 |
| **ARTICLE 8** | **PROVISIONS REGARDING DISPUTED CLAIMS** | **25** |
| 8.1 | OBJECTIONS TO CLAIMS | 25 |
| 8.2 | NO DISTRIBUTIONS PENDING ALLOWANCE | 26 |
| 8.3 | SETTLEMENTS | 26 |
| 8.4 | SETOFFS | 26 |
| **ARTICLE 9** | **CONDITIONS TO CONFIRMATION AND CONSUMMATION OF THE PLAN** | **26** |
| 9.1 | CONDITIONS TO CONFIRMATION | 26 |
| 9.2 | CONDITIONS TO THE EFFECTIVE DATE | 26 |
| 9.3 | WAIVER OF CONDITIONS | 27 |
| 9.4 | EFFECTS OF FAILURE OF CONDITION | 27 |
| **ARTICLE 10** | **EFFECT OF CONFIRMATION** | **27** |
| 10.1 | INJUNCTION | 27 |
| 10.2 | EXCULPATION AND LIMITATION OF LIABILITY | 27 |
| **ARTICLE 11** | **RETENTION OF JURISDICTION** | **28** |
| 11.1 | RETENTION OF JURISDICTION | 28 |
| 11.2 | ALTERNATIVE JURISDICTION | 29 |
| 11.3 | FINAL DECREE | 29 |
| **ARTICLE 12** | **MISCELLANEOUS PROVISIONS** | **29** |
| 12.1 | MODIFICATION OF THE PLAN | 29 |
| 12.2 | SUBSTANTIVE CONSOLIDATION | 30 |
| 12.3 | PERSONALLY IDENTIFIABLE INFORMATION OF CUSTOMERS | 30 |
| 12.4 | PREPARATION OF TAX RETURNS | 30 |
| 12.5 | HEADINGS | 30 |
| 12.6 | REVOCATION OF PLAN | 30 |
| 12.7 | NO ADMISSIONS; OBJECTION TO CLAIMS | 31 |
| 12.8 | NO BAR TO SUITS | 31 |
| 12.9 | EXHIBITS/SCHEDULES | 31 |
| 12.10 | FURTHER ASSURANCES | 31 |
| 12.11 | DISCLAIMER REGARDING TAX CONSEQUENCES | 31 |
| 12.12 | SUBSEQUENT CONVERSION | 31 |
| 12.13 | UNITED STATES TRUSTEE FEES | 31 |
| 12.14 | POST EFFECTIVE DATE DISPUTES | 32 |
| 12.15 | NAME CHANGE | 32 |
| 12.16 | CLOSING OF CASES | 32 |
| 12.17 | CONFLICTS IN DOCUMENTS | 32 |

Family Christian, LLC and its debtor Affiliates (the "Debtors") hereby propose this Plan for the resolution of the Claims against, and Interests in, the Debtors, pursuant to Chapter 11 of the Bankruptcy Code and the Rule 3016 of the Bankruptcy Rules.

THE PROPOSED DISCLOSURE STATEMENT FILED AND SERVED CONCURRENTLY HEREWITH HAS NOT BEEN APPROVED BY THE BANKRUPTCY COURT ON A FINAL BASIS UNDER SECTION 1125(b) OF THE BANKRUPTCY CODE AS CONTAINING ADEQUATE INFORMATION IN CONNECTION WITH THE SOLICITATION OF ACCEPTANCES OR REJECTIONS OF THE PLAN DESCRIBED HEREIN. THE FILING AND DISSEMINATION OF THE PROPOSED DISCLOSURE STATEMENT AND PLAN SHOULD NOT BE CONSTRUED AS FINAL APPROVAL OF THE DISCLOSURE STATEMENT BY THE BANKRUPTCY COURT.

## ARTICLE 1
## DEFINITIONS AND GENERAL PROVISIONS

**1.1** <u>**Definitions**</u>. Any term that is not defined herein, but is defined in the Bankruptcy Code or the Bankruptcy Rules, shall have the meaning ascribed therein for such term. Otherwise, the following terms used in this Plan shall have the meanings set forth below:

1. "503(b)(9) Claims" means a Claim asserted against any of the Debtors pursuant to section 503(b)(9) of the Bankruptcy Code, including a 503(b)(9) Consignment Claim.

2. "*503(b)(9) Consignment Claims*" means a Claim asserted against any of the Debtors pursuant to section 503(b)(9) of the Bankruptcy Code that arise from Consignment Goods (including from those Consignment Goods that are determined by an Order of the Bankruptcy Court to be owned by the Debtors).

3. "*Administrative Expense Claim*" means a Claim arising prior to the Effective Date for payment of an administrative expense of a kind specified in section 503(b) of the Bankruptcy Code and entitled to priority pursuant to section 507(a)(2) of the Bankruptcy Code, including but not necessarily limited to, 503(b)(9) Claims and Professional Fee Claims.

4. "*Affiliate*" shall mean, with respect to any Person, (i) any direct or indirect subsidiary or parent of such Person, (ii) any other Person that directly, or through one or more intermediaries, controls or is controlled by or is under common control with such first Person, and (iii) any Person that would fall within the definition assigned to such term in section 101(2) of the Bankruptcy Code.

5. "*Allowed*" means all or that portion, as applicable, of any Claim against any of the Debtors or any Interests of the Debtors (i) that has been listed by the Debtors in the Schedules, as such Schedules may be amended by the Debtors from time to time, as liquidated in amount and not disputed or contingent, and for which no contrary or superseding Proof of Claim has been filed, (ii) that is liquidated, non-contingent and evidenced by a Proof of Claim (or Proof of Interest) which has

been timely filed prior to any deadline established by the Bar Date Order and as to which no objection has been interposed or filed by the Claims Objection Deadline, or (iii) that has been expressly allowed by Final Order of the Bankruptcy Court, that is resolved pursuant to the claims settlement procedures set forth in Article 8 of this Plan, that is otherwise allowed or resolved pursuant to the terms of this Plan, or that is the undisputed portion of a 503(b)(9) Claim.

6.    "*Allowed _____ Claim*" means a Claim of the particular type specified that is an Allowed Claim.  For example, an Allowed Priority Tax Claim is a Priority Tax Claim that is also an Allowed Claim.

7.    "*APA*" means the "Asset Purchase Agreement" between the Debtors and Buyer for the sale of the Assets to the Buyer, as such agreement may be modified from time to time, a copy of which is attached to the Disclosure Statement as **Exhibit "B",** the terms of which are incorporated herein pursuant to Section 12.9.

8.    "*Assets*" means the assets of the Debtors described in Section 1.2 of the APA to be sold and transferred to Buyer pursuant to the APA.

9.    "*Assignment Effective Date*" has the meaning given to such term at Section 5.2(a) of this Plan and generally means the date that the assumption and assignment of an Executory Contract or Unexpired Lease becomes effective.

10.    "*Assumption Notice*" means the notice filed with the Bankruptcy Court by the Debtors and served upon contract counterparties for the purpose of notifying such counterparties of specific Executory Contracts and Unexpired Leases being assumed by the Debtors and assigned to the Buyer.

11.    "*Avoidance Action*" means any claim or cause of action of the Debtors' Estates arising out of or maintainable pursuant to Chapter 5 of the Bankruptcy Code, including sections 502, 510, 541, 542, 543, 544, 545, 547, 548, 549, 550, 551 or 553 of the Bankruptcy Code or any other similar applicable law, regardless of whether such action has been commenced prior to the Effective Date.

12.    "*Ballot*" means the form of ballot approved by the Bankruptcy Court for sending to Holders of Allowed Claims entitled to vote on the Plan for soliciting their acceptance or rejection of the Plan.

13.    "*Bankruptcy Case*" means the jointly administered chapter 11 case initiated by the Debtors' filing on the Petition Date of a voluntary petition for relief in the Bankruptcy Court under Chapter 11 of the Bankruptcy Code.

14.    "*Bankruptcy Code*" means title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq*.

15.    "*Bankruptcy Court*" means the United States Bankruptcy Court for the Western District of Michigan.

16.    "*Bankruptcy Rules*" means, collectively, the Federal Rules of Bankruptcy Procedure.

17.    "*Bar Date Orders*" means both (i) the order entered by the Bankruptcy Court [Docket No. 553] establishing June 9, 2015 as the general deadline for filing Claims against the Debtors by any entity other than governmental units, and establishing August 14, 2015 as the deadline for governmental units to file Claims, and (ii) the order entered by the Bankruptcy Court [Docket No. 554] establishing May 8, 2015 as the general deadline for filing 503(b)(9) Claims.

18.    "*Bar Date(s)*" means the dates established by the Bar Date Orders for filing Claims against the Debtors.

19.    "*Business Day*" means any day other than a Saturday, Sunday or a legal holiday on which the commercial banks are closed for business in Atlanta, Georgia.

20.    "*Buyer*" means FCS Acquisition, LLC, the buyer under the APA.

21.    "*Cash*" means legal tender of the United States of America and equivalents thereof.

22.    "*Causes of Action*" means all Avoidance Actions and any of the Debtors' actions, suits, accounts, agreements, promises, rights to payment and claims, whether known or unknown, reduced to judgment, not reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, secured, unsecured, and whether asserted or assertable directly or derivatively, in law, equity, or otherwise.

23.    "*Chapter 11*" means chapter 11 of the Bankruptcy Code.

24.    "*Claim*" means a claim against any of the Debtors whether or not asserted, as defined in section 101(5) of the Bankruptcy Code.

25.    "*Claims Oversight Committee*" shall have the meaning set forth in Section 6.6.

26.    "*Classes*" means a category of Claims or Interests described in this Plan.

27.    "*Closing*" means the closing of the Sale to Buyer as described and contemplated by the APA.

28.    "*Closing Date*" means the date the Closing occurs.

29.    "*Committee*" means the Official Committee of Unsecured Creditors appointed in the Debtors' Bankruptcy Case.

30.    "*Confirmation Date*" means the date on which the Bankruptcy Court enters the Confirmation Order.

3

31. "*Confirmation Hearing*" means the hearing before the Bankruptcy Court held to consider confirmation of this Plan and related matters under section 1128 of the Bankruptcy Code, as such hearing may be continued.

32. "*Confirmation Order*" means the order entered by the Bankruptcy Court confirming this Plan pursuant to section 1129 of the Bankruptcy Code, which shall be in all respects reasonably acceptable to the Debtors and Buyer.

33. "*Consignment Claim*" means a Claim arising out of the delivery of goods to the Debtors pursuant to a consignment agreement or consignment arrangement between the Debtors and the Person that delivered such goods to the Debtors, including any claims arising out of the Debtors' sale or disposition of such goods.

34. "*Consignment Goods*" shall mean goods or other products provided to the Debtors that (1) prior to the commencement of the Bankruptcy Case were reflected on the Debtors' books and records as not being owned by the Debtors or (2) were provided to the Sellers pursuant to a consignment or similar agreement regardless of the enforceability of any such agreement or the priority of such consignment rights or (3) are otherwise alleged to have been provided to the Debtors on consignment or similar arrangement.

35. "*Consignment Lawsuit*" means the adversary proceeding filed in the Debtors' Bankruptcy Case by various plaintiffs and styled or referenced as follows: United Methodist Publishing House, Inc. et al. vs. Family Christian, LLC, Adversary Proceeding No. 15-80062, U.S. Bankruptcy Court, Western District of Michigan.

36. "*Cure Costs*" means the amount of Cash to be paid by the Debtors as may be agreed upon by the parties or ordered by the Bankruptcy Court, for the purpose of curing any monetary defaults or contractual obligations owed by the Debtors under any Executory Contract or Unexpired Lease with respect to the assumption of such Executory Contract or Unexpired Lease pursuant to section 365(b) of the Bankruptcy Code.

37. "*Debtors*" means collectively, Family Christian LLC, Family Christian Holding, LLC, and FCS Giftco, LLC, the debtors in this Bankruptcy Case.

38. "*Designation Period*" has the meaning given to such term at Section 1.4 of the APA and generally refers to the limited time period after the Closing Date during which the Buyer may designate additional Executory Contracts and Unexpired Leases to be assumed by the Debtors and assigned to the Buyer, or alternatively, to be designated as an Excluded Asset.

39. "*DIP Lender*" means the entity providing debtor in possession financing to the Debtors pursuant to section 364(c) of the Bankruptcy Code. The Debtors contemplate obtaining a DIP Loan from the Senior Lender prior to the Confirmation Date, and in such event the Senior Lender shall be the DIP Lender.

40. "*DIP Loan*" means any debtor in possession financing provided after the Petition

Date to the Debtors by the DIP Lender.

41. "*DIP Loan Claim*" means a Claim of the DIP Lender existing under the DIP Loan.

42. "*Directors and Officers*" shall mean each and every of the Debtors' past and present officers, directors, shareholders, members, managers, partners and principals, and each of their respective Affiliates, agents, employees, successors and predecessors-in-interest, advisors, accountants, attorneys, representatives and assigns.

43. "*Disallowed Claim*" means a Claim or any portion thereof that (i) has been disallowed by a Final Order, (ii) is listed in any of the Debtors' Schedules at zero or as contingent, disputed, or unliquidated and as to which a proof of claim bar date has been established but no proof of claim has been timely filed or deemed timely filed with the Bankruptcy Court, or (iii) is not listed in the Debtors' Schedules and as to which a proof of claim bar date has been established but no proof of claim has been timely filed or deemed timely filed with the Bankruptcy Court.

44. "*Disclosure Statement*" means the "Disclosure Statement for Joint Plan of Liquidation Proposed By Debtors" filed in connection with this Plan.

45. "*Disputed Claim*" means, with reference to any Claim, a Claim or any portion thereof, that is the subject of an objection timely filed in the Bankruptcy Court and which objection has not been withdrawn, settled or overruled by a Final Order of the Bankruptcy Court.

46. "*Distribution*" means any distribution by the Debtors or the Plan Administrator to a Holder of an Allowed Claim.

47. "*District Court*" means the United States District Court for the Western District of Michigan.

48. "*Effective Date*" means a date selected by the Debtors which must be a day that is no later than fourteen (14) Business Days after all of the conditions specified in Section 9.2 of this Plan have been satisfied or waived by the Debtors (to the extent such conditions are subject to waiver).

49. "*Estate*" means, collectively, each estate that was created by the commencement of the Debtors' Bankruptcy Case pursuant to section 541 of the Bankruptcy Code, and shall be deemed to include, without limitation, any and all rights, powers, and privileges of such Debtors and any and all interests in property, whether real, personal or mixed, rights, causes of action, avoidance powers or extensions of time that such Debtors or such estate shall have had as of the commencement of the Bankruptcy Case, or which such Estate acquired after the commencement of the Bankruptcy Case, whether by virtue of sections 541, 544, 545, 546, 547, 548, 549 or 550 of the Bankruptcy Code, or otherwise.

5

50.     "*Excluded Assets*" has the meaning given to such term in Section 1.3 of the APA and generally refers to all of the Debtors' property that is excluded from the sale and transfer to the Buyer.

51.     "*Executory Contract or Unexpired Lease*" means all executory contracts or unexpired leases to which any of the Debtors is a party.

52.     "*Final Decree*" means a final decree entered by the Bankruptcy Court after the Effective Date pursuant to section 350(a) of the Bankruptcy Code and Bankruptcy Rule 3022.

53.     "*Final Order*" means an order of the Bankruptcy Court or any other court as to which (i) any appeal that has been taken has been finally determined or dismissed, or (ii) the time for appeal has expired and no appeal has been filed timely.

54.     "*Holder*" means a Holder of a Claim or Interest, as applicable.

55.     "*Impaired*" shall have the meaning ascribed thereto in section 1124 of the Bankruptcy Code.

56.     "*Interests*" means all equity securities, membership interests, or other ownership interests in any of the Debtors.

57.     "*Lien*" has the meaning set forth in section 101(37) of the Bankruptcy Code.

58.     "*Miscellaneous Secured Claim*" means any Secured Claim other than the Senior Lender Secured Claim, the Term Lender Secured Claim, and the Secured Tax Claims.

59.     "*Order*" shall mean any writ, judgment, decree, injunction or similar order, writ, ruling, directive or other requirement of any governmental entity (in each case whether preliminary or final).

60.     "*Person*" means an individual, corporation, partnership, joint venture, association, joint stock company, limited liability company, limited liability partnership, trust, estate, unincorporated organization, governmental unit (as defined in section 101(27) of the Bankruptcy Code) or other entity.

61.     "*Petition Date*" means February 11, 2015.

62.     "*Plan*" means this plan of liquidation as the same may hereafter be amended, supplemented, restated, or modified.

63.     "*Plan Administrator*" shall have the meaning set forth in Section 6.3.

64.     "*Plan Supplement*" means any supplement to the Plan that may be filed with the Bankruptcy Court prior to the Confirmation Hearing.

6

65. "*Post-Closing Business*" shall mean the business as operated by the Buyer after Closing.

66. "*Priority Non-Tax Claim*" means a Claim entitled to priority under section 507(a) of the Bankruptcy Code other than an Administrative Expense Claim, a Priority Tax Claim, or a DIP Loan Claim.

67. "*Priority Tax Claim*" means a Claim against the Debtors that is of a kind specified in sections 507(a)(8) of the Bankruptcy Code.

68. "*Professional Fee Claim*" means an Allowed Administrative Claim of a professional retained under sections 327 or 1103 of the Bankruptcy Code for compensation for services rendered or reimbursement of costs, expenses or other charges and disbursements incurred during the period from the Petition Date through the Effective Date.

69. "*Reclamation Claim*" means a Claim asserted against any of the Debtors pursuant to section 546(c) of the Bankruptcy Code and/or other applicable law.

70. "*Record Date*" means the date for determining the identity of Holders of Allowed Claims entitled to Distributions under this Plan. If no other date is established as the Record Date in the Confirmation Order, then the Record Date shall be the Confirmation Date.

71. "*Record Holder*" means the Holder of a Claim as of the Record Date.

72. "*Reinstatement or Reinstated*" means leaving unaltered the legal, equitable, and contractual rights which a Claim entitles the Holder of such Claim so as to leave such Claim Unimpaired in accordance with section 1124 of the Bankruptcy Code.

73. "*Rejecting Consignor*" shall have the meaning set forth in Section 3.5(b)(iii).

74. "*Rejection Effective Date*" has the meaning given to such term at Section 5.2(c) of this Plan and generally means the date that the rejection of an Executory Contract or Unexpired Lease becomes effective.

75. "*Rejection Notice*" means the notice filed with the Bankruptcy Court by the Debtors and served upon contract counterparties for the purpose of notifying such counterparties of specific Executory Contracts and Unexpired Leases being rejected by the Debtors.

76. "*Released Claims*" means claims, counterclaims, demands, actions, causes of action, suits, liabilities, indebtedness, duties, obligations and responsibilities, of any kind or nature whatsoever, now existing, whether known or unknown, whether direct or indirect, joint or several, absolute or contingent, and whether foreseen or unforeseen, at law or in equity, arising under, out of, by reason of, or in connection with the Released Matters.

7

77.   "*Released Matters*" means the Debtors, the Debtors' Affiliates, the Estates, the Bankruptcy Case and any loans made by either of the Senior Lender, the Term Lender or the DIP Lender to any of the Debtors.

78.   "*Releasing Parties*" means each of the Debtors, their Estates, any Person acting by, through or derivatively on behalf of any of the Debtors or their Estates including the Committee (and its members in their official capacity only), any successor and assigns to each of the foregoing, and as applicable the Plan Administrator or a trustee on behalf of the Debtors or their Estates.

79.   "*Resulting Claim*" shall have the meaning set forth in Section 6.7(e).

80.   "*Sale*" means the sale and transfer of the Debtors' Assets (but excluding the Excluded Assets) to Buyer as set forth in, and contemplated by, the APA.

81.   "*Sale Order*" means an order of the Bankruptcy Court approving the Sale and entered separately from the Confirmation Order.

82.   "*Schedules*" means the Schedules of Assets and Liabilities the Debtors filed in the Bankruptcy Case, as such Schedules may be amended from time to time in accordance with Bankruptcy Rule 1009.

83.   "*Secured Claim*" means a Claim against the Debtors to the extent secured by a Lien on any property of the Debtors and to the extent of the value of said property as provided in section 506(a) of the Bankruptcy Code.

84.   "*Secured Tax Claim*" means a Claim of a governmental unit for the payment of a tax assessed against property of the Debtors' Estate(s) that is secured by a first priority Lien on such property of the Estate(s).

85.   "*Senior Lender*" means FC Special Funding, LLC, and any of its successors or assigns.

86.   "*Successors and Affiliates*" means the respective predecessors, successors, assigns, directors, officers, managers, parents, subsidiaries, Affiliates, trustees, partners, members, employees, representatives, attorneys and agents, and the heirs, executors and administrators of any of the foregoing persons or entities.

87.   "*Term Lender*" means FC Special Funding, LLC, and any of its successors or assigns.

88.   "*Term Lender Complaint*" means that certain Complaint filed in the Bankruptcy Case by the Committee against the Term Lender and referenced as follows: Official Committee of Unsecured Creditors vs. Credit Suisse AG *et al*. Adversary Proceeding No. 15-80102, U.S. Bankruptcy Court, Western District of Michigan.

89.   "*Trade Creditor*" has the same meaning given to such term in Article 13 of the APA, and means an entity that provided raw materials, goods, inventory or

services to the Debtors on credit terms, other than pursuant to the type of agreement described in section 365(c)(2) of the Bankruptcy Code

90. "*Trade Terms*" shall mean the normal and customary trade terms, practices, and programs provided to the Debtors by a Trade Creditor that were most favorable to the Debtors and that were in effect within 12 months before the Petition Date, or such other trade terms that are acceptable to the Buyer.

91. "*Transferred Assets*"  means the property of the Debtors sold and transferred to the Buyer pursuant to the APA, and such Transferred Assets are generally described as the "Assets" that are defined in Section 1.2 of the APA.

92. "*Transferred Inventory*" means shall mean all inventories, merchandise and Consignment Goods in the possession of the Sellers as of the Closing Date that are Transferred Assets.

93. "*Unencumbered Settlement Cash*" means the sum of $100,000 to be transferred by the Buyer to the Estate, free and clear of liens and claims of any person or entity, for the benefit of general unsecured creditors.

94. "*Unimpaired*" means, with respect to a Class of Claims or Interests, any Class that is not Impaired.

95. "*Unsecured Claim*" means any Claim against the Debtors that is not secured by any Lien upon property of the Debtors' Estates and that is not a Secured Claim, a Priority Non-Tax Claim, a Priority Tax Claim, or an Administrative Expense Claim.

96. "*Wind Down Expenses*" has the meaning given to such term at Article 13 of the APA and generally refers to the costs and expenses of winding down the Debtors' affairs and Bankruptcy Case after the Closing of the Sale to the Buyer.

**1.2**    **Time**.  Except as otherwise provided in this Plan, the provisions of Bankruptcy Rule 9006 shall apply in computing any period of time prescribed or allowed by the Plan. Whenever the time for the occurrence or happening of an event as set forth in this Plan falls on a day which is a Saturday, Sunday, or legal holiday under the laws of the United States of America, then the time for the occurrence or happening of said event shall be extended to the following next day which is not a Saturday, Sunday, or legal holiday.

**1.3**    **Rules of Construction**.  The rules of construction set forth in section 102 of the Bankruptcy Code shall apply to the Plan, unless superseded herein.   All references to "the Plan" herein shall be construed, where applicable, to include references to this document and all its exhibits, appendices, schedules and annexes, if any.   The captions and headings in the Plan are for convenience of reference only and shall not limit or otherwise affect the provisions hereof. Any term used in the Plan that is not defined in the Plan, either in Article I hereof or elsewhere, but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules.  To the extent of any discrepancy between the Plan and the APA, the APA shall govern and control, including with respect to any

defined terms contained in the APA and incorporated by reference or usage in the Plan. References in this Plan to the "Debtors" may be interpreted to mean the "Plan Administrator," and vice versa, where the context or circumstances otherwise require or reasonably suggest such interpretation.

**ARTICLE 2**
**TREATMENT OF NON-CLASSIFIED CLAIMS**

Pursuant to section 1123(a)(1) and 1129(a)(9) of the Bankruptcy Code, Holders of Priority Tax Claims and Administrative Expense Claims against the Debtors are not classified for purposes of voting on this Plan.

**2.1     Priority Tax Claims**.

(a)     Allowed Priority Tax Claim will be paid with funds received from the Buyer in accordance with either of the following treatments selected by the Debtors in their discretion: (1) in Cash for the full, unpaid amount on the Effective Date, or as soon thereafter as is reasonably practicable,  (2) in accordance with Section 1129(a)(9)(C), deferred Cash payments over a period not exceeding five (5) years after the Petition Date, plus interest accruing during such time period at the rate determined under nonbankruptcy law applicable to such Claim, or (3) in accordance with such other less favorable treatment to which the Debtors and the Holder of such Allowed Priority Tax Claim shall have agreed upon in writing.

(b)     The entry of the Confirmation Order shall enjoin any Holder of an Allowed Priority Tax Claim from commencing or continuing any action or proceeding against any responsible person, officer or director of the Debtors that otherwise would be liable to such Holder for payment of a Priority Tax Claim so long as the Debtors are in compliance with this Plan.

**2.2     Administrative Expense Claims**.

(a)     Administrative Expense Claim Bar Date.  The Debtors, and as applicable the Buyer pursuant to the terms of the APA, intend to pay Administrative Expense Claims that arise in the ordinary course of business and are not disputed as such claims come due without the necessity of the Holder of such Claim filing any request for payment other than the submission of customary invoices to the Debtors.   Notwithstanding the foregoing sentence, however, Holders of an Administrative Expense Claim (other than a Professional Fee Claim or a DIP Loan Claim) must file a motion or notice in the Bankruptcy Case seeking the allowance of any Administrative Expense Claim which has not been paid within 60 days after the Effective Date, unless such Holder previously filed such a request and the request remains pending or was allowed by a prior Order of the Bankruptcy Court.  If a Holder of a 503(b)(9) Claim has timely filed a 503(b)(9) Claim, then such Holder does not need to file another 503(b)(9) Claim or a notice of motion seeking allowance of such Claim.  **Failure to file timely and serve the required motion or notice by the applicable deadline(s) noted above shall result in the Administrative Expense Claim being forever barred and discharged without payment.**

10

(b)     Payment of Allowed Administrative Expense Claims:  Each Holder of an Allowed Administrative Expense Claim, other than Professional Fee Claims, DIP Loan Claims and 503(b)(9) Claims (see Section 9.2(d)), will, pursuant to the APA, be paid the full unpaid amount of such Allowed Administrative Expense Claim in Cash on the later of (i) the Effective Date, (ii) at the time such Claim comes due according to its terms, or (iii) the date such Claim becomes an Allowed Administrative Expense Claim, provided that the undisputed portion of any 503(b)(9) Claim shall be paid at the Closing regardless if such Claim is Allowed as of the Closing.

(c)     Professional Fee Claims.  Following the Effective Date, each Holder of a Professional Fee Claim shall be paid in full, pursuant to the APA, within three (3) Business Days after such Claims become Allowed by a Final Order. All final requests for payment of Professional Fee Claims must be filed with the Bankruptcy Court pursuant to customary final fee applications by the date that is 60 calendar days after the Effective Date. The objection deadline relating to such fee applications shall be the date that is 21 days after such fee applications are filed with the Bankruptcy Court. The Allowed amounts of any Professional Fee Claims shall be determined by the Bankruptcy Court following any hearing that may be scheduled by the Bankruptcy Court.  If no objections are timely filed to any final fee application, the Bankruptcy Court may approve such fee applications without a hearing.

(d)     DIP Loan Claims.  All DIP Loan Claims shall be Allowed as provided in any Final Order approving the DIP Loan.  On or before the Effective Date, the Holder of an Allowed DIP Loan Claim shall receive (i) Cash, equal to the unpaid portion of such Allowed DIP Loan Claim, or (ii) such other less favorable treatment as to which the Holder of the Allowed DIP Loan Claim and the Debtors shall have agreed upon in writing.

## ARTICLE 3
### CLASSIFICATION AND TREATMENT OF CLAIMS

3.1     **Classes of Claims and Interests**.  The categories set forth below classify all Claims and Interests.  A Claim or Interest shall be deemed classified in a particular Class only to the extent the Claim or Interest qualifies within the description of that Class and shall be deemed classified in a different Class to the extent that any remainder of such Claim or Interest qualifies within the description of such different Class, except as set forth in a specific class.  The treatment with respect to each Class of Claims and Interests provided for in this Plan shall be in full and complete satisfaction, release and discharge of such Claims and Interests.

| Class | Description | Status | Entitled to Vote |
|---|---|---|---|
| 1 | Priority Non-Tax Claims | Unimpaired | No |
| 2 | Senior Lender Secured Claims | Impaired | Yes |
| 3 | Term Lender Secured Claims | Impaired | Yes |
| 4 | Consignment Claims | Impaired | Yes |
| 5 | Secured Tax Claims | Unimpaired | No |
| 6 | Miscellaneous Secured Claims | Unimpaired | No |

11

| 7 | Unsecured Claims | Impaired | Yes |
| 8 | Equity Interests | Impaired | No |

### 3.2    **Class 1: Priority Non-Tax Claims**.

(a)    <u>Class Description</u>.  Class 1 consists of all Priority Non-Tax Claims, which include but are not necessarily limited to the following Claims to the extent they are entitled to priority under 11 U.S.C. § 507: Claims relating to unpaid employee wages, salaries or commissions, and Claims relating to contributions to an employee benefit plan.

(b)    <u>Treatment</u>.  Unless a different treatment is agreed upon by the parties that does not conflict with this Plan or the Bankruptcy Code, each Allowed Priority Non-Tax Claim shall be Unimpaired under the Plan, and, pursuant to section 1124 of the Bankruptcy Code, all of the legal, equitable and contractual rights to which such Claim entitles the Holder in respect of such Claim shall be fully reinstated and retained, and such Allowed Priority Non-Tax Claim (including any amounts to which such Holder is entitled pursuant to section 1124(2) of the Bankruptcy Code) shall be paid in full in accordance with such reinstated rights on the Effective Date or as soon as practically possible thereafter.

(c)    <u>Impairment and Voting</u>.  Class 1 Claims are Unimpaired and are conclusively deemed to have accepted this Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, Class 1 Claims are not entitled to vote to accept or reject the Plan, and the votes of such Claims shall not be solicited.

### 3.3    **Class 2: Senior Lender Secured Claim**.

(a)    <u>Class Description</u>.  Class 2 consists of the Allowed Secured Claim of the Senior Lender.

(b)    <u>Treatment</u>.  Unless a different treatment is agreed upon by the parties that does not conflict with this Plan or the Bankruptcy Code, upon the Closing of the Sale, all liabilities and obligations with respect to the Senior Lender Secured Claim shall be an Allowed Secured Claim and assumed and satisfied in full by the Buyer pursuant to the terms of the APA.

(c)    <u>Impairment and Voting</u>.  The Class 2 Claim is Impaired and the Senior Lender is entitled to vote to accept or reject the Plan.

### 3.4    **Class 3  Term Lender Secured Claim**.

(a)    <u>Class Description</u>.  Class 3 consists of the Allowed Secured Claim of the Term Lender.

(b)    <u>Treatment</u>.  Unless a different treatment is agreed upon by the parties that does not conflict with this Plan or the Bankruptcy Code, upon the Closing of the Sale, obligations in the amount of $6,000,000 of the Term Lender Secured Claim shall be an Allowed Secured Claim and assumed and satisfied in full by the Buyer pursuant to the terms of the APA. The balance of the Term Lender Claims shall treated as an Allowed Unsecured Claim in Class 7

12

in the amount of $28,400,000 for voting purposes only, and any Class 7 distribution that would be made on account of the Allowed Class 7 Claim of the Term Lender is waived.

        (c)      *Impairment and Voting*.  The Class 3 Claim is Impaired and the Term Lender is entitled to vote to accept or reject the Plan.

    **3.5**    **Class 4  Consignment Claims**.

        (a)      *Class Description*.  Class 4 consists of any Allowed Consignment Claims.

        (b)      *Treatment*. Unless a different treatment is agreed upon by the parties that does not conflict with this Plan or the Bankruptcy Code, each Holder of an Allowed Consignment Claim shall receive the following treatment in full and complete satisfaction, release and discharge of such Claim, based upon whether they vote to accept or reject the Plan.

        (i)      Each Holder of an Allowed Consignment Claim that votes to accept the Plan and become a "Consenting Consignment Vendor" under the APA shall receive one of the following two treatments at their option as selected on their Ballot (failure to select an option results in the Buyer selecting the option for that Consenting Consignment Vendor):

        Payment Option 1:  Such Holder shall be entitled to its 503(b)(9) Consignment Claim paid in Cash within ten (10) Business Days after such claim is Allowed, provided the undisputed portion of any such Claim shall be paid at the Closing regardless if such Claim is Allowed as of the Closing, plus an amount equal to ten (10%) percent of the Debtors' book value for such Consenting Consignment Vendor's Consignment Goods that are Transferred Inventory under the APA, paid in the month following the month in which such individual items of Transferred Inventory are sold by the Post-Closing Business.  In addition, the Buyer will pay ten (10%) percent of the Debtors' book value for such Consenting Consignment Vendor's Consignment Goods that are sold by the Debtors between June 15, 2015 and the Closing Date, paid no later than thirty (30) days following the Closing Date.

        Payment Option 2: Such Holder shall be entitled to an amount equal to thirty-five (35%) percent of the Debtors' book value for such Consenting Consignment Vendor's Consignment Goods that are Transferred Inventory under the APA, paid in the month following the month in which such individual items of Transferred Inventory are sold by the Post-Closing Business.  In addition, the Buyer will pay thirty-five (35%) percent of the Debtors' book value for such Consenting Consignment Vendor's Consignment Goods that are sold by the Debtors between June 15, 2015 and the Closing Date, paid no later than thirty (30) days following the Closing Date.

        (ii)      In either case of Option 1 or Option 2 above, Buyer shall have no liability for failure to market or sell any Consignment Goods that are Transferred Inventory, and if any such Consignment Goods remain unsold one (1) year following the Closing Date,

13

the Buyer shall return to each such Consenting Consignment Vendor their respective unsold Consignment Goods that are Transferred Inventory at no further cost or obligation to the Buyer other than the Buyer arranging and paying for shipment to return such Transferred Inventory to the applicable Consenting Consignment Vendor.

(iii)    Each Holder of an Allowed Consignment Claim that does not vote to either accept or reject the Plan shall be treated as a "Consenting Consignment Vendor" under the APA and receive either Payment Option 1 or Payment Option 2 above as chosen by the Buyer.

(iv)    Each Holder of an Allowed Consignment Claim that either votes to reject the Plan or fails to vote but files an objection to confirmation of the Plan that is not withdrawn prior to the start of the Confirmation Hearing (collectively a "Rejecting Consignor")  shall not be treated as a Consenting Consignment Vendor and shall retain all of its rights, remedies and claims with respect to the Consignment Goods comprising such Claims.

(A)    Upon Closing of the Sale, the Buyer shall not sell the Rejecting Consignor's Consignment Goods without the written agreement and consent of both the Buyer and the corresponding Rejecting Consignor; provided, however, regardless of any such agreement, in the event the Buyer sells any such Consignment Goods, the Buyer shall hold the Rejecting Consignor's share of the proceeds from such sale pending resolution of the Rejecting Consignor's rights, remedies and claims with respect to its Consignment Goods.

(B)    The Debtors, with the Buyer's approval, may elect to return to such Rejecting Consignor its Consignment Goods with the underlying consignment agreement between the parties determining which party is responsible for shipping costs associated with the return of the goods.

(C)    The Debtors may elect to seek a Final Order from the Bankruptcy Court (or such other court of competent jurisdiction) determining the rights of the Debtors in the Consignment Goods received from the Rejecting Consignor.  In the event such Final Order determines the applicable Consignment Goods are treated as goods sold to the Debtors, then such Consignment Goods or their proceeds shall be treated as Assets under the APA and transferred by the Debtors, or the Plan Administrator on behalf of the Debtors, to the Buyer without further court order.

(c)    Impairment and Voting. The Class 4 Claims are Impaired and are entitled to vote to accept or reject the Plan.

### 3.6    Class 5: Secured Tax Claims.

(a)    Class Description.   Class 5 consists of Allowed Secured Tax Claims.

(b)    <u>Treatment</u>.  Unless a different treatment is agreed upon by the parties that does not conflict with this Plan or the Bankruptcy Code, upon the later of thirty (30) days after the Effective Date and the last date that the Secured Tax Claim comes due under applicable law without incurring a penalty, the Holder of such Allowed Secured Tax Claim shall receive (i) Cash equal to the value of its Allowed Secured Tax Claim at the time, (ii) the return of the Holder's collateral securing the Secured Tax Claim, or (iii) such other less favorable treatment as to which the Debtors, the Buyer and such Holder shall have agreed upon in writing.   Any Holders of an Allowed Secured Tax Claim shall retain its Lien in the collateral securing such Claim (or the proceeds thereof to the extent sold by the Debtors free and clear of such Lien) to the same extent and with the same priority as such Lien held as of the Petition Date until such time as (A) the Holder of such Allowed Secured Tax Claim has received the treatment described above or (B) such purported Lien has been determined by an order of the Bankruptcy Court to be invalid or otherwise avoidable.   To the extent a Secured Tax Claim exceeds the value of the interest of the Estate in the property that secures such Claim, such Claim shall be deemed disallowed pursuant to Bankruptcy Code section 502(b)(3).

(c)    <u>Impairment and Voting</u>.  The Class 5 Claims are Unimpaired as they are being satisfied in full, and holders thereof are not entitled to vote to accept or reject the Plan. The votes of such Claims shall not be solicited.

**3.7    <u>Class 6: Miscellaneous Secured Claims</u>.**

(a)    <u>Class Description</u>. Class 6 consists of Allowed Miscellaneous Secured Claims.  The Debtors are not aware of any Miscellaneous Secured Claims and have prepared Class 6 merely to address the contingency of any Other Secured Claims being filed against the Debtors and Allowed by the Court.

(b)    <u>Treatment</u>. Unless a different treatment is agreed upon by the parties that does not conflict with this Plan or the Bankruptcy Code, each Holder of an Allowed Miscellaneous Secured Claim shall receive, in the sole discretion of the Debtors, the Buyers or the Plan Administrator, as the case may be: (a) Cash equal to the amount of such Allowed Miscellaneous Secured Claim; (b) Reinstatement of such Allowed Miscellaneous Secured Claim; (c) return of the property securing such Miscellaneous Secured Claim; or (d) such other treatment on such other terms and conditions as may be agreed upon in writing by the Holder of such Claim and the Debtors, the Buyers or the Plan Administrator, as the case may be.   Nothing herein prevents or prohibits the Debtors from challenging the allowance of any Claim as a Miscellaneous Secured Claim or from contending that such Claim constitutes an Unsecured Claim.

(c)    <u>Impairment and Voting</u>.  The Class 6 Claims are Unimpaired as they are being satisfied in full, and holders thereof are not entitled to vote to accept or reject the Plan.

**3.8    <u>Class 7:  Unsecured Claims</u>.**

(a)    <u>Class Description</u>.  Class 7 consists of all Allowed Unsecured Claims.

(b)    <u>Treatment.</u>  Unless a different treatment is agreed upon by the parties that does not conflict with this Plan or the Bankruptcy Code, each Holder of an Allowed Unsecured

15

Claim will receive (i) upon the Effective Date, a release from any liability under Avoidance Actions; plus (ii) a Pro Rata share of Distributions available from the Unencumbered Settlement Cash and any other Assets (following liquidation into Cash) that remain property of the Debtors' Estates after the Closing Date of the Sale.

(c)    <u>Impairment and Voting</u>.  Class 7 Claims are Impaired and are entitled to vote to accept or reject the Plan.

**3.9    <u>Class 8:  Equity Interests</u>.**

(a)    <u>Class Description</u>.  Class 8 consists of all Allowed Interests in the Debtors.

(b)    <u>Treatment.</u>    All Interests in the Debtors shall be extinguished and terminated and the Holders of such Interests shall not receive or retain anything on account of such Interests.

(c)    <u>Impairment and Voting</u>.  Class 8 Interests are Impaired and are conclusively deemed to have rejected this Plan pursuant to section 1126(g) of the Bankruptcy Code.  Therefore, Class 8 Interests are not entitled to vote to accept or reject the Plan.

**3.10    <u>Reservation</u>**.  Nothing herein shall constitute an admission as to the nature, validity, or amount of the Claims or Interests in each of the Classes designated in this Plan.  The Debtors reserve the right to object to any and all Claims and Interests.

**ARTICLE 4**

**<u>ACCEPTANCE OR REJECTION OF PLAN</u>**

**4.1    <u>Impaired Classes Entitled to Vote</u>.**  Classes 2, 3, 4, and 7 are Impaired and are entitled to vote to accept or reject the Plan.

(a)    <u>Acceptance By An Impaired Class</u>.  Pursuant to section 1126(c) of the Bankruptcy Code, an Impaired Class of Claims shall have accepted the Plan if: (a) the Holders of at least two-thirds (2/3) in dollar amount of the Allowed Claims actually voting in such Class (other than Claims held by any Holder designated pursuant to section 1126(e) of the Bankruptcy Code) have timely and properly voted to accept the Plan, and (b) more than one-half (1/2) in number of the Holders of such Allowed Claims actually voting in such Class (other than Claims held by any Holder designated pursuant to section 1126(e) of the Bankruptcy Code) have timely and properly voted to accept the Plan..

**4.2    <u>Unimpaired Classes Presumed To Accept Plan</u>**.  Classes 1, 5 and 6 are Unimpaired under the Plan.  Pursuant to section 1126(f) of the Bankruptcy Code, such Classes are conclusively presumed to have accepted the Plan.

**4.3    <u>Impaired Classes Presumed To Reject Plan</u>**.  Class 8 is Impaired under Plan.  Pursuant to section 1126(g) of the Bankruptcy Code, such Class is conclusively presumed to have rejected the Plan.

24650447 v2

**4.4**    **Estimation of Claims for Voting Purposes**.    The Debtors may at any time request the Bankruptcy Court to estimate any contingent, unliquidated or disputed Claim pursuant to section 502(c) of the Bankruptcy Code for any reason or purpose, including for purposes of voting on the Plan.

**4.5**    **Designation of Votes**.    The Debtors reserve all of their rights under section 1126(e) of the Bankruptcy Code to request the Court to designate any vote to accept or reject the Plan that was not made in good faith.

**4.6**    **Cramdown**    If all applicable requirements for Confirmation of the Plan are met as set forth in section 1129(a)(1) through (13) of the Bankruptcy Code except subsection (8) thereof, the Debtors may request that the Bankruptcy Court confirm the Plan in accordance with section 1129(b) of the Bankruptcy Code, notwithstanding the requirements of section 1129(a)(8) thereof, on the bases that the Plan is fair and equitable, and does not discriminate unfairly with respect to each Class of Claims or Interests that is Impaired under, and has not accepted, the Plan.

## ARTICLE 5
## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

**5.1**    **General Information**.    Attached as Exhibit "C" to the Disclosure Statement is a summary of the Debtors' Executory Contracts and Unexpired Leases, along with the Debtors' calculation of the Cure Costs corresponding to such contracts and leases. The Debtors' assumption and assignment and/or rejection of such contracts and leases shall be determined and governed generally by the APA, which are referred to in the APA as the "Assumed Contracts" and the "Assumed Real Property Leases" respectively.   It is contemplated the Buyer will assume many if not most of such contracts and leases, and that it will designate the treatment of most of such contracts and leases as of the Closing Date of the Sale.   However, for a limited period of time after the Closing Date not to exceed September 9, 2015 (i.e., the Designation Period), the Buyer shall have the ability to designate contracts or leases to be assumed or rejected if such contracts or leases were not already designated as such as of the Closing Date, and in accordance with the APA, the Buyer shall pay the obligations that arise under such designated contracts and leases during the Designation Period and Post-Closing Occupancy Period.   The process for the assumption and assignment or rejection of such designated contracts or leases is set forth in the APA and the Sale Order approving the APA.   The Debtors intend to reject all Executory Contracts and Unexpired Leases that are not designated to be assumed and assigned to Buyer as part of the Sale.   Pursuant to the procedures described in Section 5.2 below, counterparties to such contracts and leases will be notified as to which contracts and leases are designated to be assumed or rejected by the Debtors' filing of "Assumption Notice(s)" or "Rejection Notice(s)" with the Bankruptcy Court and serving such notices on the counterparties to such contract and leases.

**5.2**    **Treatment of Executory Contracts and Unexpired Leases**.

(a)    **Assumption and Assignment**.    The Debtors shall assume and assign to Buyer all of the Debtors' Executory Contracts and Unexpired Leases that are designated by the Buyer as Assumed Contracts and Assumed Real Property Leases pursuant to the APA.

17

(b)    Cure Costs / Adequate Assurance.  The Debtors shall pay and perform the Cure Costs with funds received from the Buyer (or cause the Buyer to pay and perform such Cure Costs) needed to assume and assign the corresponding Assumed Contracts and Assumed Real Property Leases.  If for any particular contract or lease there is an unresolved dispute as of the Effective Date pertaining to (i) the amount or nature of the Cure Costs, (ii) the Buyer's ability to provide "adequate assurance of future performance" under section 365, or (iii) any other matter pertaining to assumption and assignment, then the Cure Costs shall be paid within ten (10) days following entry of a Final Order by the Bankruptcy Court resolving the dispute and approving the assumption and assignment to Buyer; provided, however, that the Debtors, with the Buyer's approval, shall be authorized to reject any contract or lease to the extent the amount of the Cure Costs determined by such Final Order or any other issue renders the assumption and assignment of such contract or lease unfavorable to the Buyer in its sole judgment, even if such rejection occurs after a prior indication of assumption.  Any dispute regarding Cure Costs or other issues regarding assumption and assignment may be resolved consensually by the parties without a hearing or order from the Bankruptcy Court by the filing of a written stipulation by the parties with the Bankruptcy Court; provided nothing shall prohibit the Bankruptcy Court from also entering a consent order resolving the dispute, without a hearing, if it is desired or submitted by the parties.  **Any objection to the proposed Cure Cost amounts listed on the attached Cure Cost Schedule (the "Cure Objection") must be filed with the Bankruptcy Court no later than the deadline for objecting to the confirmation of the Plan.   If no timely Cure Objection is filed,  the Cure Costs listed in the Cure Cost Schedule will be the only amounts necessary under section 365(b) of the Bankruptcy Code to cure the monetary defaults under the contracts and leases set forth in the Cure Cost Schedule.  If a Cure Objection or other objection to the assumption and assignment was previously filed in the Bankruptcy Case prior to the date of this Plan by a Person, such Person is not required to re-file such objection.**

(c)    Rejection of Executory Contracts and Unexpired Leases.  The Debtors shall reject all of the Debtors' Executory Contracts and Unexpired Leases that are not designated by the Buyer as Assumed Contracts and Assumed Real Property Leases pursuant to the APA. The effective date for the rejection of any particular contracts or leases shall be determined by the Sale Order.

(d)    Abandonment of Property.  To the extent the Debtors' interest in any personal property located at any premises subject to a rejected lease has little or no value, or if the preservation of such property would be burdensome to the estate, the Debtors or Plan Administrator shall be authorized to abandon such property without the need for any court order or hearing, effective as of the Rejection Effective Date, by providing written notice of such abandonment in the Rejection Notice or otherwise, with such abandonment taking effect on the date such abandonment notice is filed with the Bankruptcy Court.  Any disputes or objections to such abandonment shall be resolved by the Bankruptcy Court.

(e)    Treatment of Security Deposits.  With respect to lease security deposits that constitute an Excluded Asset and were provided by the Debtors to any landlord or contract counterparty, the Debtors (or as applicable, the Plan Administrator) shall retain all rights in such deposits.  Any disputes regarding the entitlement to such security deposits, or any offsets made against such security deposits, shall be resolved by the Bankruptcy Court.

18

(f)     Bar Date for Rejection Damages Claims.    Claims arising out of the rejection of any executory contract or unexpired lease pursuant to this Plan must be filed with the Bankruptcy Court no later than thirty (30) days after the Rejection Effective Date.  Any Claim not filed within such time period shall be forever barred. The Debtors and the Plan Administrator shall have the right to object to any Claim arising out of the rejection of an executory contract or unexpired lease.

(g)     Treatment of Rejection Claims.    Claims arising out of the rejection of executory contracts and unexpired leases shall, pursuant to section 502(g) of the Bankruptcy Code, be Impaired and treated as Class 7 Unsecured Claims.

# ARTICLE 6
## MEANS FOR THE IMPLEMENTATION OF THE PLAN

**6.1    The Sale**.    The means for the implementation of the Plan shall be provided through the Closing of the Sale to the Buyer.  The entry of the Sale Order shall constitute (a) approval of the APA, and (b)  authorization for the Debtors to take all steps reasonably necessary to consummate the APA in order to implement the Plan.

(a)     Sale Free and Clear.    Pursuant to section 363(f) and sections 1123(a)(5)(D), (b)(4) and (b)(6) of the Bankruptcy Code, the entry of Sale Order shall constitute approval for the sale and transfer of the Assets to Buyer free and clear of all Liens, Claims, interests and encumbrances, except for any Permitted Liens (as defined in the APA).

(b)     Exemption from Transfer Taxes. Pursuant to section 1146(a) of the Bankruptcy Code, any transfers from the Debtors to the Buyer or to any other Person or Entity pursuant to this Plan shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, real estate transfer tax, mortgage recording tax or other similar tax or governmental assessment. The Confirmation Order shall direct the appropriate state or local governmental units and officials to forego the collection of any such tax or governmental assessment and to accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

(c)     Wind Down Payment    Pursuant to the APA, Buyer shall pay, or shall assume the obligation to pay, up to $150,000 for the Wind Down Expenses (as defined in the APA) associated with the wind down and closing of the Debtors' Bankruptcy Case.

(d)     Buyer Standing.    Upon the Effective Date, the Buyer shall have the rights of the Debtors and their estates, including derivative standing pursuant to Sections 105 and 1109 of the Bankruptcy Code, with respect to all Assumed Liabilities and Consignment Goods, with the right and power to initiate, prosecute and settle any and all rights, claims, defenses, causes of action and objections related to any and all such Assumed Liabilities and Consignment Goods, and neither the Debtors' nor their estates, nor any other party granted derivative standing thereof, shall settle or otherwise validate or compromise any of the Assumed Liabilities or Consignment Goods without the prior written consent of the Buyer.

19

(e)    <u>Turnover of Assets Post-Closing</u>. Pursuant to the APA, the Debtors shall promptly deliver to the Buyer any Cash, checks, Inventory or other property they may receive or that are determined to be owned by the Debtors after the Closing in respect of the Assets, including the Transferred Accounts Receivable, credit card receipts and any Consignment Goods that are determined by an Order of the Bankruptcy Court to be owned by the Sellers.

(f)    <u>Transfer of Bank Accounts and Cash Management System</u>.  Pursuant to the APA, upon Closing the Debtors shall transfer their financial institution accounts including their cash management system to the Buyer.  The Debtors shall open new accounts for their post-Effective Date wind down activities.

**6.2    Revesting of Property in the Estate**.    Upon the Effective Date, all of the Excluded Assets and other possible property of the Debtors not transferred to the Buyer or another Person pursuant to the APA, shall vest in the Estate on the date such property becomes an Excluded Asset, free and clear of all Liens, Claims, encumbrances and interests in accordance with section 1141 of the Bankruptcy Code, but subject to the rights of Holders of Allowed Claims to obtain any distributions provided for in this Plan.

**6.3    Plan Administrator**.    Upon the Effective Date, Gary Murphey, a Director at Resurgence Financial Services, LLC and the Debtors' financial advisor in the Bankruptcy Case, shall be designated as the plan administrator (the "<u>Plan Administrator</u>") to administer the Estate's assets in accordance with this Plan. His compensation will be $375 per hour plus reasonable out of pocket expenses, pursuant to a customary engagement letter to be entered into as of the Effective Date.  In general, the Plan Administrator shall be the representative of the Debtors and their Estates appointed pursuant to section 1123(b)(3)(B) of the Bankruptcy Code. In the event of the death or resignation of the Plan Administrator, then the designated Plan Administrator shall be Missy Johnson, CPA from Resurgence Financial Services, LLC.

(a)    <u>General Duties and Powers of Plan Administrator</u>.    The Plan Administrator shall have fiduciary duties to the Estate in the same manner that, but to no greater extent than would members of an official committee of creditors appointed pursuant to section 1102 of the Bankruptcy Code have fiduciary duties to the creditor constituents represented by such a committee.  The Plan Administrator shall: (a) possess the rights of a party in interest pursuant to section 1109(b) of the Bankruptcy Code for all matters related to the Bankruptcy Case and, in connection therewith, shall have the right to appear, to be heard, to participate in, and to receive notices on all matters involving the Debtors and the Bankruptcy Case brought before the Bankruptcy Court or other courts; (b) have the authority to act on behalf of the Debtors in all adversary proceedings, contested matters or civil actions pending in the Bankruptcy Court or elsewhere; and (c) have the authority to retain such personnel or professionals (including, without limitation, legal counsel, accountants, auditors and tax return professionals, and other agents, including any professionals that have provided professional services to the Debtors prior to the Effective Date) as he deems appropriate and compensate such personnel and professionals as he deems appropriate, all without prior notice to or approval of the Bankruptcy Court.

(b)    <u>Liquidation of The Estates</u>.    Subject to any applicable provisions of this Plan, the Plan Administrator shall take such steps as are reasonably necessary to collect and

liquidate the assets vested in the Estate and to make Distributions to Holders of Allowed Claims in accordance with this Plan. In connection therewith, the Plan Administrator shall have the power and/or responsibility:

   (i) To file all necessary tax returns on behalf of the Debtors and their Estates, together with any other appropriate or necessary documents related to municipal, state, federal or other tax law;

   (ii) To make all Distributions to Holders of Allowed Claims as provided for or contemplated by the Plan;

   (iii) To object to any Claims (disputed or otherwise), with such objections to be made in accordance with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules of the Bankruptcy Court, except as ordered otherwise;

   (iv) To prosecute, collect, settle or compromise any Claim or cause of action belonging to the Estate, including initiating adversary proceedings, lawsuits, or civil actions in the name of the Debtors that are deemed reasonably necessary to carry out such objectives;

   (v) To maintain escrow accounts, reserve, or other deposit or banking accounts, and to maintain appropriate books and records;

   (vi) To pay fees incurred pursuant to 28 U.S.C. § 1930(a)(6) (as funded pursuant to the APA) and to file with the Bankruptcy Court and serve on the United States Trustee all required monthly or quarterly reports until such time as a final decree is entered closing this Chapter 11 Case or the Case is converted or dismissed, or the Court orders otherwise; provided that the Estate shall no longer be required to file and serve monthly operating reports, or may file and serve operating reports with respect to periods greater than one month, in the event the Plan Administrator is so advised by the United States Trustee;

   (vii) To abandon or destroy any property, records or documents that the Plan Administrator concludes have no meaningful or practical benefit to creditors of the Estate, are too burdensome or cost-prohibitive to maintain and preserve, or too impractical to liquidate and distribute;

   (viii) To wind-up the affairs of the Debtors including, but not limited to, causing the dissolution of the Debtors, seeking a final decree in the Bankruptcy Case and closing the Bankruptcy Case; and

   (ix) To do all other acts or things not inconsistent with the provisions of the Plan that the Plan Administrator deems reasonably necessary or desirable with respect to implementing the Plan.

  **6.4** **Dissolution of the Debtors**. The Plan Administrator shall be authorized and directed to dissolve the Debtors prior to the closing of the Bankruptcy Case, and to take such actions, or file such documents, reasonably necessary to effectuate such dissolution. Prior to

dissolving the Debtors, the Plan Administrator may in his discretion maintain the corporate status of the Debtors if deemed reasonably necessary or desirable to aid in the winding down the Debtors' affairs and liquidating the assets in the Estate.

       6.5    **Dissolution of the Committee**. On the Effective Date, (A) the Committee shall be automatically dissolved and all of its members, Professionals and agents shall be deemed released of their duties, responsibilities and obligations, and shall be without further duties, responsibilities and authority in connection with the Debtors, the Bankruptcy Case, the Plan or its implementation, and (B) the Term Lender Complaint filed by the Committee shall be deemed dismissed with prejudice by the Committee.  Notwithstanding, the Committee shall continue to exist solely to prosecute any applications for payment of its fees and expenses and reimbursement of member's expenses, and for purposes of filing a dismissal of the Term Lender Complaint.

       6.6    **Claims Oversight Committee**.  Prior to dissolution of the Committee pursuant to Section 6.5, the Committee shall designate two of its members to serve on a "Claims Oversight Committee," such committee shall become effective on the Effective Date.  Prior to filing an objection to or settling a Claim following the Effective Date, the Plan Administrator shall first provide advance notice (a minimum of five (5) Business Days prior to filing any objections to or settling any Claims), and consult (using reasonable efforts) with the Claims Oversight Committee regarding the Claims Oversight Committee's position and opinion on the merits of such proposed objection or settlement.  The Plan Administrator shall have final authority on the filing of objections to or in seeking approval of a settlement of Claims.  The Claims Oversight Committee and its members shall serve uncompensated.  The Claims Oversight Committee may hire professionals at its own expense.

       6.7    **Causes of Action and Settlement**.

       (a)    Debtors' Release of Certain Avoidance Actions.  Upon the Effective Date, each of the Releasing Parties hereby waive and release all Persons from any Avoidance Actions and further covenant not to sue upon such Avoidance Actions; provided, however, that the foregoing waiver, release and covenant shall not apply to a Rejecting Consignor in any capacity of such Rejecting Consignor.

       (b)    Debtors' Release of Secured Lenders and DIP Lender.  Upon the Effective Date, each of the Releasing Parties hereby fully, completely and unconditionally release, remise and acquit, and forever discharge the Senior Lender, the Term Lender and the DIP Lender, their respective Successors and Affiliates, including, without limitation, all past and present officers, directors, employees, shareholders, managers and attorneys of or for Jackson Investment Group, LLC, and each of them, of and from any and all Released Claims; and on the Effective Date the Term Lender Complaint filed by the Committee shall be dismissed with prejudice.

       (c)    Debtors' Release of Directors and Officers.  Upon the Effective Date, each of the Releasing Parties hereby fully, completely and unconditionally release, remise and acquit, and forever discharge the Directors and Officers, their respective Successors and Affiliates, including, without limitation, all past and present officers, directors, employees, shareholders,

managers and attorneys of or for Jackson Investment Group, LLC, and each of them, of and from any and all Released Claims.

          (d)    <u>Debtors' Release of Committee</u>.  Upon the Effective Date, each of the Releasing Parties hereby fully, completely and unconditionally release, remise and acquit, and forever discharge the Committee (and its members in their official capacity only), its respective Successors and Affiliates, and each of them, of and from any and all Released Claims; <u>provided, however</u>, the foregoing release shall not apply to any Person that is a Rejecting Consignor or to any claim allowance and reconciliation process in the Debtors' Bankruptcy Case.

          (e)    <u>Additional Provisions Regarding the Releases in Subsections (b), (c) and (d) above</u>.

          (i)    The Releasing Parties and each of them further covenant and agree that neither they, nor any of them, will assert, initiate, institute, prosecute, participate in or maintain, or will instigate, abet or encourage any other person or entity to assert, initiate, institute, prosecute, participate in or maintain, any claim or action of any kind, currently or in the future, against any of the above released parties with respect to any of the Released Claims.

          (ii)    The Releasing Parties severally agree that such Releasing Party shall not pursue any claim or action of any type or nature that such Releasing Party may have, claim to have or assert to have, of any type or nature (including any such claims, demands and causes of action that have not been discharged that may hereafter accrue or arise or which they may in the future acquire in any way), against any non-released Person, that would result in such non-released Person seeking damages, contribution, indemnity, right of set off or any other economic benefit or recovery against an above released party with respect to any Released Claim (a "Resulting Claim"), unless such Releasing Party shall have executed an indemnity in favor of, and in form and substance satisfactory to, the party released above, as applicable, for payment (not collection) of any liability, payment obligations and costs (including, without limitation, advancement of attorneys' and other litigation advisory fees and expenses) that may be incurred in connection with such Resulting Claim.

          (iii)    The releases and related provisions in subsections (b) through (e) above do not, and are not intended to: (x) include non-consensual releases by third parties of any direct cause of action such third party may have against an above released party; or (y) have the effect of releasing any claim or cause of action, if any, arising under the APA, provided that the negotiation of the APA shall not form the basis for any claim or recovery therein.

          (iv)    The releases and related provisions in subsections (b) through (e) above shall be effective upon the Effective Date without the need for the execution and delivery of additional documentation or the entry of any additional Orders of the Bankruptcy Court other than the Confirmation Order.

(f)     Other Causes of Action.  To the extent any Claims or causes of action, subject to subsections (a) through (e) above, constitute Excluded Assets that are vested in the Estate, then in accordance with section 1123(b)(3) of the Bankruptcy Code, the Debtors and the Estate will retain and may (but shall not be required to) enforce all such causes of action except to the extent such Claims or causes of action have been waived, released or settled pursuant to this Plan.  Specifically, the Debtors and the Estate retain any and all (i) Avoidance Actions set forth above in the "provided, however" clause in subsection (a) above, (ii) any and all claims against Rejecting Consignors in any capacity, including counterclaims asserted by the Debtors against Plaintiffs in the Consignment Lawsuit who are Rejecting Consignors and (iii) any and all claims and rights regarding the claim allowance and reconciliation process in the Debtors' Bankruptcy Case.  The failure of the Debtors to specifically list any Claim, cause of action, suit, or proceeding does not, and will not be deemed to, constitute a waiver or release by the Debtors or the Estates of such Claim, cause of action, suit, or proceeding.

(g)     Settlement with Initial Plaintiffs in the Consignment Lawsuit.  In addition to the Class 4 treatment provided in this Plan, on account of the Debtors' settlement with the initial plaintiffs in the Consignment Lawsuit, the Debtors shall pay the sum of $500,000 to the Consenting Consignment Vendors that were the initial plaintiffs in the Consignment Lawsuit, to be paid within one (1) Business Day following the first to occur between entry of the Confirmation Order and entry of an order approving the settlement.  To the extent the Debtors have not made this payment as of the Closing, the Buyer shall make this payment in accordance with Section 2.3(a)(iv) of the APA.  For convenience, the payment shall be made to the attorney of record for such plaintiffs.

(h)     Settlement with Unsecured Creditors that Provide Trade Credit to the Buyer Post-Closing.  In addition to the Class 7 treatment provided in this Plan, pursuant to Section 2.3(a)(iii) of the APA, the Buyer agrees to pay to each Trade Creditor that portion of the liabilities and obligations owed as of the Petition Date by the Debtors to each Trade Creditor equal to five (5%) percent of the amount, after reduction for any such Trade Creditor's 503(b)(9) Claim, (A) set forth in the Sellers' bankruptcy schedules; or (B) of such Trade Creditor's Claim as may otherwise be agreed to by the Buyer and such Trade Creditor, to be paid by December 31, 2015; provided that such Trade Creditor agrees to provide to the Post-Closing Business Trade Terms for no less than one (1) year following the Closing Date.

**6.8     Further Authorization**.  The Plan Administrator, on behalf of the Debtors, shall be entitled to seek such orders, judgments, injunctions and rulings as it deems necessary or desirable to carry out the intentions and purposes, and to give full effect to the provisions, of this Plan.

# ARTICLE 7
# DISTRIBUTIONS

**7.1     Disbursing Agent**.  Unless otherwise provided for herein, all Distributions under this Plan shall be made by the Plan Administrator on behalf of the Debtors.

24

**7.2     Distributions of Cash**.     Any Distribution of Cash made by the Plan Administrator on behalf of the Debtors may be made by check drawn on a domestic bank or by wire transfer from a domestic bank.

**7.3     Delivery of Distributions.**   The Distribution to a Holder of an Allowed Claim shall be made by the Plan Administrator on behalf of the Debtors (a) at the address set forth on the proof of claim filed by such Holder, (b) at the address set forth in any written notices of address change delivered to the Debtors after the date of any related proof of claim, (c) at the addresses reflected in the Schedules if no proof of claim has been filed and the Debtors have not received a written notice of a change of address, or (d) if the Holder's address is not listed in the Schedules, at the last known address of such Holder according to the Debtors' books and records.  If any Holder's Distribution is returned as undeliverable, no further Distributions to such Holder shall be made unless and until the Debtors or Plan Administrator are notified of such Holder's then-current address.  Amounts in respect of undeliverable Distributions made in Cash shall be retained by the Debtors until such Distributions are claimed.

**7.4     Unclaimed Distributions**  All Distributions returned to the Debtors or Plan Administrator and not claimed within six (6) months of return shall be irrevocably retained by the Debtors notwithstanding any federal or state escheat laws to the contrary and treated as Sellers' Cash purchased by the Buyer under the APA.

**7.5     Distributions to Holders as of the Record Date**.  All Distributions on Allowed Claims shall be made to the Record Holders of such Claims.  As of the close of business on the Record Date, the Claims register maintained for the Bankruptcy Case shall be deemed closed, and there shall be no further change in the Record Holder of any Claim.  The Debtors and Plan Administrator shall have no obligation to recognize any transfer of any Claim occurring after the Record Date.  The Plan Administrator shall instead be entitled to recognize and deal for all purposes under this Plan with the Record Holders as of the Record Date.

**7.6     Fractional Dollars**.   Any other provision of this Plan notwithstanding, the Debtors may make, but shall not be required to make, Distributions or payments of fractions of dollars.  Whenever any payment of a fraction of a dollar under this Plan would otherwise be called for, the actual payment may reflect a rounding of such fraction to the nearest whole dollar (up or down), with half dollars or less being rounded down.

**7.7     Withholding Taxes**.  The Debtors or the Plan Administrator, as the case may be, shall comply with all withholding and reporting requirements imposed by any federal, state, local, or foreign taxing authority, and all Distributions under this Plan shall be subject to any such withholding and reporting requirements.

# ARTICLE 8
## PROVISIONS REGARDING DISPUTED CLAIMS

**8.1     Objections to Claims**.  The Plan Administrator (in consultation with the Claims Oversight Committee), on behalf of the Debtors, shall be entitled to object to Claims, provided, however, the Plan Administrator shall not be entitled to object to Claims (i) that have been Allowed by a Final Order entered by the Bankruptcy Court prior to the Effective Date, or (ii) that

are Allowed by the express terms of this Plan. Unless extended by the Bankruptcy Court upon the Plan Administrator's request made prior to the expiration of the then current deadline, the deadline for objecting to Claims (other than 503(b)(9) Claims) shall be thirty (30) days after the Effective Date.

**8.2** **No Distributions Pending Allowance**. Except as otherwise provided herein (including Sections 8.3 and 9.2(d)), no Distributions will be made with respect to any portion of a Claim unless and until any objection to such Claim has been settled, withdrawn or overruled pursuant to a Final Order of the Bankruptcy Court.

**8.3** **Settlements**. On and after the Effective Date, the Plan Administrator, on behalf of the Debtors, shall have the authority to compromise, settle, otherwise resolve, or withdraw any objections to Claims or any Retained Action without approval of the Bankruptcy Court. Notwithstanding the foregoing, the Plan Administrator may, in its sole discretion, seek approval from the Bankruptcy Court of a proposed settlement when such approval is deemed by the Plan Administrator to be necessary or desirable to achieve and consummate such settlement.

**8.4** **Setoffs**. Subject to section 553 of the Bankruptcy Code, in the event the Debtors have a Claim or cause of action of any nature whatsoever against a Holder of a Claim, the Debtors (or as applicable, the Plan Administrator) may, but are not required to, set off or recoup the Debtors' Claim against such Holder's Claim (and any Distributions or other rights to receive property arising out of such Claim under the Plan) unless any such Claim or cause of action of the Debtors are or will be released under the Plan. Neither the failure to set off nor the allowance of any Holder's Claim under the Plan shall constitute a waiver or release of any Claim or cause of action of the Debtors. For the avoidance of doubt, neither this Section 8.4 nor any other provision of the Plan shall release the setoff and/or recoupment rights of any holder of a Claim in Class 4 and/or Class 7 against the Debtors which setoff and/or recoupment rights are hereby reserved.

## ARTICLE 9
## CONDITIONS TO CONFIRMATION AND CONSUMMATION OF THE PLAN

**9.1** **Conditions to Confirmation**. The following are conditions precedent to the occurrence of the Confirmation Date, each of which must be satisfied or waived by the Debtors and the Buyer in accordance with Section 9.3.

(a) The entry of an order approving the Disclosure Statement and finding that it contains adequate information pursuant to section 1125 of the Bankruptcy Code; and

(b) The proposed Confirmation Order shall be in a form and substance satisfactory to the Debtors and Buyer, after consultation with the Committee.

**9.2** **Conditions to the Effective Date**. The following are conditions precedent to the occurrence of the Effective Date, each of which must be satisfied or waived in writing by the Debtors.

(a) The Confirmation Order shall have been entered in a form and substance

26

satisfactory to the Debtors and Buyer, after consultation with the Committee;

> (b)     The Sale Order shall have been entered in a form and substance satisfactory to the Buyer in its sole discretion;

> (c)     Neither the Confirmation Order nor the Sale Order shall not have been stayed, vacated, reversed or modified;

> (d)     The Closing Date for the Sale to Buyer shall have occurred (including the payment by Buyer of the undisputed portion of 503(b)(9) Claims at the Closing, regardless if such Claims have been Allowed as of the Closing); and

> (e)     All material documents and agreements necessary to implement the Plan, including the APA, shall have been effected or executed.

**9.3     Waiver of Conditions**.  The conditions set forth in Sections 9.1 and 9.2 that are capable of being waived may be waived at any time by a writing signed by an authorized representative of both the Debtors and the Buyer without notice or order of the Bankruptcy Court.

**9.4     Effects of Failure of Conditions**.  In the event that one or more of the conditions specified in Section 9.2 of the Plan have not occurred (or been waived), upon notification submitted by the Debtors to the Bankruptcy Court: (a) the Confirmation Order, automatically and without further order of the Bankruptcy Court, shall be, and shall be deemed, vacated, null and void, with no force or legal effect whatsoever; (b) no distributions under the Plan shall be made; (c) all Property of the Estates shall remain with (or revest in) the Debtors' Estates; (d) the Debtors and all Holders of Claims and Interests shall be restored to the status quo ante as of the day immediately preceding the Confirmation Date as though the Confirmation Date never occurred; and (e) the Debtors' obligations with respect to the Claims and Interests shall remain unchanged and nothing contained herein shall constitute or be deemed a waiver or release of any Claims or Interests by or against the Debtors or any other Person or Entity or to prejudice in any manner the rights of the Debtors, the Committee or any Person or Entity in any further proceedings involving the Debtors.

# ARTICLE 10
## EFFECT OF CONFIRMATION

**10.1     Injunction**.  Entry of the Confirmation Order shall act as a permanent injunction against any Person commencing or continuing any action, employment of process, or act to collect, offset, or recover any Claim or Cause of Action satisfied, released, or discharged under this Plan to the fullest extent authorized or provided by the Bankruptcy Code, including, without limitation, to the fullest extent provided for or authorized by §§ 524 and 1141 thereof.

**10.2     Exculpation and Limitation of Liability**.  The Debtors, the Committee (and its members in their official capacity only), the Buyer and the Plan Administrator and their respective members, managers, officers, directors, employees, advisors, attorneys, representatives, financial advisors, investment bankers, or agents and any of such parties'

successors and assigns, shall not have or incur, and are hereby released from, any claim, obligation, cause of action, or liability to one another or to any Holder of any Claim or Interest, or any other party-in-interest, or any of its respective agents, employees, representatives, financial advisors, attorneys, or Affiliates, or any of their successors or assigns, for any act or omission in connection with, relating to, or arising out of the Bankruptcy Case, the negotiation and filing of this Plan, the filing of the Bankruptcy Case, the pursuit of confirmation of this Plan, the consummation of this Plan, or the administration of this Plan or the property to be distributed under this Plan, except for their willful misconduct or gross negligence, and in all respects shall be entitled to reasonably rely upon the advice of counsel with respect to its duties and responsibilities under this Plan.  Nothing contained in this section shall preclude or impair any Holder of an Allowed Claim from filing an action in the Bankruptcy Court against the released parties above to compel the making of Distributions contemplated or required by or to otherwise enforce the terms of the Plan on account of such Claim.

## ARTICLE 11
## RETENTION OF JURISDICTION

**11.1    Retention of Jurisdiction**.    Subsequent to the Effective Date, the Bankruptcy Court shall have or retain jurisdiction for the following purposes:

(a)    To adjudicate objections concerning the allowance, priority or classification of Claims and any subordination thereof, and to establish a date or dates by which objections to Claims must be filed to the extent not established herein;

(b)    To liquidate the amount of any disputed, contingent or unliquidated Claim, to estimate the amount of any disputed, contingent or unliquidated Claim, to establish the amount of any reserve required to be withheld from any distribution under this Plan on account of any disputed, contingent or unliquidated Claim;

(c)    To resolve all matters related to the rejection, and assumption and/or assignment of any Executory Contract or Unexpired Lease of the Debtor;

(d)    To hear and rule upon all Claims or causes of action commenced and/or pursued by the Debtors or Plan Administrator;

(e)    To hear and rule upon all applications for compensation of Professionals;

(f)    To remedy any defect or omission or reconcile any inconsistency in this Plan, as may be necessary to carry out the intent and purpose of this Plan;

(g)    To construe or interpret any provisions in this Plan and to issue such orders as may be necessary for the implementation, execution and consummation of this Plan, to the extent authorized by the Bankruptcy Court;

(h)    To adjudicate controversies arising out of the administration of the Estates or the implementation of this Plan;

(i)    To make such determinations and enter such orders as may be necessary to effectuate all the terms and conditions of this Plan, including the Distribution of funds from the Estate and the payment of claims;

(j)    To determine any suit or proceeding brought by the Debtors and/or the Plan Administrator to recover property under any provisions of the Bankruptcy Code;

(k)    To hear and determine any tax disputes concerning the Debtors and to determine and declare any tax effects under this Plan;

(l)    To determine such other matters as may be provided for in this Plan or the Confirmation Order or as may be authorized by or under the provisions of the Bankruptcy Code;

(m)    To determine any controversies, actions or disputes that may arise under the provisions of this Plan, or the rights, duties or obligations of any Person under the provisions of this Plan;

(n)    To adjudicate any suit, action or proceeding seeking to enforce any provision of, or based on any matter arising out of, or in connection with, any agreement pursuant to which the Debtors sold any of its assets during the Bankruptcy Case; and

(o)    To enter a Final Decree.

**11.2    Alternative Jurisdiction**.  In the event that the Bankruptcy Court is found to lack jurisdiction to resolve any matter, then the District Court shall hear and determine such matter. If the District Court does not have jurisdiction, then the matter may be brought before any court having jurisdiction with regard thereto.

**11.3    Final Decree**.  After all rights, duties, and obligations of the Debtors and/or the Plan Administrator have been satisfied or waived under this Plan, the Plan Administrator may file a motion for entry of a Final Decree.  The Final Decree may provide for a release and discharge of the Plan Administrator.

## ARTICLE 12
## MISCELLANEOUS PROVISIONS

**12.1    Modification of the Plan**.  The Debtors or the Plan Administrator on behalf of the Debtors may modify this Plan pursuant to section 1127 of the Bankruptcy Code and as herein provided, to the extent applicable law permits, and after consultation with the Committee.  The Debtors or the Plan Administrator on behalf of the Debtors may modify this Plan in accordance with this paragraph, before or after confirmation, without notice or hearing, or after such notice and hearing as the Bankruptcy Court deems appropriate, if the Bankruptcy Court finds that the modification does not materially and adversely affect the rights of any parties in interest which have not had notice and an opportunity to be heard with regard thereto.  The Debtors reserves the right in accordance with section 1127 of the Bankruptcy Code to modify this Plan at any time before the Confirmation Date, after consultation with the Committee.

29

**12.2** **Substantive Consolidation.**

(a)    The Plan serves as a motion seeking, and entry of the Confirmation Order shall constitute, the approval, pursuant to section 105(a) of the Bankruptcy Code, effective as of the  Effective Date (but retroactive for solicitation and voting purposes), of the substantive consolidation for voting, confirmation and distribution purposes of the Family Christian, LLC (Case No. 15-00643-jtg), Family Christian Holding, LLC (Case No. 15-00642-jtg), and FCS Giftco, LLC (Case No. 15-00644-jtg).

(b)    In the event that the Bankruptcy Court orders partial, or does not order, substantive consolidation, the Debtors reserve the right to (i) proceed with no or partial Plan consolidation, (ii) propose one or more sub-Plans with respect to one or more Debtors, (iii) proceed with confirmation of one or more sub-Plans to the exclusion of the other sub-Plans, (iv) withdraw some or all of the sub-Plans, or (v) withdraw the Plan.  Subject to the immediately preceding sentence, the Debtors' inability to confirm any Plan consolidation or sub-Plan, or the Debtors' election to withdraw any Plan consolidation or sub-Plan, shall not impair confirmation or consummation of any other Plan consolidation or sub-Plan.

(c)    In the event that the Bankruptcy Court does not order substantive consolidation as requested herein, (i) Claims against the applicable Debtors shall be treated as separate Claims with respect to the estates of such Debtors for all purposes, and such Claims shall be administered as provided in the applicable sub-Plan and (ii) the Debtors shall not be required to re-solicit votes with respect to the Plan or any applicable sub-Plan.

**12.3** **Personally Identifiable Information of Customers**.  With respect to the transfer to Buyer of any "Personally Identifiable Information," as that term is defined in Bankruptcy Code Section 101(41A), of the Debtors' customers, the Debtors and Buyer shall comply with the recommendations respecting the treatment of such Personally Identifiable Information by a "Qualified Buyer" as contained in the "Consumer Privacy Ombudsman's Initial Report" (the "CPO Report") filed with the Bankruptcy Court [Docket No. 887], with the Buyer obligated to meet or maintain the existing standards and level of information security currently maintained by the Debtors pursuant to their existing privacy policies, and to provide the opt-out notice to customers generally described in the CPO Report.

**12.4** **Preparation of Tax Returns**.  The Debtors or the Plan Administrator on behalf of the Debtors shall file all tax returns and other filings with governmental authorities and may file determination requests under section 505(b) of the Bankruptcy Code to resolve any Disputed Claim relating to taxes with a governmental authority.

**12.5** **Headings**.  The headings of the Articles and the sections of this Plan have been used for convenience only and shall not limit or otherwise affect the meaning thereof.

**12.6** **Revocation of Plan**.    The Debtors reserve the right, unilaterally and unconditionally, to revoke and/or withdraw this Plan at any time prior to entry of the Confirmation Order, and upon such revocation and/or withdrawal this Plan shall be deemed null and void and of no force and effect.

**12.7    No Admissions; Objection to Claims**.  Nothing in this Plan shall be deemed to constitute an admission that any individual, corporation, partnership, trust, venture, governmental unit, or any other form of legal entity as being the Holder of a Claim is the Holder of an Allowed Claim, except as expressly provided in this Plan.

**12.8    No Bar to Suits**.  Except as otherwise provided in this Plan, neither this Plan or confirmation hereof shall operate to bar or estop the Debtors or the Plan Administrator on behalf of the Debtors from commencing any cause of action, or any other legal action against any Holder of a Claim or any individual, corporation, partnership, trust, venture, governmental unit, or any other form of legal entity, whether such cause of action, or any other legal action arose prior to or after the Confirmation Date and whether or not the existence of such cause of action, or any other legal action was disclosed in any disclosure statement filed by the Debtors in connection with this Plan or whether or not any payment was made or is made on account of any Claim.

**12.9    Exhibits/Schedules**.  Any exhibits and schedules to this Plan and/or the Disclosure Statement, including the Plan Supplement, and all attachments thereto, are incorporated into and are a part of this Plan as if set forth in full herein.

**12.10    Further Assurances**.  The Debtors, Reorganized Debtors and all Holders of Claims receiving Distributions under this Plan and all other parties in interest may and shall, from time to time, prepare, execute and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of this Plan.

**12.11    Disclaimer Regarding Tax Consequence**.  Tax consequences to creditors and Interest Holders may result from confirmation of the Plan.  Each Holder of a Claim or Interest should seek professional tax advice, including the evaluation of recently enacted or pending legislation, because recent changes in taxation may be complex and lack authoritative interpretation.  No specific tax consequences to any Creditor or Holder of an Interest are represented, implied, or warranted.  THE PROPONENT ASSUMES NO RESPONSIBILITY FOR THE TAX EFFECT THAT CONSUMMATION OF THE PLAN WILL HAVE ON ANY GIVEN HOLDER OF A CLAIM OR INTEREST.  HOLDERS OF CLAIMS OR INTERESTS ARE STRONGLY URGED TO CONSULT THEIR OWN TAX ADVISORS CONCERNING THE FEDERAL, STATE, LOCAL AND FOREIGN TAX CONSEQUENCES OF THE PLAN TO THEIR INDIVIDUAL SITUATION

**12.12    Subsequent Conversion**.   In the event that following the Effective Date any Bankruptcy Case is converted to a case under chapter 7 of the Bankruptcy Code, all remaining property of that Debtor's Estate as of conversion will become property of that Debtor's Chapter 7 estate.

**12.13    United States Trustee Fees**  The Debtors shall be responsible for timely payment of fees incurred pursuant to 28 U.S.C. § 1930(a)(6), as funded pursuant to the APA.  After confirmation, the Debtors, or the Plan Administrator on behalf of the Debtors, shall file with the Bankruptcy Court and the United States Trustee a quarterly post confirmation report, in the format specified by the U.S. Trustee, for each quarter that the case remains open. The United States Trustee quarterly fee shall be calculated on all disbursements made following the

Effective Date by the Debtors, or the Plan Administrator on behalf of the Debtors, whether pursuant to the Plan or not, until the Bankruptcy Case is closed, converted to chapter 7 or dismissed. The Bankruptcy Court shall retain jurisdiction to decide any post confirmation dispute concerning the United States Trustee quarterly fees.

   **12.14** **Post Effective Date Disputes**. After the Effective Date, if the Debtors, or the Plan Administrator on behalf of the Debtors, allegedly fail to comply with the terms of the Plan, any aggrieved creditor who wishes to enforce its rights under the Plan must file a motion with the Bankruptcy Court for whatever relief is appropriate, and the Debtors, or the Plan Administrator on behalf of the Debtors, shall retain all defenses to any such motion.

   **12.15** **Name Change**. On the Effective Date, the Debtors' names shall change from Family Christian, LLC to "FCO, LLC", from Family Christian Holding, LLC to "FCH, LLC" and from FCS Giftco, LLC to "FCG, LLC", or such similar names if such names are not available, without the need for the filing of any documents with any state agencies or governmental officials. In addition, the Debtors' names on all pleadings filed with the Bankruptcy Court shall be changed in accordance with this paragraph.

   **12.16** **Closing of Cases**. The Confirmation Order, subject to the Effective Date, shall act as a final decree pursuant to section 350 of the Bankruptcy Code formally closing the Bankruptcy Cases of Family Christian Holding, LLC and FCS Giftco, LLC; provided, however, that the Bankruptcy Case of Family Christian, LLC shall remain open until such time as the Plan Administrator files with the Bankruptcy Court such documents required by the Bankruptcy Rules and any applicable orders of the Bankruptcy Court to close such Bankruptcy Case. Upon the Effective Date, counsel for the Debtors shall submit proposed forms of order to the Bankruptcy Court to enter on the docket of Family Christian Holding, LLC and FCS Giftco, LLC to close said Bankruptcy Cases effective on the Effective Date, except for the Bankruptcy Case of Family Christian, LLC.

   **12.17** **Conflicts in Documents**. In the event that there is a conflict between the terms of the Sale Order, the Purchase Agreement, the Confirmation Order, this Plan, the Disclosure Statement, any other order of the Court, or any other document, the item in the immediately preceding list that is first listed between the two items shall control.

[signature on next page]

32

24650447 v2

Dated: July 13, 2015                    Respectfully submitted,

FAMILY CHRISTIAN, LLC (for itself and on behalf of the other Debtors)


/s/ Charles Bengochea

By:_____

Name: Charles Bengochea
       President and CEO


KELLER & ALMASSIAN, PLC
A. Todd Almassian (P55467)
Greg J. Ekdahl (P67768)
230 East Fulton
Grand Rapids, MI 49503
(616)364-2100

- and -

BURR & FORMAN LLP
Erich Durlacher (Ga Bar No. 235563)
Brad Baldwin (Ga Bar No. 034220)
171  17th Street, N.W. - Suite 1100
Atlanta, Georgia  30363
(404) 815-3000
*Attorneys for the Debtors*

33

24650447 v2