# UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF MICHIGAN

———————

In re:                                              **CHAPTER 11**

**FAMILY CHRISTIAN, LLC** *et al.*[1]          **CASE NO. 15-00643-jtg**
                                                    **(Jointly Administered)**
                        **Debtors.**

———————————————————/    **HON. JOHN T. GREGG**

## FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER
## (I) FINALLY APPROVING DISCLOSURE STATEMENT, AND (II) CONFIRMING
## <u>DEBTORS' THIRD AMENDED JOINT PLAN OF LIQUIDATION</u>

Before the Court is the *Debtors' Third Amended Joint Plan of Liquidation* [Dkt. No. 991], as may be modified or amended and dated August 11, 2015, a copy of which is attached hereto as <u>Exhibit "A"</u> (the "**Plan**")[2] and the *Disclosure Statement for Debtors' Third Amended Joint Plan of Liquidation* [Dkt. No. 992] (the "**Disclosure Statement**") filed by the above-captioned debtors (the "**Debtors**"). On July 10, 2015, the Court entered an *Order (I) Conditionally Approving Disclosure Statement, (II) Fixing Voting Record Date, (III) Scheduling Disclosure Statement and Plan Confirmation Hearing and Approving Form and Manner of Related Notice and Objection Procedures, (IV) Approving Procedures and Deadlines Concerning Executory Contracts and Unexpired Leases, (V) Approving Solicitation Packages and Procedures and Deadlines for Soliciting, Receiving and Tabulating Votes on the Plan, and (VI) Approving the Forms of Ballots, and Related Relief* [Dkt. No. 988] (the "**Plan Procedures Order**"). Pursuant to the Plan Procedures Order, a hearing to consider final approval of the

---

[1] The Debtors are: Family Christian, LLC (Case No. 15-00643-jtg), Family Christian Holding, LLC (Case No. 15-00642-jtg), and FCS Giftco, LLC (Case No. 15-00644-jtg).

[2] Unless otherwise defined herein, capitalized terms used herein shall have the meanings ascribed to such terms in the Plan. Any term used in the Plan or this Confirmation Order that is not defined in the Plan or this Confirmation Order, but that is used in the Bankruptcy Code or the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") shall have the meaning ascribed to such term in the Bankruptcy Code or the Bankruptcy Rules, as applicable.

Disclosure Statement and confirmation of the Plan was scheduled and conducted by the Court on August 11, 2015 (the "**Confirmation Hearing**").

No objections to the Disclosure Statement have been filed prior to the Confirmation Hearing.  Two objections to confirmation of the Plan were filed (collectively, the "**Confirmation Objections**," [Dkt. No. 1070 and 1073]).  The objections that are listed or referenced on attached Exhibit "B"  are not objections to confirmation of the Plan but relate solely to the amount of the Cure Costs needed to be paid for the assumption and assignment of various Executory Contracts and Unexpired Leases, or the assignability of certain contracts, and are referred to collectively as the "**Continued Objections**."  To the extent any Continued Objection constitute an objection to confirmation of the Plan, such objection is treated herein as a Confirmation Objection.

On August 10, 2015, the following pleadings were filed in connection with the Plan and/or in support of the Plan: (i) Debtors' Brief In Support of Confirmation of Debtors' Third Amended Joint Plan of Liquidation [Dkt No. 1092] (the "**Confirmation Brief**"), (ii) the Declaration of Ken Dady in Support of Confirmation of Debtors' Third Amended Joint Plan of Liquidation [Dkt. No. 1090] (the "**Dady Declaration**"), (iii) the Declaration of Gary Murphey in Support of Confirmation of Debtors' Third Amended Joint Plan of Liquidation [Dkt. No. 1091] (the "**Murphy  Declaration**"), (iv) the Affidavit of Michael G. Menkowitz, Counsel To The Official Committee of Unsecured Creditors, in Support of Debtors' Third Amended Joint Plan of Liquidation [Dkt. No. 1088] (the "**Menkowitz Declaration**"); (v) the Affidavit of Michael Deighan, Financial Advisor To The Official Committee of Unsecured Creditors, in Support of Debtors' Third Amended Joint Plan of Liquidation [Dkt. No. 1089] (the "**Deighan Declaration**"); and (vi) the Declaration and Supplemental Declaration of Stephenie Kjontvedt on Behalf of Epiq Bankruptcy Solutions, LLC Regarding Voting and Tabulation of Ballots

Accepting and Rejecting Debtors' Third Amended Joint Plan of Liquidation [Dkt. Nos. 1086, 1094] (the "**Voting Declaration**").

Additionally, the Debtors announced at the Confirmation Hearing certain technical amendments to the Plan as identified in Paragraph 19 below of this Confirmation Order (collectively, the "**Technical Amendments**"), which are  incorporated in the version of the Plan attached hereto as Exhibit "A".

Having considered the record before the Court, including but not limited to the docket in these chapter 11 cases and any related adversary proceeding(s), and the presentations of parties present at the Confirmation Hearing, THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW**:**

**Finding and Conclusions / Judicial Notice**

A.    The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Fed. R. Bankr. P. 7052, made applicable to this proceeding pursuant to Fed. R. Bankr. P. 9014. To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

B.    The Court takes judicial notice of the docket in these chapter 11 cases and any related adversary proceedings or claims register(s) maintained by the Clerk of the Bankruptcy Court and/or by Epiq Bankruptcy Solutions, LLC, the duly-appointed claims and noticing agent, including, without limitation, all pleadings and other documents filed, all orders entered, and all evidence and argument made, proffered, or adduced at the hearings held before the Court during the pendency of these chapter 11 cases.

**Jurisdiction and Venue**

C.      On February 11, 2015 (the "**Petition Date**"), the Debtors commenced their cases by filing voluntary petitions for relief under chapter 11 of the Bankruptcy Code, 11 U.S.C. §§ 101-1330, *et seq.* (the "**Bankruptcy Code**").  The Debtors are continuing in possession of their property and operating and managing their business, as debtors-in-possession, pursuant to sections 1107 and 1108 of the Bankruptcy Code.

D.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157(a) and 1334. This is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A), (L) and (O), and the Court can exercise its subject matter jurisdiction pursuant to 28 U.S.C. § 157(b)(1). The Debtors' principal place of business is located in Grand Rapids, Michigan, and venue in this District is proper under 28 U.S.C. §§ 1408 and 1409.

E.      On February 23, 2015, the United States Trustee appointed an Official Committee of Unsecured Creditors [Dkt. No. 158] (the "**Committee**").

**<u>Disclosure Statement / Notice</u>**

F.      The Disclosure Statement contains adequate information as required under section 1125 of the Bankruptcy Code.

G.      Epiq Bankruptcy Solutions, LLC (the "**Solicitation Agent**") previously filed an *Affidavit of Service of Solicitation Materials*. [Dkt. No. 1015].

H.      The Debtors previously filed and served pursuant to the Plan Procedures and the Plan a "*Notice to Certain Contract Parties of (I) Proposed Sale of Debtors' Assets, (II) Proposed Assumption and Assignment of Debtors' Contracts, (III) Deadline for Objecting to Cure Costs, and (IV) Hearing on the Requested Approval Thereof* [Dkt. Nos. 996, 997] (the "**Notice to Contract Parties**").  The Notice to Contract Parties includes, among other notice items, an attached schedule (the "**Cure Cost Schedule**")  listing the executory contracts and unexpired leases that may be assumed and assigned by the Debtors pursuant to the APA (defined herein)

4

and the Debtors' calculation of the applicable cure amounts relating to such contracts.   A copy of the Cure Cost Schedule is also attached as Exhibit "C" to the Disclosure Statement.

I.      The Disclosure Statement, the Plan, the ballots, the Plan Procedures Order, notice regarding the Confirmation Hearing and related deadlines for objecting to the Plan (the "**Plan Procedures Notice**"), and related materials were transmitted and served as required by the Plan Procedures Order and in compliance with the Bankruptcy Code, the Bankruptcy Rules, and any applicable local bankruptcy rules, and such transmittal and service constitute proper and sufficient notice reasonably calculated, under the circumstances, to apprise creditors and interested parties of the pendency of the Plan and the Confirmation Hearing and afford them an opportunity to present their objections and no other or further notice is or shall be required.

J.      The non-Debtor parties to each of the Executory Contracts and Unexpired Leases to be assumed and assigned under the Plan were afforded good and sufficient notice of such assumption and assignment and were provided with an opportunity to object and to be heard with respect to the ability of the Buyer to provide adequate assurance of future performance and on any other ground.

**Voting**.

K.      Votes to accept and reject the Plan have been solicited with proper and sufficient notice and tabulated fairly, in good faith, and in a manner consistent with the Bankruptcy Code, the Bankruptcy Rules, and industry practice.

**Burden of Proof**.

L.      The Debtors have the burden of proving the elements of section 1129(a) (and if applicable, section 1129(b)) of the Bankruptcy Code by a preponderance of the evidence and they have met that burden as further found and determined herein.

**Compliance With Sections 1123 and 1129 of the Bankruptcy Code**.

24802500 v8

M.    <u>Section 1129(a)(1) - Plan's Compliance with Bankruptcy Code</u>. The Plan complies with all applicable provisions of the Bankruptcy Code as required by section 1129(a)(1) of the Bankruptcy Code, including, without limitation, sections 1122 and 1123 of the Bankruptcy Code.

N.    <u>Sections 1122(a) and 1123(a)(1)-(4)</u>.  The Plan satisfies sections 1122(a) and 1123(a)(1) of the Bankruptcy Code and designates separate Classes of Claims, other than Administrative Expense Claims, Priority Claims and other unclassified Claims set forth in the Plan, and each Class contains Claims that are substantially similar to the other Claims within that Class.  The Plan satisfies sections 1123(a)(2) through (4) of the Bankruptcy Code by identifying each Class that is not impaired, by specifying the treatment of each Class that is impaired, and by providing the same treatment for each Claim within a particular Class.

O.    <u>Section 1123(a)(5)</u>.   The Plan and the various documents set forth therein or incorporated by reference provide adequate means for the Plan's implementation, including *inter alia* (i) the sale of substantially all assets of the Debtors to FCS Acquisition, LLC (the "**Buyer**") pursuant to the Asset Purchase Agreement between the Debtors and the Buyer (the "**APA**"),  (ii) the deemed consolidation of the Debtors,  (iii)  the vesting of the Excluded Assets (as defined in the APA) in the Debtors' Estate, and  (iv)  the appointment of the Plan Administrator. Accordingly, the Plan satisfies section 1123(a)(5) of the Bankruptcy Code.

P.    <u>Sections 1123(a)(6) - (a)(8)</u>. Section 1123(a)(6) of the Bankruptcy Code is not applicable to the Plan since it does not provide for the issuance of any interests in any Debtors. Section 1123(a)(7) does not apply as the Plan provides for the dissolution of the Debtors and it does not provide for the selection of any officers and directors of the Debtors. To the extent the statute applies, the Plan provides for the appointment of Gary Murphey as the Plan Administrator

6

for the Debtors for purposes of winding up the Debtors' affairs.  Section 1123(a)(8) does not apply as the Debtors are not individuals.

Q.    <u>Section 1123(b)</u>.  The provisions of the Plan comply with, and are not inconsistent with, the applicable provisions of the Bankruptcy Code, including section 1123(b).    Among other items, the Plan identifies and impairs or, as applicable leaves unimpaired, each Class of Claims pursuant to section 1123(b)(1); it provides pursuant to section 1123(b)(2) for the assumption and assignment, or rejection, of the Debtors previously unrejected executory contracts and unexpired leases; it provides pursuant to section 1123(b)(3) for the Plan Administrator to retain, enforce or settle any claim or interest that belongs to the Debtors and becomes vested in the Estate as an Excluded Asset; it provides pursuant to section 1123(b)(4) for the sale of substantially all of the property of the Debtors and the distribution of proceeds of such sale in accordance with the Bankruptcy Code.  Pursuant to section 1123(b)(6) of the Bankruptcy Code, the Plan contains other customary provisions that are consistent with the Bankruptcy Code, including: (i) provisions governing Distributions on account of Allowed Claims, including the timing, delivery and calculation of amounts to be distributed; (ii) procedures for resolving Disputed Claims; (iii) provisions regarding the modification of the Plan; (iv) provisions for an injunction against certain Persons from engaging in certain actions regarding Claims or Causes of Action that are satisfied or discharged under the Plan; and (v) provisions for  the retention of jurisdiction by this Court with respect to certain matters listed in Article 11 of the Plan.  The failure to specifically address a provision of the Bankruptcy Code in this Confirmation Order shall not diminish or impair the effectiveness of this Confirmation Order.

R.    <u>Bankruptcy Rule 3016(a)</u>.  The Plan is dated and identifies the entities submitting the Plan as proponents, thereby satisfying Bankruptcy Rule 3016(a).

24802500 v8

S.      <u>Section 1129(a)(2) - Plan Proponents' Compliance with Bankruptcy Code</u>.   The Debtors have complied with the applicable provisions of the Bankruptcy Code.  The Debtors are proper proponents of the Plan and have solicited acceptances of the Plan in accordance with the requirements of section 1125 of the Bankruptcy Code, the Bankruptcy Rules, and the Plan Procedures Order. The Debtors and their respective agents and professionals have acted in "good faith" within the meaning of section 1125(e) of the Bankruptcy Code.  Pursuant to the Plan Procedures Order, on or about July 15, 2015, the Debtors, through the Solicitation Agent, mailed, by first class mail, postage prepaid, to each creditor specified in the Plan Procedures Order a solicitation package containing copies of, among other things: (i) solicitation letters from the Debtors and the Committee; (ii) the Plan; (iii) the Disclosure Statement; (iv) a ballot and instructions for completing same; (v) the Plan Procedures Order, and (vi) the Plan Procedures Notice.  Creditors not entitled to vote on the Plan were mailed copies of the Plan Procedures Notice and a notice of non-voting status.  The Disclosure Statement and the procedures by which the ballots for acceptance or rejection of the Plan were solicited and tabulated were adequate, fair, properly conducted and in accordance with Bankruptcy Rules 3017 and 3018 and section 1126(b) of the Bankruptcy Code.   Accordingly, the Plan satisfies section 1129(a)(2) of the Bankruptcy Code.

T.      <u>Section 1129(a)(3) - Plan Proposed in Good Faith</u>.  The Debtors have proposed the Plan in good faith and not by any means forbidden by law. Therefore, the Plan complies with section 1129(a)(3) of the Bankruptcy Code.

U.      <u>Section 1129(a)(4) - Payment for Services</u>.  Any payment made or to be made by any of the Debtors for services or for costs and expenses in or in connection with these chapter 11 cases, or in connection with the Plan and incident to these chapter 11 cases, has been

8

24802500 v8

approved by, or is subject to the approval of, the Court as reasonable, thereby satisfying section 1129(a)(4) of the Bankruptcy Code.

V.      <u>Section 1129(a)(5) - Identity of Management</u>.  Sections 6.2 and 6.3 of the Plan provides for the vesting of all Excluded Assets in the Estate (together with any other possible property of the Debtors not transferred to the Buyer) and identifies the person appointed as the Plan Administrator and serving in that capacity as the appointed representative of the Estates pursuant to section 1123(b)(3)(B) of the Bankruptcy Code, and such appointment(s) are consistent with the interests of creditors and public policy.  Therefore, the Plan complies with section 1129(a)(5) of the Bankruptcy Code

W.      <u>Section 1129(a)(6) - No Rate Changes</u>.   The Plan does not involve the establishment of rates over which any regulatory commission has or will have jurisdiction after confirmation. Therefore, section 1129(a)(6) of the Bankruptcy Code does not apply to the Plan.

X.      <u>Section 1129(a)(7) - Best Interests of Creditors</u>. With respect to each impaired Class of Claims or Interests, each Holder in such Class has either accepted the Plan or will receive or retain under the Plan on account of such Claim or Interests property of a value, as of the Effective Date, that is not less than the amount that such Holder would receive or retain if the Debtors were liquidated on the Effective Date under chapter 7 of the Bankruptcy Code. Therefore, the Plan complies with section 1129(a)(7) of the Bankruptcy Code.

Y.      <u>Section 1129(a)(8) - Acceptance by Certain Classes</u>.   The following Classes are unimpaired and deemed to accept the Plan:  Class 1 (Priority Non-Tax Claims); Class 5 (Secured Tax Claims); and Class 6 (Miscellaneous Secured Claims).

The following Classes are impaired and, as indicated in the Voting Declaration, such Classes have accepted the Plan because pursuant to section 1126(c) of the Bankruptcy Code more than one-half (1/2) of the number and at least two-thirds (2/3) of the dollar amount actually

voting have voted to accept the Plan: Class 2 (Senior Lender Secured Claims); Class 3 (Term Lender Secured Claims); Class 4 (Consignment Claims); and Class 7 (Unsecured Claims).

Class 8 (Equity Interests) is impaired and does not receive or retain any property under the Plan on account of such Interests. Accordingly, Class 8 is deemed to reject the Plan pursuant section 1126(g) of the Bankruptcy Code, and, therefore, each impaired Class has not accepted the Plan as required by section 1129(a)(8) of the Bankruptcy Code, and the Court shall consider confirmation of the Plan under the cramdown standards of 11 U.S.C. § 1129(b).

Z. <u>Section 1129(a)(9) - Treatment of Administrative Expenses, Priority Non-Tax Claims, and Priority Tax Claims</u>. The treatment of Administrative Expenses and Priority Non-Tax Claims pursuant to Sections 2.2 and 3.2 of the Plan, respectively, satisfies the requirements of sections 1129(a)(9)(A) and (B) of the Bankruptcy Code, and the treatment of Priority Tax Claims pursuant to Section 2.1 of the Plan satisfies the requirements of section 1129(a)(9)(C) of the Bankruptcy Code.

AA. <u>Section 1129(a)(10) - Acceptance By One Impaired Class</u>. The Plan has been accepted by all voting, impaired Classes: Class 2 (Senior Lender Secured Claim); Class 3 (Term Lender Secured Claim); Class 4 (Consignment Claims) and Class 7 (Unsecured Claims). Because at least one impaired Class of Claims has accepted the Plan, determined without including any acceptance of the Plan by any insider, the Plan satisfies the requirements of section 1129(a)(10) of the Bankruptcy Code.

BB. <u>Section 1129(a)(11) - Feasibility</u>. The Plan calls for the liquidation of the Debtors. As a result, confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtors. Therefore, the Plan complies with section 1129(a)(11) of the Bankruptcy Code.

CC.    <u>Section 1129(a)(12) - Payment of Fees</u>.  Pursuant to Section 12.13 of the Plan, all fees payable under 28 U.S.C. § 1930 will be paid by the Debtors, or as applicable by the Plan Administrator, until such time as the Debtors' chapter 11 cases are closed or dismissed. Therefore, the Plan complies with section 1129(a)(12) of the Bankruptcy Code.

DD.    <u>Section 1129(a)(13) - Retiree Benefits</u>.  The Debtors do not sponsor or provide any retiree benefit plans within the meaning of section 1114 of the Bankruptcy Code. Accordingly, section 1129(a)(13) of the Bankruptcy Code is not applicable to the Plan.

EE.    <u>Section 1129(a)(14) - Domestic Support Obligations</u>.   The Debtors are not required to pay any domestic support obligations.   Accordingly, section 1129(a)(14) of the Bankruptcy Code is not applicable to the Plan.

FF.    <u>Section 1129(a)(15) - Debtors Are Not Individuals</u>.   The Debtors are not individuals.   Accordingly, section 1129(a)(15) of the Bankruptcy Code is not applicable to the Plan.

GG.    <u>Section 1129(a)(16) - Transfers</u>. Each of the Debtors is a moneyed, business, or commercial corporation or trust, and therefore, section 1129(a)(16) of the Bankruptcy Code is not applicable to the Plan.

HH.    <u>Section 1129(b) - Cramdown</u>.   Notwithstanding the deemed rejection of the Plan by Class 8 (Equity Interests), the Plan may still be confirmed under section 1129(b) of the Bankruptcy Code because the Plan does not unfairly discriminate against, and is fair and equitable with respect to the Holders of Interests in Class 8 since, among other possible reasons, no holder of any interest that is junior to the Interests in Class 8 will receive or retain any property under the Plan.

II.    <u>Section 1129(c) - Only One Plan</u>.  The Plan is the only plan filed in these chapter 11 cases, and therefore, section 1129(c) of the Bankruptcy Code does not apply.

11

JJ.     <u>Section 1129(d) - Principal Purpose of Plan</u>.  The principal purpose of the Plan is not the avoidance of taxes or the avoidance of application of Section 5 of the Securities Act of 1933, as amended.  Therefore, the Plan complies with section 1129(d) of the Bankruptcy Code.

KK.     <u>Substantive Consolidation</u>.     Section 12.2 of the Plan provides for the substantive consolidation of the Debtors' estates for the purposes of voting, confirmation and distributions. Based on the evidence presented at or before the Confirmation Hearing, and the entire record of these Chapter 11 Cases, the Court finds that such limited consolidation is factually warranted, fair and equitable, and in the best interest of the Debtors' creditors and estates, because, among other things: (i) aside from the operating debtor, Family Christian, LLC, the other, non-operating Debtors (i.e., Family Christian Holding, LLC and FCS Giftco, LLC) do not have any meaningful assets, and any such possible assets are being transferred to the Buyer pursuant to the APA; (ii) none of the Debtors' unsecured creditors would be harmed by substantive consolidation; (iii) administrative time and expense may be saved by closing the inactive cases of the non-operating Debtors while continuing to keep open the lead docket for these jointly administered chapter 11 cases; and (iv) no objections have been filed raising any objection to substantive consolidation as provided in the Plan, and creditors voted to approve a plan providing for such consolidation.

LL.     <u>Assumption and Rejection of Contracts</u>. Article V of the Plan governing the assumption and assignment or the rejection of executory contracts and unexpired leases satisfies the requirements of sections 365(a), 365(b) and 365(f) of the Bankruptcy Code.   Sufficient and adequate notice of the Cure Cost Schedule and the proposed Cure Costs has been provided.

MM.     <u>Sale of Assets to Buyer</u>.     The Debtors have (1) demonstrated good, sufficient, and sound business purposes and justifications for the Sale, (2) appropriately exercised their business judgment by entering into the Sale and (3) demonstrated compelling circumstances for entry into the Sale pursuant to section 363(b) and 1123 of the Bankruptcy Code.   Business

24802500 v8

justifications for the Sale include the facts that (i) the Debtors' major creditor constituencies support the Sale; (ii) the Plan approves the Sale; and (iii) the APA provides for the preservation of a substantial number of jobs, real estate leases and vendor relationships. The APA and each of the transactions contemplated therein were negotiated, proposed and entered into by the Debtors and Buyer in good faith, without collusion and from arm's-length bargaining positions. Buyer is a "good faith purchaser" within the meaning of section 363(m) of the Bankruptcy Code and, as such, is entitled to all the protections afforded thereby. Neither the Debtors nor Buyer have engaged in any conduct that would cause or permit the Purchase Agreement to be avoided or costs and damages to be imposed under section 363(n) of the Bankruptcy Code. The parties asserting Liens upon the Assets, including specifically the Senior Lender and the Term Lender, have consented to the Sale. The Holders of any other Liens upon the Assets or Claims that constitute interests in the Assets are also deemed to have consented to the Sale as they did not file any objections to the Sale, or they otherwise fall within one or more of the other subsections of section 363(f), and alternatively, the Debtors are permitted to sell the Assets free and clear of such Claims pursuant to 11 U.S.C. § 1125(a)(5)(D) as the Sale provides the means for implementing the Plan. Accordingly, Section 6.1 of the Plan governing the sale of the Assets to Buyer free and clear of all Liens, Claims interest and encumbrances (except for any Permitted Liens as defined in the APA) satisfies the requirements of sections 363(b), 363(f), 365(f), 1125(a)(5)(D) and 1146(a) of the Bankruptcy Code, among any other applicable sections of the Bankruptcy Code and Bankruptcy Rules governing the sale of the Assets.

NN.    <u>Releases and Exclupation</u>. All releases, injunctions, exculpations, settlements and compromises embodied in the Plan, and the distributions and rights provided thereunder, are an integral part of the Plan. Pursuant to section 1123(b) of the Bankruptcy Code and Bankruptcy Rule 9019(a), the releases and injunctions set forth in the Plan, including, without limitation,

13

releases and exculpations set forth in Sections 6.7 and 10.2 of the Plan, are fair, equitable, reasonable and in the best interests of the Debtors, their Estate(s) and creditors, and such provisions: (i) fall within the jurisdiction of this Court under 28 U.S.C. §§ 1334(a), (b) and (d); (ii) are essential means of implementing the Plan pursuant to section 1123(a)(5) of the Bankruptcy Code; (iii) are important to the overall objectives of the Plan to finally resolve all Claims among or against the parties in interest in the Bankruptcy Case, except to the extent otherwise provided in the Plan; and (iv) is consistent with sections 105, 1123, 1129 and other applicable provisions of the Bankruptcy Code.

OO.    <u>Section 1125(e) - Good Faith Solicitation</u>.    Based on the record before the Court in these chapter 11 cases, the Debtors, the Committee and the individual Committee members in their official capacity only, the Buyer, and the Plan Administrator and their respective members, managers, officers, directors, employees, advisors, attorneys, representatives, financial advisors, investment bankers, or agents have acted in "good faith" within the meaning of section 1125(e) of the Bankruptcy Code in compliance with the applicable provisions of the Bankruptcy Code and Bankruptcy Rules in connection with their respective activities relating to the solicitation of acceptance or rejection of the Plan and their participation in the activities described in section 1125 of the Bankruptcy Code, and they are entitled to the protections afforded by section 1125(e) of the Bankruptcy Code and the exculpation provisions set forth in Section 10.2 the Plan.

PP.    <u>Modifications to the Plan</u>.    The Technical Amendments constitute technical changes and do not materially adversely affect or change the treatment of any Claims or Interests. Accordingly, pursuant to Bankruptcy Rule 3019, the Technical Amendments do not require additional disclosure under section 1125 of the Bankruptcy Code or re-solicitation of votes under section 1126 of the Bankruptcy Code, nor do they require that holders of Claims or

14

Interests be afforded an opportunity to change previously cast acceptances or rejections of the Plan, thereby satisfying section 1127 of the Bankruptcy Code.

**BASED ON THE FOREGOING, IT IS HEREBY ADJUDGED, ORDERED AND DECREED AS FOLLOWS:**

1.      <u>Disclosure Statement Approved</u>. The Disclosure Statement, together with all exhibits thereto, is approved on a final basis in each and every respect pursuant to section 1125 of the Bankruptcy Code.

2.      <u>Plan Confirmed</u>.  The Plan is hereby confirmed pursuant to section 1129 of the Bankruptcy Code, and each and every provision contained therein is approved in its entirety. The failure to reference or discuss any particular provision of the Plan in this Order shall have no effect on the validity, binding effect, or enforceability of such provision.

3.      <u>Confirmation Objections Overruled</u>.  The Court hereby denies and overrules all objections not previously withdrawn or otherwise resolved and relating to (a) the approval of the Disclosure Statement, (b) the confirmation of the Plan, and/or (c) the approval of the Sale.  All objections relating to the amount of Cure Costs or the adequate assurance of future performance by the Buyer that are not Continued Objections are also hereby denied and overrulled; *provided, however,* the Continued Objections are preserved and will be set for a continued hearing date solely with respect to Cure Costs as to Initial Assumed Real Property Leases and Initial Assumed Contracts, and notwithstanding anything to the contrary in this Order, each such counterparty that filed a Continued Objection relating to assumption or assignment of a Designated Contract or Designated Real Property Lease (as defined in the APA) reserves all rights to raise a future objection solely relevant to assumption and assignment of the Designated Contract or Designated Real Property Lease on any basis other than the extension of the deadline to assume or reject Executory Contracts and Unexpired Leases to and including September 9, 2015.  The objection

15

of the landlords (the "**Kelley Drye Landlords**") listed in the objection at Docket Number 1070 is withdrawn on the basis that prior to the expiration of the existing deadline pursuant to section 365(d)(4) of the Bankruptcy Code set forth in the Court's prior Order [Dkt No. 861], the Debtors requested, and notwithstanding this Order, the Kelley Drye Landlords consented in writing to a further extension of such deadline to and including September 9, 2015.

4. <u>Hearing on Continued Objections</u>.   All such Continued Objections with respect to Initial Assumed Real Property Leases and Initial Assumed Contracts will be set for a further hearing with notice. All such Continued Objections with respect to a Designated Contract or Designated Real Property Lease will be set for a further hearing in accordance with the notice procedures related to Designated Contracts and Designated Real Property Leases.

5. <u>Plan Classification Controlling</u>. The classification of Claims and Interests for purposes of the Distributions to be made under the Plan shall be governed solely by the terms of the Plan. The classifications and dollar amounts set forth on the ballots tendered to or returned by the Debtors' creditors and equity interest holders in connection with voting on the Plan (a) were set forth on the ballots for purposes of voting to accept or reject the Plan, (b) do not necessarily represent, and in no event shall be deemed to modify or otherwise affect, the actual classification of such Claims and Interests under the Plan for distribution purposes, and (c) shall not be binding on the Debtors, the Buyer or the Plan Administrator and shall nor limit, prejudice or impair any party in interest from filing any objections to Claims.

6. <u>Binding Effect</u>. The Plan and its provisions shall be binding on the Debtors, any entity acquiring or receiving property or a distribution under the Plan, and any holder of a Claim against or Interest in the Debtors, including all governmental entities, whether or not the Claim or Interest of such holder (a) is impaired under the Plan or (b) has accepted the Plan.

24802500 v8

7.    <u>Substantive Consolidation</u>. The Debtors' Estate(s) are hereby substantively consolidated solely for purposes of voting on this Plan and making distributions to holders of Claims under this Plan and for no other purpose.

8.    <u>Sale of Assets</u>.    The Sale to the Buyer is approved pursuant to the terms and provisions of the Plan, the APA and the separate Sale Order to be entered by this Court, and pursuant to sections 105, 363, 365, 1123(a)(5), 1141(c) and 1146(a) of the Bankruptcy Code,  the Debtors are hereby authorized to sell and transfer substantially all of their Assets to Buyer pursuant to the terms, conditions and provisions of the APA, free and clear of any Claims, Liens, interests and encumbrances, except for any Assumed Liabilities and Permitted Liens as defined in the APA.    The Debtors are further authorized to take any and all actions necessary to consummate and implement the Sale.

9.    <u>Consignment Inventory</u>.  Pursuant to Section 3.5 of the Plan and the applicable provisions of the APA and the Sale Order, the Assets sold and transferred free and clear of all Claims by the Debtors to the Buyer shall include any and all Inventory relating to Consenting Consignment Vendors (as defined in Section 3.5(b)(i) of the Plan).   All Inventory relating to a Rejecting Consignor (as defined in Section 3.5(b)(iv) of the Plan) shall be treated in accordance with the terms and provisions of Section 3.5(b)(iv) of the Plan.

10.    <u>Assumption and Assignment of Executory Contracts and Unexpired Leases</u>. Pursuant to sections 105, 363, 365 and 1123(b)(2) of the Bankruptcy Code, the Court hereby approves the Debtors' assumption and assignment to Buyer of the Debtors' Executory Contracts and Unexpired Leases pursuant to the provisions contained in Article 5 of the Plan, in the APA, and in the Sale Order.  In furtherance of such provisions, the deadline for the Debtors to assume or reject their Executory Contracts and Unexpired Leases is hereby extended to and including September 9, 2015 at 11:59 pm (Eastern).

24802500 v8

11.     Both the APA, including without limitation Section 1.4 of the APA, and the Sale Order, including without limitation the section of the Sale Order titled "Assumption and Assignment of Debtors Contracts," further describe and control the terms and conditions governing the assumption and assignment of the Debtors' Executory Contracts and Unexpired Leases, such terms and conditions being approved by this Confirmation Order.  Such terms and conditions include without limitation the following:

(a)     At the Closing, the Buyer shall designate the Executory Contracts and Unexpired Leases to be immediately assumed by the Debtors and assigned to the Buyer effective as of the Closing (respectively, the "**Initial Assumed Contracts**" and the "**Initial Assumed Real Property Leases**").  Following the Closing, the Debtors shall file with the Court a list of the Initial Assumed Contracts and the Initial Assumed Real Property Leases.

(b)     After Closing, the Buyer shall have until September 9, 2015 at 11:59 p.m. (the "**Designation Period**") to designate further Executory Contracts and Unexpired Leases (the "**Designated Contracts**" and the "**Designated Real Property Leases**") to be assumed and assigned by the Debtors to the Buyer.  With respect to such designated Executory Contracts and Unexpired Leases, the Debtors shall file and serve a notice (the "**Assumption Notice**") prior to the expiration of the Designation Period, and the corresponding non-Debtor contract parties shall have fourteen (14) days to file any objections.  Any timely filed objections that are not resolved shall be heard and resolved by the Court. If no timely objections are filed, the Debtors shall present an order (the "**Assumption Order**") approving the assumption and assignment.

24802500 v8

(c)     The assumption and assignment provisions as described herein and in the Sale Order are subject to any applicable Continued Objections.

12.     Upon the Closing Date for the Sale, and subject to the Continued Objections and the Sale Order, the Debtors are authorized to assume and assign to Buyer the Initial Assumed Real Property Leases and the Initial Assumed Contracts,  and thereafter to assume and assign to Buyer any subsequently and timely Designated Real Property Leases or Designated Contracts, free and clear, to the maximum extent permitted by law, of all Claims pursuant to sections 105(a), 363 and 365 of the Bankruptcy Code.

13.     <u>Wolf Ranch Lease Agreement</u>.  Notwithstanding the confirmation of the Plan and the assumption and assignment of that certain lease agreement (the "Wolf Ranch Lease Agreement") dated October 17, 2005 between SPG Wolf Ranch, LP (the "Wolf Ranch Landlord") and Family Christian Stores, Inc. (the "Tenant"), as amended, the rights of the Debtors, the Wolf Ranch Landlord and the Purchaser on the issue of whether the expiration date of the Wolf Ranch Lease Agreement was extended pursuant to a letter dated August 7, 2015 (the "August 7 Letter") from the Debtors written to WP Glimcher Inc. ("Glimcher") to January 31, 2021 or whether it shall expire on January 31, 2016 are hereby preserved. Confirmation of the Plan shall <u>not</u> be deemed a finding that the January 31, 2016 expiration date was or was not extended pursuant to the August 7 Letter. To the extent any of the Debtors, the Landlord (through Glimcher) or the Buyer desire to bring this issue before this Court, jurisdiction is hereby reserved.

14.     <u>Cure Costs</u>.  All Cure Costs shall be paid in cash by Buyer in accordance with the terms of the APA, and in the case of undisputed Cure Costs, within five (5) days of the applicable Real Property Lease or Contract becoming an Assumed Real Property Lease or

24802500 v8

Assumed Contract.   The payment of the applicable Cure Costs by the Buyer shall (a) effect a cure of all defaults existing under the corresponding Executory Contracts and Unexpired Leases that are assumed and assigned to Buyer, (b) compensate for any actual pecuniary loss to such non-Debtor counterparty resulting from such default, and (c) together with the assumption of the Debtor Contracts by the Debtors and the assignment of the Debtor Contracts to Buyer, constitute adequate assurance of future performance thereof.

15.    <u>Rejection of Executory Contracts and Unexpired Leases</u>.   Pursuant to sections 105, 363, 365 and 1123(b)(2) of the Bankruptcy Code, the Court hereby approves the Debtors' rejection of Executory Contracts and Unexpired Leases pursuant to the provisions contained in Article 5 of the Plan,  in the APA, and in the Sale Order.

16.    Both the APA, including without limitation Section 1.4 of the APA, and the Sale Order, including without limitation the section of the Sale Order titled "Assumption and Assignment of Debtors Contracts," further describe and control the terms and conditions governing the rejection of the Debtors' Executory Contracts and Unexpired Leases, such terms and conditions being approved by this Confirmation Order.  Such terms and conditions include without limitation the following.

(a)    At the Closing, the Buyer may designate certain  Executory Contracts and Unexpired Leases that the Buyer does not intend to assume (respectively, the "**Removed Contracts**" and the "**Removed Real Property Leases**") and that the Debtors are hereby authorized to reject the Removed Contracts and the Removed Real Property Leases.

(b)    After Closing, the Buyer shall have until the expiration of the Designation Period to designate further Executory Contracts and Unexpired Leases to be a Removed Contract and/or a Removed Real Property Lease.   With respect to such designated

20

contracts and leases, the Debtors shall file and serve a notice (the "**Rejection Notice**"), and the corresponding non-Debtor contract parties shall have fourteen (14) days to file any objections.  Any timely filed objections that are not resolved shall be heard and resolved by the Court. If no timely objections are filed, the Debtors shall present an order (the "**Rejection Order**") approving the rejection of such Executory Contracts and Unexpired Leases.

17.    <u>Bar Date for Rejection Claims</u>.  If an affected landlord or counterparty or any other party in interest (the *"Rejection Claimant"*) asserts a claim or claims against the Debtors arising from the rejection of a Contract or Real Property Lease, such Rejection Claimant shall submit a proof of claim on or before the later of (a) the date that is 30 days after the entry of an order rejecting the relevant Contract or Real Property Lease or (b) the bar date established by this Court for filing proofs of claim arising out of the rejection of Contract or Real Property Leases against the Debtors.  If the Rejection Claimant does not timely file such proof of claim, such claimant shall be forever barred from asserting a claim against the Debtors for such rejection damages.

18.    <u>No Successor Liability</u>.  Except as may be expressly set forth in the APA, the Sale Order, or this Confirmation Order, the Buyer and its successors and assigns shall have no liability for any Claim, and the Buyer shall not be deemed to: (a) be a legal successor, or otherwise be deemed a successor to any of the Debtors; (b) have, *de facto* or otherwise, merged with or into any or all Debtors; or (c) be a mere continuation or substantial continuation of any or all Debtors or the enterprise or operations of any or all Debtors.

19.    <u>Technical Amendment to Plan and APA</u>.  Section 2.3(a)(iv)(2)(Payment Option 2) of the APA and Section 3.5(b)(i)(Payment Option 2) of the Plan are deleted in their entirety

and replaced with the following (underlined italic text indicates new language versus the deleted text):

> Payment Option 2: Such Holder shall be entitled to an amount equal to thirty-five (35%) percent of the Debtors' *undisputed* book value for such Consenting Consignment Vendor's Consignment Goods that are Transferred Inventory under the APA, paid in the month following the month in which such individual items of Transferred Inventory are sold by the Post-Closing Business. In addition, the Buyer will pay thirty-five (35%) percent of the Debtors' *undisputed* book value for such Consenting Consignment Vendor's Consignment Goods that are sold by the Debtors between June 15, 2015 and the Closing Date, paid no later than thirty (30) days following the Closing Date. *Upon the resolution of any disputed portion of the Debtors' book value for such Consenting Consignment Vendor's Consignment Goods, whether consensual or by Bankruptcy Court order, the Buyer will pay 35% of such resolved amount in the month following the month in which such resolution is finalized.*

20.     Exemption from Transfer Taxes.  Pursuant to section 1146(a) of the Bankruptcy Code, any transfers from the Debtors to the Buyer or to any other Person or Entity pursuant to this Plan or the APA shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, real estate transfer tax, mortgage recording tax or other similar tax or governmental assessment.  Each federal, state, commonwealth, or local governmental units and officials are authorized and directed to forego the collection of any such tax or governmental assessment and to accept for filing and recordation any of the instruments or other documents that are necessary or appropriate to effectuate the Sale and the transfer of the Assets to the Buyer without the payment of any such tax, fee or governmental assessment

21.     Corporate Action / General Authorizations.   All matters provided for under the Plan involving any corporate action to be taken by, or required of, the Debtors, shall be deemed to have occurred and be effective as provided in the Plan, and shall be authorized and approved in all respects without any requirement for further action by the stockholders, directors, members, or partners of any such entities. Notwithstanding the foregoing, the Debtors' officers,

22

or as applicable the Plan Administrator, shall be authorized to the extent necessary or advisable to execute, deliver, file, or record such contracts, instruments, settlement agreements, releases, indentures, and other agreements or documents and to take or direct such actions as may be necessary or appropriate on behalf of the Debtors to effectuate and further evidence the terms and conditions of the Plan and the APA.

22.    <u>Further Actions</u>.    The approvals and authorizations specifically set forth in this Confirmation Order are nonexclusive and are not intended to limit the authority of the Debtors, the Plan Administrator, or the Buyer to take any actions necessary or appropriate to implement, effectuate and consummate the Plan, the APA, this Confirmation Order and the transactions contemplated thereby, all without further application to, or order of, this Court unless such documents specifically require the approval and order of this Court with respect to the specific action or transaction to be taken or effectuated.

23.    <u>Plan Documents</u>.  The documents substantially in the form attached to the Plan, or substantially in the form attached to the Disclosure Statement and incorporated by reference in the Plan, including but not limited to the APA and the exhibits to the proposed form of the Sale Order, together with any amendments, modifications and supplements thereto, are authorized and approved.

24.    <u>Revesting of Excluded Assets</u>.    Upon the Effective Date, all of the Excluded Assets and other possible property of the Debtors not transferred to the Buyer or another Person pursuant to the APA, shall vest in the Estate on the date such property becomes an Excluded Asset, free and clear of all Liens, Claims, encumbrances and interests in accordance with section 1141 of the Bankruptcy Code, but subject to the rights of Holders of Allowed Claims to obtain any Distributions provided for in this Plan.

24802500 v8

25.    <u>Preservation of Causes of Action / Defenses</u>.    In accordance with section 1123(b)(3) of the Bankruptcy Code, and unless a Claim, objection, defense or Cause of Action against a Person is expressly waived, relinquished, released, compromised or settled in the Plan, the APA, or any Final Order (including this Confirmation Order or the Sale Order), nothing in this Confirmation Order or the Plan shall be deemed to waive, abandon, relinquish, impair, or otherwise prejudice any claims, objections, defenses, or Causes of Action, including any rights of setoff or recoupment,  that the Debtors or the Estate may have and that constitute Excluded Assets that are vested in the Estate, and the Debtors and the Estate will retain and may (but shall not be required to) enforce all such claims, objections, defenses or Causes of Action.   Without limiting the foregoing, the Debtors and the Estate shall retain the following with respect to any Rejecting Consignors: (i) any and all Avoidance Actions with respect such Rejecting Consignors, and (ii) any and all claims against Rejecting Consignors in any capacity, including counterclaims asserted by the Debtors against Plaintiffs in the Consignment Lawsuit who are Rejecting Consignors.  The Debtors and the Estate shall further retain all claims, objections, defenses and rights regarding the claim allowance and reconciliation process in the Debtors' Bankruptcy Case and in the provisions of Article 8 of the Plan governing Disputed Claims.  The failure of the Debtors to specifically list any Claim, Cause of Action, suit, or proceeding does not, and will not be deemed to, constitute a waiver or release by the Debtors or the Estates of such Claim, cause of action, suit, or proceeding

26.    <u>Plan Administrator / Post-Confirmaion Management</u>.    Effective upon the Effective Date, the Court hereby approves the appointment of Gary Murphey as the Plan Administrator pursuant to Section 6.3 of the Plan for purposes of winding up the Estate's assets and affairs.   The Plan Administrator shall be the representative of the Debtors and their Estate pursuant to section 1123(b)(3)(B) of the Bankruptcy Code, shall be empowered to manage the

24802500 v8

Debtors and serve as a responsible officer of the Debtors until they are dissolved, and shall have the general duties and powers set forth in Section 6.3 of the Plan.   In the event of the death or resignation of the Plan Administrator, then the designated Plan Administrator shall be Missy Johnson, CPA from Resurgence Financial Services, LLC.

27.    <u>Resignation of Officers</u>.   Upon the Effective Date, all other officers, directors and employees of the Debtors are deemed to have resigned from the Debtors and are discharged from their duties and positions.

28.    <u>Name Change</u>.   On the Effective Date, the Debtors' names shall change from Family Christian, LLC to "FCO, LLC", from Family Christian Holding, LLC to "FCH, LLC" and from FCS Giftco, LLC to "FCG, LLC", or such similar names if such names are not available, without the need for the filing of any documents with any state agencies or governmental officials. In addition, the Debtors' names on all pleadings filed with the Bankruptcy Court shall be changed in accordance with this paragraph.

29.    <u>Corporate Status and Dissolution</u>.   The Plan Administrator may in his discretion maintain the corporate status of the Debtors if deemed reasonably necessary or desirable to aid in the winding down the Debtors' affairs and liquidating the assets in the Estate.  Upon the entry of a Final Decree or other order(s) of this Court closing each of the Debtors' Bankruptcy Case(s), each of the Debtors corresponding to each closed Bankruptcy Case shall be deemed to have been dissolved upon the closing of such Bankruptcy Case without any further action by the Debtors or the Plan Administrator, and without the necessity of filing any documents with the Secretaries of State of the jurisdictions in which they are organized or conducting business, or complying with any of any business corporation, limited liability company, trust, registration, or other laws, rules or regulations to which the Debtors might be subject under applicable nonbankruptcy law. Notwithstanding the foregoing, the Plan Administrator shall have the authority to take all actions

that he deems necessary or appropriate to formally dissolve the Debtors in, withdraw the Debtors from, or deregister the Debtors in any applicable state or subdivision thereof.

30.    <u>Dissolution of the Creditors Committee</u>.    Upon the Effective Date, (A) the Committee shall be automatically dissolved and all of its members, Professionals and agents shall be deemed released of their duties, responsibilities and obligations, and shall be without further duties, responsibilities and authority in connection with the Debtors, the Bankruptcy Case, the Plan or its implementation, and (B) the Term Lender Complaint filed by the Committee shall be deemed dismissed with prejudice by the Committee. Notwithstanding the foregoing, the Committee shall continue to exist solely to prosecute any applications for payment of its fees and expenses and reimbursement of member's expenses, and for purposes of filing a dismissal of the Term Lender Complaint.  Upon the Effective Date, the Claims Oversight Committee will be formed pursuant to Section 6.6 of the Plan.

31.    <u>Injunction</u>. Except as otherwise expressly provided for in the Plan or this Confirmation Order, entry of this Confirmation Order shall act as a permanent injunction against any Person commencing or continuing any action, employment of process, or act to collect, offset, or recover any Claim or Cause of Action satisfied, released, or discharged under this Plan to the fullest extent authorized or provided by the Bankruptcy Code, including, without limitation, to the fullest extent provided for or authorized by §§ 524 and 1141 thereof.

32.    <u>Tax Returns / Tax Items</u>.   The Debtors shall timely file all tax returns, including final sales tax and franchise tax returns, as required by applicable state law and by 28 U.S.C. §§ 959(b) and 960.  Any setoff rights available under section 553 of the Bankruptcy Code to any governmental units (as defined under section 101(27) of the Bankruptcy Code), including but not limited to the Texas Comptroller of Public Accounts, is hereby expressly reserved for the benefit of such governmental units.   Notwithstanding any other provision in the Plan or this

26

Confirmation Order, pursuant to Section 503(b)(1)(D), a governmental unit shall not be required to file a request for the payment of an Administrative Expense Claim of the type described in sections 503(b)(1)(B) or 503(b)(1)(C) of the Bankruptcy Code.

33.   <u>Fees Under 28 U.S.C. § 1930</u>.  All fees payable under 28 U.S.C. § 1930 will be paid by the Debtors as funded pursuant to the APA, or as applicable by the Plan Administrator, until such time as the Debtors' chapter 11 cases are closed or dismissed. All parties reserve all rights, remedies, claims, and defenses regarding post-confirmation reporting and the calculation and payment of fees incurred pursuant to 28 U.S.C. § 1930(a)(6), and nothing in the APA, the Plan, the Confirmation Order, the Sale Order or any prior Order of this Court shall be used in any way to impair, nor be deemed a waiver or determination of, any such rights, remedies, claims, and defenses.

34.   <u>Exculpation and Limitation of Liability</u>.  The Debtors, the Committee (and its members in their official capacity only), the Buyer and the Plan Administrator and their respective members, managers, officers, directors, employees, advisors, attorneys, representatives, financial advisors, investment bankers, or agents and any of such parties' successors and assigns, shall not have or incur, and are hereby released from, any claim, obligation, cause of action, or liability to one another or to any Holder of any Claim or Interest, or any other party-in-interest, or any of its respective agents, employees, representatives, financial advisors, attorneys, or Affiliates, or any of their successors or assigns, for any act or omission in connection with, relating to, or arising out of the Bankruptcy Case, the negotiation and filing of the Plan, the filing of the Bankruptcy Case, the pursuit of confirmation of the Plan, the consummation of the Plan, or the administration of the Plan or the property to be distributed under the Plan, except for their willful misconduct or gross negligence, and in all respects shall be entitled to reasonably rely upon the advice of counsel with respect to its duties and

27

responsibilities under the Plan.  Nothing contained in this section shall preclude or impair any Holder of an Allowed Claim from filing an action in the Bankruptcy Court against the released parties above to compel the making of Distributions contemplated or required by or to otherwise enforce the terms of the Plan on account of such Claim.

35.     <u>Releases</u>.  Effective upon the Effective Date, the release of claims by the Releasing Parties as provided in, and subject to, Sections 6.7(a) through 6.7(e) of the Plan, is hereby approved and authorized as fair, equitable, reasonable and in the best interests of the Debtors, their Estate(s), and their creditors.

36.     <u>Bar Date for Professionals</u>.  All final requests for payment of Professional Fee Claims must be filed with the Bankruptcy Court pursuant to customary final fee applications by the date that is 60 calendar days after the Effective Date. The objection deadline relating to such fee applications shall be the date that is 21 days after such fee applications are filed with the Bankruptcy Court. The Allowed amounts of any Professional Fee Claims shall be determined by the Bankruptcy Court following any hearing that may be scheduled by the Bankruptcy Court. If no objections are timely filed to any final fee application, the Bankruptcy Court may approve such fee applications without a hearing.

37.     <u>Notice of Confirmation Order and Effective Date</u>.  Pursuant to Bankruptcy Rule 3020(c), the Debtors shall serve notice of the entry of this Confirmation Order, the occurrence of the Effective Date and any bar dates established by the Plan to all known creditors, equity holders, and other parties in interest in the Debtors' Bankruptcy Case within seven (7)  Business Days after the occurrence of the Effective Date.

38.     <u>Retention of Jurisdiction</u>.  Pursuant to sections 105(a) and 1142 of the Bankruptcy Code, this Court shall retain jurisdiction to the fullest extent permitted by law to interpret and

24802500 v8

enforce the provisions of the Plan, this Confirmation Order, and all other matters set forth in Article 11 of the Plan.

39.    <u>Closing of Cases</u>.    Effective as of the Effective Date, This Confirmation Order shall act as a final decree pursuant to section 350 of the Bankruptcy Code formally closing the Bankruptcy Cases of Family Christian Holding, LLC (Case No. 15-00642-jtg) and FCS Giftco, LLC (Case No. 15-0644); provided, however, that the Bankruptcy Case of Family Christian, LLC shall remain open until such time as the Plan Administrator files with the Bankruptcy Court such documents required by the Bankruptcy Rules and any applicable orders of the Bankruptcy Court to close such Bankruptcy Case. Upon the Effective Date, counsel for the Debtors shall submit proposed forms of order to the Bankruptcy Court to enter on the docket of Family Christian Holding, LLC and FCS Giftco, LLC to close said Bankruptcy Cases effective on the Effective Date, except for the Bankruptcy Case of Family Christian, LLC.

40.    <u>No Stay of Order</u>.  This Confirmation Order is a final order and shall be effective and enforceable immediately upon its entry and shall not be stayed pursuant to Bankruptcy Rule 3020(e) or otherwise.  Likewise, the provisions of this Confirmation Order approving the Plan, the Sale, and the assumption and assignment of the Debtors' Executory Contracts and Unexpired Leases shall be effective and enforceable immediately upon the entry of this Confirmation Order and shall not be stayed pursuant to Bankruptcy Rules 6004(h), 6006(d), 7062 or otherwise,

41.    <u>Failure of the Effective Date</u>. In the event the Debtors determine, in their sole discretion, that the conditions to the occurrence of the Effective Date are unlikely to occur, the Debtors may, but shall not be required, to seek an order from the Bankruptcy Court directing that the Confirmation Order be vacated and that the Plan be null and void in all respects.

42.    <u>Order of Controlling Documents</u>.  To the extent there is any conflict between the terms of the Sale Order, the Purchase Agreement, the Confirmation Order, this Plan, the

24802500 v8

Disclosure Statement, any other order of the Court, or any other document, the item in the immediately preceding list that is first listed between the two items shall control.

**END OF ORDER**

*Order prepared and submitted by:*
A. Todd Almassian (P55467)
Greg J. Ekdahl (P67768)
Keller & Almassian, PLC
230 East Fulton Street
Grand Rapids, MI 49503
(616) 364-2100
ecf@kalawgr.com

– and –
Erich Durlacher (Ga Bar No. 235563)
Brad Baldwin (Ga Bar No. 034220)
Burr & Forman LLP
171 17th Street, N.W. – Suite 1100
Atlanta, Georgia 30363
Telephone:  (404) 815-3000
edurlacher@burr.com
bbaldwin@burr.com
*Attorneys to the Debtors*

**Signed: August 11, 2015**





John T. Gregg
United States Bankruptcy Judge