UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF MICHIGAN

_____

In re:                                          CHAPTER 11

FAMILY CHRISTIAN, LLC *et al.*[1]               CASE NO. 15-00643
                                                (Joint Administration Proposed)
                       Debtors.

_____/             HON. JOHN T. GREGG


ORDER (I) AUTHORIZING THE SALE OF SUBSTANTIALLY ALL
OF THE DEBTORS' ASSETS FREE AND CLEAR OF LIENS, CLAIMS,
INTERESTS AND ENCUMBRANCES, (II) AUTHORIZING THE ASSUMPTION
AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND LEASES
IN CONNECTION THEREWITH AND (III) GRANTING RELATED RELIEF


This matter coming before the Court in connection with the above-captioned debtors and

debtors in possession (the "Debtors") having proposed the Third Amended Joint Plan of

Liquidation dated as of July 13, 2015 (Dkt. No. 991) (the "Plan"); and the Court having

conducted a hearing on August 11, 2015 regarding confirmation of the Plan (the "Confirmation

Hearing"); and the Court finding that the Plan is confirmable and entering a confirmation order

in connection therewith; and the Plan providing for a means of implementation by way of a sale

pursuant to an Asset Purchase Agreement (the "Purchase Agreement"), substantially in the form

attached hereto as Exhibit A, by and among FCS Acquisition, LLC (the "Buyer") and the

Debtors, whereby the Debtors have agreed, among other things, to sell substantially all of their

assets (the "Assets") to Buyer (the "Sale Transaction") and to assume and assign to Buyer certain

executory contracts and unexpired leases of the Debtors in connection with the Sale Transaction

(collectively, the "Debtor Contracts"); and it appearing that the relief granted herein is in the best

_____

[1]     The Debtors are: Family Christian, LLC; Family Christian Holding, LLC; and FCS Giftco, LLC.

US2008 7301773 12

interests of the Debtors, their estates and creditors and all parties in interest in these bankruptcy cases; and upon the record of the Confirmation Hearing and these cases; and upon due and proper notice; and after due deliberation thereon; and good cause appearing therefor, it is hereby

**FOUND AND DETERMINED THAT:**

### JURISDICTION, FINAL ORDER AND STATUTORY PREDICATES

A.      This Court has jurisdiction over this matter, the transactions contemplated by the Purchase Agreement and any other ancillary documents and agreements related thereto pursuant to 28 U.S.C. §§ 157(b)(1) and 1334(a).  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (L), (N) and (O).  Venue of these cases in this District is proper under 28 U.S.C. §§ 1408 and 1409.

B.      The Debtors are proper debtors under 11 U.S.C. § 109 and these chapter 11 cases were filed in good faith and not for any improper purpose.

C.      This Sale Order constitutes a final and appealable order within the meaning of 28 U.S.C. § 158(a).

D.      The statutory and other legal predicates for the relief sought in the Sale Transaction are sections 105(a), 362, 363(b), (f), (m) and (n) and 365(a), (b) and (f) and 1123(a)(5)(D), (b)(4), (b)(6) of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, 6006 and 9019 and applicable Local Bankruptcy Rules.

### PRIOR SALE PROCESS

E.      Earlier in these bankruptcy cases, the Debtors initiated a sale process.  In connection therewith, various parties-in-interest asserted objections[2] alleging Mr. Richard

---

[2] Objection of Creditors Committee ("Committee Objection"), Dkt. No. 313, at ¶¶ 2 and 33.  Objection of United States Trustee ("UST Objection"), Dkt. No. 316, at ¶ 131.

Jackson ("Mr. Jackson") owned and/or individually controlled the Debtors, the Debtors' non-debtor parent Family Christian Resource Centers (d/b/a Family Christian Ministries), the Buyer and a lender to the Debtors, FC Special Funding, LLC.[3]

F.      Mr. Jackson does not own the Debtors, the Debtors' non-debtor parent Family Christian Resource Centers (d/b/a Family Christian Ministries) or the Buyer because each of these entities are considered public charities not owned by any one individual. Mr. Jackson is one of three board members of such entities and, therefore, he cannot exercise individual control over those entities.  In addition, Mr. Jackson neither has an ownership interest in nor exercises control over nor is a board member or manager of FC Special Funding, LLC.

### SECURED LENDERS AND CONSIGNMENT

G.      As more particularly described in the Final Order Authorizing Use of Cash Collateral Pursuant to 11 U.S.C. § 363 [Dkt. No. 593][4], the Debtors obtained financing from two Secured Lenders.  In connection with making this financing available to the Debtors, the Senior Lender asserted a first-priority security interest and lien in and to the Working Capital Collateral, and the Term Loan Lenders asserted a first-priority security interest and lien in and to the Term Loan Collateral.

H.      Pursuant to, among other things, multiple Assignment and Acceptance Agreements between the Term Loan Lenders and Senior Lender dated July 1, 2015, the Senior Lender acquired from the Term Loan Lenders their security interest in the Term Loan Collateral with the purchase of the Term Loan Lenders' secured claim for $6,000,000.

---

[3] Committee Objection at ¶¶ 2, 16 and 53.

[4] Capitalized terms used in this paragraph but not otherwise defined elsewhere in this Order shall have the meanings given to them in Dkt. No. 593.  Capitalized terms used elsewhere in this Order but not otherwise defined in this Order shall have the meanings given to them in the Purchase Agreement.

I.      Certain entities allege that they have provided Consigned Goods to the Debtors pursuant to Consignment Agreements. The Senior Lender maintains that its security interest in the Consigned Inventory has priority over the consignment parties' rights to the respective Consigned Inventory pursuant to Article 9 of the Uniform Commercial Code.

J.      Senior Lender, in its capacity as the Working Capital Collateral lender and as assignee to the Term Loan Lenders, consents to the Sale Transaction.  Consenting Consignment Vendors also consent to the Sale Transaction.

### SOUND BUSINESS PURPOSE

K.      The Debtors seek to convey the Assets, all of which are more fully described in the Purchase Agreement.

L.      The Debtors have (1) demonstrated good, sufficient, and sound business purposes and justifications for the Sale Transaction, (2) appropriately exercised their business judgment by entering into the Sale Transaction and (3) demonstrated compelling circumstances for entry into the Sale Transaction pursuant to section 363(b) and 1123 of the Bankruptcy Code. Business justifications for the Sale Transaction include the facts that (i) the Debtors' major creditor constituencies support the Sale Transaction; (ii) the Plan approves the Sale Transaction; and (iii) the Purchase Agreement provides for the preservation of a substantial number of jobs, real estate leases and vendor relationships.

### BEST INTEREST OF CREDITORS

M.      Approval of the Purchase Agreement and the consummation of the Sale Transaction with Buyer at this time are in the best interests of the Debtors, their creditors, their estates and all parties in interest, and is in furtherance of the Plan.

-4-

US2008 7301773 12

## GOOD FAITH

N.      The Purchase Agreement and each of the transactions contemplated therein were negotiated, proposed and entered into by the Debtors and Buyer in good faith, without collusion and from arm's-length bargaining positions.  Buyer is a "good faith purchaser" within the meaning of section 363(m) of the Bankruptcy Code and, as such, is entitled to all the protections afforded thereby.  Neither the Debtors nor Buyer have engaged in any conduct that would cause or permit the Purchase Agreement to be avoided or costs and damages to be imposed under section 363(n) of the Bankruptcy Code.

## NOTICE OF THE SALE TRANSACTION AND THE CURE AMOUNTS

O.      As evidenced by the certificates of service filed with the Court, (1) proper, timely, adequate and sufficient notice of the Sale Transaction, the Confirmation Hearing, and the Proposed Sale Order was provided by the Debtors; (2) such notice was good, sufficient and appropriate under the particular circumstances; and (3) no other or further notice of the proposed Sale Transaction, the Confirmation Hearing or the Proposed Sale Order is or shall be required.  A reasonable opportunity to object or be heard with respect to the Sale Transaction and the relief requested thereunder was afforded to all interested persons and entities, including, but not limited to:

(i)      the Office of the UST;

(ii)      counsel for the Debtors' lenders;

(iii)      counsel for the Creditors' Committee;

(iv)      all entities who have requested service pursuant to Bankruptcy Rule 2002 in the Debtors' bankruptcy cases;

(v)      any party who, in the past year, expressed in writing to the Debtors an interest in the Assets or the Debtors' other assets;

US2008 7301773 12

(vi)    nondebtor parties to the executory contracts and unexpired leases that may be subject to assumption and assignment;

(vii)    all parties who are known or reasonably believed to have asserted a lien, encumbrance, claim or other interest in the Assets;

(viii)    all of the Debtors' creditors that have filed proofs of claim in the Debtors' chapter 11 cases or whose claims are listed by the Debtors in their schedules of liabilities filed with the Court;

(ix)    the Securities and Exchange Commission;

(x)    the Internal Revenue Service;

(xi)    all pension plans to which any of the Debtors is or was a contributor;

(xii)    all applicable state and local taxing authorities;

(xiii)    the Federal Trade Commission;

(xiv)    the United States Attorney General/Antitrust Division of Department of Justice; and

(xv)    the United States Attorney.

P.    The Debtors have served prior to the Confirmation Hearing notice of their intent, subject to the terms of the Purchase Agreement, to assume and assign the Debtor Contracts and of the related proposed Cure Costs (the "Contract and Cure Schedule") upon each nondebtor counterparty to the Debtor Contracts.  The service of such notice was good, sufficient and appropriate under the circumstances and no further notice need be given with respect to the Cure Costs for the Debtor Contracts listed in the Contract and Cure Schedule and the assumption and assignment of the Debtor Contracts.  All nondebtor parties to the Debtor Contracts have had a reasonable opportunity to object to both the Cure Costs listed in the Contract and Cure Schedule and the assumption and assignment of the Debtor Contracts.

## SECTION 363(F) AND 1123(A)(5)(D) REQUIREMENTS MET FOR FREE AND CLEAR SALE

Q.      The Debtors may sell the Assets free and clear of all liens, claims (including those that constitute a "claim" as defined in section 101(5) of the Bankruptcy Code), rights, liabilities, encumbrances and other interests of any kind or nature whatsoever, including, without limitation, any debts arising under or out of, in connection with, or in any way relating to, any acts or omissions, obligations, demands, guaranties, rights, contractual commitments, consignment arrangements, restrictions, product liability claims, environmental liabilities, employee pension or benefit plan claims, retiree healthcare or life insurance claims of the Debtors, and any transferee or successor liability claims, rights or causes of action (whether in law or in equity, under any law, statute, rule or regulation of the United States, any state, territory, or possession thereof or the District of Columbia), whether arising prior to or subsequent to the commencement of these cases, whether known or unknown, and whether imposed by agreement, understanding, law, equity or otherwise, and all Excluded Liabilities (collectively, "Claims"), except for any Assumed Liabilities and Permitted Liens, because, in each case, one or more of the standards set forth in section 363(f)(1)-(5) of the Bankruptcy Code have been satisfied.  Without limiting the generality of the foregoing, "Claims" shall include any and all liabilities or obligations whatsoever arising under or out of, in connection with, or in any way relating to:  (1) any of the Employee Benefit Plans (including any Claims related to unpaid contributions); (2) the Worker Adjustment and Retraining Notification Act of 1988, or (3) any of the Debtors' current and former employees.

R.      Specifically, the Debtors are permitted to sell the Assets constituting the Working Capital Collateral and the Term Loan Collateral free and clear of Claims pursuant to

-7-

section 363(f)(2) of the Bankruptcy Code because Senior Lender, in its capacity as the Working Capital Collateral lender and as assignee to the Term Loan Lenders, consents to such sale.

S.      Those holders of Claims who did not object (or who ultimately withdrew their objections, if any) to the Sale Transaction are deemed to have consented pursuant to section 363(f)(2) of the Bankruptcy Code. Those holders of Claims who did object that have an interest in the Assets fall within one or more of the other subsections of section 363(f) of the Bankruptcy Code and are therefore adequately protected by having their Claims that constitute interests in the Assets, if any, attach solely to the proceeds of the Sale Transaction ultimately attributable to the property in which they have an interest, in the same order of priority and with the same validity, force and effect that such holders had prior to the Sale Transaction, subject to any defenses of the Debtors.

Alternatively, the Debtors are permitted to sell the Assets free and clear of Claims pursuant to 11 U.S.C. § 1125(a)(5)(D) as the Sale Transaction provides the means for the implementation of the Plan.

T.      All persons having Claims of any kind or nature whatsoever against the Debtors or the Assets shall be forever barred, estopped and permanently enjoined from pursuing or asserting such Claims against Buyer or any of its assets, property, Affiliates, successors, assigns, or the Assets (other than Assumed Liabilities and Permitted Liens).

U.      Buyer would not have entered into the Purchase Agreement and would not consummate the transactions contemplated thereby, thus adversely affecting the Debtors and their estates and their creditors, if the sale of the Assets was not free and clear of all Claims, other than Assumed Liabilities and Permitted Liens, or if Buyer would, or in the future could, be

-8-

liable for any such Claims, including, as applicable, certain liabilities related to the Debtor's business that will not be assumed by Buyer, as described in the Purchase Agreement.

### ASSUMPTION AND ASSIGNMENT OF THE DEBTOR CONTRACTS

V.      The assumption and assignment of the Debtor Contracts are integral to the Purchase Agreement, are in the best interests of the Debtors and their estates, and represent the reasonable exercise of the Debtors' sound business judgment.

W.      With respect to each of the Debtor Contracts, the Debtors have met all requirements of section 365(b) of the Bankruptcy Code.  Further, Buyer has provided all necessary adequate assurance of future performance under the Debtor Contracts in satisfaction of sections 365(b) and 365(f) of the Bankruptcy Code.  Accordingly, the Debtor Contracts may be assumed by the Debtors and assigned to Buyer, as provided for in the Purchase Agreement.

### VALIDITY OF THE TRANSFER

X.      As of the effective time of the consummation of the Sale Transaction pursuant to the Purchase Agreement (the "Closing"), the transfer of the Assets to Buyer will be a legal, valid and effective transfer of the Assets, and will vest Buyer with all right, title and interest of the Debtors in and to the Assets, free and clear of all Claims, other than Assumed Liabilities and Permitted Liens.

Y.      The Debtors (1) have full corporate power and authority to execute the Purchase Agreement and all other documents contemplated thereby, and the Sale Transaction has been duly and validly authorized by all necessary corporate action of the Debtors, (2) have all of the corporate power and authority necessary to consummate the transactions contemplated by the Purchase Agreement, and (3) upon entry of this Sale Order, other than any consents identified in

-9-

the Purchase Agreement, need no consent or approval from any other person to consummate the
Sale Transaction.

    Z.  Notwithstanding Bankruptcy Rules 6004(h) and 6006(d), and to any extent
necessary under Bankruptcy Rules 9014 and Rule 54(b) of the Federal Rules of Civil Procedure,
as made applicable by Bankruptcy Rule 7054, the Court expressly finds that this Order is a final
order and there is no just reason for delay in the implementation of this Order.

**NOW THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED
THAT:**

<u>**GENERAL PROVISIONS**</u>

    1.  The Sale Transaction is granted as set forth herein, and the Sale
Transaction is approved as set forth in this Sale Order.

    2.  The findings of fact set forth above and conclusions of law stated herein
shall constitute this Court's findings of fact and conclusions of law pursuant to Bankruptcy
Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  To the extent
any finding of fact later shall be determined to be a conclusion of law, it shall be so deemed, and
to the extent any conclusion of law later shall be determined to be a finding of fact, it shall be so
deemed.

    3.  All objections to the Sale Transaction or the relief granted herein that have
not been withdrawn, waived or settled as reflected herein or by separate stipulation filed with the
Court, or treated in the Plan, and all reservations of rights included therein, are hereby overruled
on the merits.

-10-

4.      Notice of the Confirmation Hearing was fair and equitable under the circumstances and complied in all respects with section 102(1) of the Bankruptcy Code and Bankruptcy Rules 2002, 6004 and 6006.

5.      The consideration provided by Buyer under the Purchase Agreement is fair and reasonable, and the sale to Buyer of the Assets shall be deemed for all purposes to constitute a transfer in exchange for reasonably equivalent value and fair consideration under the Bankruptcy Code and any other applicable law.

### APPROVAL OF THE PURCHASE AGREEMENT

6.      The Purchase Agreement, all transactions contemplated therein and all of the terms and conditions thereof are hereby approved.  The failure specifically to include any particular provision of the Purchase Agreement in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the Purchase Agreement be authorized and approved in its entirety, with such amendments thereto as may be made by the parties in accordance with this Order.

7.      Pursuant to sections 105, 363, 365 and 1123 of the Bankruptcy Code, and the Plan, the Debtors are authorized to perform their obligations under and comply with the terms of the Purchase Agreement and consummate the Sale Transaction, pursuant to and in accordance with the terms and conditions of the Purchase Agreement and this Sale Order.

8.      The Debtors, as well as their Affiliates, officers, employees and agents, are authorized to execute and deliver, and authorized to perform under, consummate and implement, the Purchase Agreement, in substantially the same form as attached hereto as Exhibit A, together with all additional instruments and documents that may be reasonably necessary or desirable to implement the Purchase Agreement and to take all further actions as

-11-

may be (a) reasonably requested by Buyer for the purpose of assigning, transferring, granting, conveying and conferring to Buyer, or reducing to possession, the Assets or (b) necessary or appropriate to the performance of the obligations contemplated by the Purchase Agreement, all without further order of the Court.

### TRANSFER OF ASSETS FREE AND CLEAR

9.    Pursuant to sections 105(a), 363(b), 363(f), 365 and 1123(a)(5)(D) of the Bankruptcy Code, the Debtors are authorized to transfer the Assets in accordance with the terms of the Purchase Agreement.  The Assets shall be transferred to Buyer, and upon consummation of the Purchase Agreement, such transfer shall (a) be valid, legal, binding and effective; (b) vest Buyer with all right, title and interest of the Debtors in the Assets; and (c) be free and clear of all Claims, except for Assumed Liabilities and Permitted Liens, with all Claims that represent interests in property to attach to the net proceeds of the Sale Transaction, in the order of their priority and with the same validity, force and effect which they now have against the Assets, subject to any claims and defenses the Debtors may possess with respect thereto.

10.    Except as otherwise provided in the Purchase Agreement, all persons and entities (and their respective successors and assigns) including, without limitation, all debt security holders, equity security holders, governmental, tax and regulatory authorities, lenders, employees, former employees, pension plans, trade creditors and any other creditors holding Claims, except for Assumed Liabilities and Permitted Liens, are hereby forever barred, estopped and permanently enjoined from asserting or pursuing such Claims against Buyer, its Affiliates, successors or assigns, its property or the Assets, including, without limitation, taking any of the following actions with respect to a Claim (other than an Assumed Liability or Permitted Lien): (a) commencing or continuing in any manner any action or other proceeding against Buyer, its

-12-

Affiliates, successors or assigns, assets or properties; (b) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree, or order against Buyer, its Affiliates, successors or assigns, assets, or properties; (c) creating, perfecting, or enforcing any liens, claims, encumbrances or other interests against Buyer, its successors or assigns, assets or properties; (d) asserting a Claim as a setoff, right of subrogation or recoupment of any kind against any obligation due Buyer or its successors or assigns; or (e) commencing or continuing any action in any manner or place that does not comply, or is inconsistent, with the provisions of this Sale Order or the agreements or actions contemplated or taken in respect thereof. No such persons or entities shall assert or pursue against Buyer or its Affiliates, successors or assigns any such Claim, except for Assumed Liabilities and Permitted Liens.

        11.     This Sale Order (a) shall be effective as a determination that, as of the Closing, all Claims, other than Assumed Liabilities and Permitted Liens, have been unconditionally released, discharged and terminated as to Buyer and the Assets, and that the conveyances and transfers described herein have been effected, and (b) is and shall be binding upon and govern the acts of all entities, including all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal and local officials and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any lease; and each of the foregoing persons and entities is hereby directed to accept for filing any and all of the documents and instruments necessary and appropriate to consummate the transactions contemplated by the Purchase Agreement.

-13-

US2008 7301773 12

12.     If any person or entity that has filed financing statements, mortgages, mechanic's liens, *lis pendens* or other documents or agreements evidencing Claims against or in the Debtors or the Assets shall not have delivered to the Debtors prior to the Closing of the Sale Transaction, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, releases of all interests which the person or entity has with respect to the Debtors or the Assets or otherwise, then with regard to the Assets that are purchased by Buyer pursuant to the Purchase Agreement and this Sale Order (a) the Debtors are hereby authorized and directed to execute and file such statements, instruments, releases and other documents on behalf of the person or entity with respect to the Assets and (b) Buyer is hereby authorized to file, register or otherwise record a certified copy of this Sale Order, which, once filed, registered or otherwise recorded, shall constitute conclusive evidence of the release of all Claims against the Assets other than the Assumed Liabilities and Permitted Liens.  This Sale Order is deemed to be in recordable form sufficient to be placed in the filing or recording system of each and every federal, state or local government agency, department or office.

13.     Following the Closing of the Sale Transaction, no holder of any Claim (except for any Assumed Liability or Permitted Lien) shall interfere with Buyer's title to or use and enjoyment of the Assets based on or related to any such Claim or based on any actions the Debtors may take in their chapter 11 cases.

14.     Except as expressly set forth in the Purchase Agreement, Buyer and its successors and assigns shall have no liability for any Claim.  By virtue of the Sale Transaction, Buyer shall not be deemed to:  (a) be a legal successor, or otherwise be deemed a successor to any of the Debtors; (b) have, *de facto* or otherwise, merged with or into any or all Debtors; or (c) be a mere continuation or substantial continuation of any or all Debtors or the enterprise or

-14-

US2008 7301773 12

operations of any or all Debtors.  Further, except for Assumed Liabilities and Permitted Liens,

Buyer shall have no liability for any Claim, whether known or unknown as of the Closing Date,

now existing or hereafter arising, whether fixed or contingent, whether as a successor,

vicariously, or otherwise, of any kind, nature or character whatsoever, including Claims arising

under, without limitation:  (i) any employment agreements; (ii) any pension, welfare,

compensation or other employee benefit plans, agreements, practices and programs, including,

without limitation, any pension plan of or related to any of the Debtors or any Debtor's Affiliates

or predecessors or any current or former employees of any of the foregoing, including, without

limitation, the Employee Benefit Plans and any other agreements related to the Employee Benefit

Plans, (iii) any employee, worker's compensation, occupational disease or unemployment or

temporary disability related law, including, without limitation, claims that might otherwise arise

under or pursuant to (a) the Employee Retirement Income Security Act of 1974, as amended,

(b) the Fair Labor Standards Act, (c) Title VII of the Civil Rights Act of 1964, (d) the Federal

Rehabilitation Act of 1973, (e) the National Labor Relations Act, (f) the Worker Adjustment and

Retraining Notification Act of 1988, (g) the Age Discrimination and Employee Act of 1967 and

Age Discrimination in Employment Act, as amended, (h) the Americans with Disabilities Act of

1990, (i) the Consolidated Omnibus Budget Reconciliation Act of 1985, (j) state discrimination

laws, (k) state unemployment compensation laws or any other similar state laws, (l) state

workers' compensation laws or (m) any other state or federal employee benefit laws, regulations

or rules or other state or federal laws, regulations or rules relating to employment with any or all

Debtors or any predecessors; (iv) any antitrust laws; (v) any product liability or similar laws,

whether state or federal or otherwise; (vi) any environmental laws, rules, or regulations,

including, without limitation, under the Comprehensive Environmental Response,

-15-

Compensation, and Liability Act, 42 U.S.C. §§ 9601, et seq., or similar state statutes; (vii) any

bulk sales or similar laws; (viii) any tax statutes or ordinances, including, without limitation, the

Internal Revenue Code of 1986, as amended; (xi) any common law doctrine of *de facto* merger

or successor or transferee liability, successor-in-interest liability theory or any other theory of or

related to successor liability; (x) or from the Debtors' business operations or the cessation

thereof; and (xi) or from any litigation involving one or more of the Debtors.

### "CONSIGNMENT" INVENTORY

15.    The Assets sold by the Sellers to the Buyer pursuant to this Order include

any and all Inventory relating to Consenting Consignment Vendors (Consignment Vendors who

voted in favor of the Plan, or who failed to vote on the Plan), as the Sellers are considered the

owners of such Inventory.  As set forth herein, such Assets shall transfer to the Buyer free and

clear of all Claims.

16.    Any and all Inventory that as of the Closing was delivered to, or in the

possession of, the Sellers pursuant to any type of consignment arrangement or that was listed in

Schedule 4.5 to the Purchase Agreement that does not relate to a Consenting Consignment

Vendor but rather to a Consignment Vendor that either voted to reject the Plan or filed an

objection to the Sale Transaction that was not withdrawn prior to the Confirmation Hearing shall

not constitute Assets sold by the Sellers to the Buyer under this Order, unless such Inventory is

later determined to be owned by the Sellers, and in such case, such Inventory shall constitute

Assets sold by the Sellers to the Buyer.  Such Consignment Vendors, the Debtors and the Buyer

shall retain all of rights, remedies and claims with respect to such Consignment Goods subject to

the terms of the Plan and further Order of the Bankruptcy Court.

-16-

US2008 7301773 12

**ASSUMPTION AND ASSIGNMENT OF DEBTOR CONTRACTS**

17.    The Debtors are authorized on the Closing Date to assume and assign to Buyer the Initial Assumed Real Property Leases and the Initial Assumed Contracts (and thereafter to assume and assign to Buyer any Designated Real Property Leases or Designated Contracts that was not assumed and assigned to the Buyer on the Closing Date) in accordance with the Purchase Agreement and this Order free and clear, to the maximum extent permitted by law, of all Claims pursuant to sections 105(a), 363 and 365 of the Bankruptcy Code and to execute and deliver to Buyer such documents or other instruments as may be necessary to assign and transfer the Debtor Contracts to Buyer.

18.    The Debtor Contracts shall be transferred to, and remain in full force and effect for the benefit of, Buyer in accordance with their respective terms, including all obligations of Buyer as the assignee of the Debtor Contracts, notwithstanding any provision in any such Debtor Contracts (including, without limitation, those of the type described in sections 365(e)(1) and (f) of the Bankruptcy Code) that prohibits, restricts or conditions such assignment or transfer.  There shall be no rent accelerations, escalations, assignment fees, increases or any other fees charged to Buyer or the Debtors as a result of the assumption or assignment of the Debtor Contracts.

19.    All Cure Costs shall be paid in cash by Buyer in accordance with the terms of the Purchase Agreement, and in the case of undisputed Cure Costs, within five (5) days of the applicable Real Property Lease or Contract becoming an Assumed Real Property Lease or Assumed Contract and, in the case of disputed Cure Costs, within fourteen (14) days of the resolution of the Cure Costs either by consent or subsequent order of the Bankruptcy Court, unless the Buyer exercises its right herein to treat such applicable Debtor Contract as a Removed

-17-

US2008 7301773 12

Real Property Lease or Removed Contract.  The payment of the applicable Cure Costs by the Buyer shall (a) effect a cure of all defaults existing thereunder as of the Closing Date (or thereafter for any Designated Real Property Leases and Designated Contracts), (b) compensate for any actual pecuniary loss to such non-Debtor counterparty resulting from such default, and (c) together with the assumption of the Debtor Contracts by the Debtors and the assignment of the Debtor Contracts to Buyer, constitute adequate assurance of future performance thereof. Payment of the Cure Costs shall be in full satisfaction and cure of any and all defaults under the Debtor Contracts, whether monetary or non monetary.  Each nondebtor party to a Debtor Contract is forever barred, estopped and permanently enjoined from asserting against the Debtors or Buyer, their successors or assigns or the property of any of them, any default existing as of the date of the Confirmation Hearing if such default was not raised or asserted prior to or at the Confirmation Hearing.

20.    The failure of the Debtors or Buyer to enforce at any time one or more terms or conditions of any Debtor Contract shall not be a waiver of such terms or conditions, or of the Debtors' and Buyer's rights to enforce every term and condition of the Debtor Contracts.

21.    Any provisions  in any Debtor Contract (including any Designated Real Property Lease or Designated Contract) that prohibit or condition the assignment of such Debtor Contract or allow the counterparty to such Debtor Contract to terminate, recapture, impose any penalty, condition on renewal or extension or modify any term or condition upon the assignment of such Debtor Contract, constitute unenforceable anti-assignment provisions that are void and of no force and effect with respect to the Debtors' assumption and assignment of such Debtor Contract in accordance with the Purchase Agreement but will be effective and binding upon Buyer and any subsequent assignee with respect to any purported assignment for the remaining

-18-

term of any Debtor Contract.  All other requirements and conditions under sections 363 and 365 of the Bankruptcy Code for the assumption by the Debtors and assignment to Buyer of the Debtor Contracts have been satisfied.  Upon the Closing Date or such later time as is provided in the Purchase Agreement with respect to the assumption and assignment of any Debtor Contract, in accordance with sections 363 and 365 of the Bankruptcy Code, Buyer shall be fully and irrevocably vested with all right, title and interest of the Debtors under the Debtor Contract, and such Debtor Contract shall remain in full force and effect for the benefit of Buyer.

22.      Each non-Debtor counterparty to the Debtor Contracts shall be forever barred, estopped, and permanently enjoined from (a) asserting against the Debtors or Buyer or their respective property any assignment fee, acceleration, default, breach, claim, pecuniary loss, or condition to assignment existing, arising or accruing as of the Closing applicable to the assignment to the Buyer of such Debtor Contract, or arising by reason of the Closing or the transfer of the Assets, including any breach related to or arising out of a change-in-control provision in such Debtor Contracts, or any purported written or oral modification to the Debtor Contracts, and (b) asserting against Buyer (or its property, including the Assets) any claim, counterclaim, breach, or condition to assignment asserted or assertable against the Debtors existing as of the Closing applicable to the assignment to the Buyer of such Debtor Contract, or arising by reason of the transfer of the Assets, except for the Assumed Liabilities, *provided, however,* and notwithstanding anything to the contrary in this Order, the Sale Transaction or the Purchase Agreement, Buyer shall be responsible for continuing obligations under the Debtor Contracts, *cum onere,* including, without limitation, liabilities for any breach of such Debtor Contracts occurring after such assignment and obligations to pay year-end adjustment, reconciliation and indemnity obligation amounts that become obligations after the date of this

-19-

Order (irrespective of whether such obligations accrued before, on, or after assumption and assignment of the Debtor Contracts), including tax reconciliations, common area charges and insurance premiums, under the terms of the applicable unexpired lease of real property, subject to any defenses provided by such Debtor Contract and unless otherwise agreed.  In addition, without relieving Buyer of its obligations under the Purchase Agreement, nothing in the Order, the Sale Transaction or the Purchase Agreement shall affect the Debtors' obligations under section 365(d)(3) of the Bankruptcy Code prior to the assumption and assignment or rejection of any Debtor Contracts.

23.    Buyer has provided adequate assurance of future performance under the Debtor Contracts (including any Designated Real Property Lease or Designated Contract) within the meaning of sections 365(b)(l)(c), 365(b)(3) (to the extent applicable) and 365(f)(2)(B) of the Bankruptcy Code.

24.    Buyer shall have a period of time which shall begin at Closing and end at 11:59 p.m. Eastern Time on September 9, 2015, unless a longer period of time with any counterparty to a specific Remaining Real Property Lease or Remaining Contract is otherwise agreed to (the "Designation Period") to designate any Remaining Real Property Lease or Remaining Contract to be assumed and assigned to the Buyer or to be a Removed Real Property Lease or Removed Contract.  Any Assumption Notice or Rejection Notice that is filed by the Debtors on the docket in the bankruptcy cases prior to the expiration of the Designation Period shall be considered timely, notwithstanding the Court's ruling on such notice occurring after the expiration of the Designation Period.   The Buyer shall be obligated to reimburse the Sellers, within five (5) Business Days after demand by Sellers, for rent, real property Taxes and other charges that first arise and become due under the Remaining Real Property Leases, and for any

-20-

obligations that first arise and become due under the Remaining Contracts, for the period

commencing upon the Closing Date and ending on the later of (i) the date of delivery to Sellers

of an applicable Designation Notice and (ii) the conclusion of the Post-Closing Occupancy

Period.

25.    In the case of any Designated Contracts and Designated Real Property

Leases that the Debtors seek to assume and assign after the Closing Date pursuant to Section

1.4(b) of the Purchase Agreement, within five (5) Business Days following delivery of a

notification by Buyer to the Debtors that a Contract or Real Property Lease is designated for

assumption and assignment, the Debtors will file with the Court a written notice of the Debtors'

intent to assume and assign such Designated Contract or Designated Real Property Lease (an

"Assumption Notice"), substantially in the form attached hereto as Exhibit B.

26.    The Debtors will serve such Assumption Notice via overnight delivery on

each of the following parties (the "Assumption Notice Parties"): (a) each counterparty or

landlord to any Contract or Real Property Lease (and their counsel, if known) to be assumed or

assigned by the Debtors, (b) the Office of the United States Trustee, and (c) counsel to Buyer.

27.    The Assumption  Notice will set forth the following information, to the

best of the Debtors' knowledge: (a) the street address of the real property that is the subject of

any Designated Real Property Lease that the Debtors seek to assume and assign or a description

of the Designated Contract that the Debtors seek to assume and assign, (b) the name and address

of the affected counterparties or landlords (and their counsel, if known), (c) a description of the

deadlines and procedures for filing objections to the Assumption Notice (as set forth below), (d)

the name of the Buyer (the "Proposed Assignee"), (e) information regarding how a non-debtor

party to a Designated Contract or Designated Real Property Lease may obtain additional

information regarding the Proposed Assignee, (f) any Cure Costs that arise solely following the deadline to object to the Sale Transaction and have not otherwise been paid in the ordinary course, if any, and (g) the proposed order approving the assumption and assignment (the "Assumption Order"), substantially in the form attached hereto as Annex 1 to the Assumption Notice.

28.     A party in interest may object following the Closing to the proposed assumption and assignment by the Debtors of a Designated Contract or Designated Real Property Lease.  Any such objection to the proposed assumption and assignment by the Debtors of a Designated Contract or Designated Real Property Lease following the Closing must be in writing and filed and served so that such objection is filed with this Court and actually received by the Debtors and the Assumption Notice Parties no later than fourteen (14) days after the date the Debtors served the applicable Assumption Notice.

29.     If no timely permitted objection is filed and served with respect to the Assumption Notice, any non-Debtor party to such Designated Contract or Designated Real Property Lease shall be deemed to have provided the required consent to the assumption and assignment of such Designated Contract or Designated Real Property Lease, and the Debtors shall present the Assumption Order for entry by the Court.  The Assumption Order shall provide, among other things, that (a) the assumption and assignment of such Designated Contract or Designated Real Property Lease is approved, final and effective pursuant to section 365 of the Bankruptcy Code as of the date of the Assumption Order and (b) the Proposed Assignee provided adequate assurance of future performance under the applicable Designated Contract or Designated Real Property Lease in accordance with section 365(f)(2)(b) of the Bankruptcy Code and if applicable, section 365(b)(3) of the Bankruptcy Code.

US2008 7301773 12

30.     If a timely permitted objection is properly filed and served on the Assumption Notice Parties in the manner specified above, unless the parties agree otherwise in writing, a hearing will be scheduled to consider that objection.  If that objection is overruled by the Court or withdrawn, the assumption and assignment of the affected Designated Contract or Designated Real Property Lease shall be deemed effective as of the date of the Assumption Order.

31.     All timely filed objections relating to the proposed Cure Costs, as noted on the attached Exhibit C, will be set for a continued hearing date (the "Continued Objections") solely with respect to Cure Costs as to Initial Assumed Real Property Leases and Initial Assumed Contracts, and notwithstanding anything to the contrary in this Order, each such counterparty that filed a Continued Objection relating to assumption and assignment of a Designated Contract or Designated Real Property Lease reserves all rights to raise a future objection solely relevant to assumption and assignment of the Designated Contract or Designated Real Property Lease on any basis other than the extension of the deadline to assume or reject such Designated Contract or Designated Real Property Lease to and including September 9, 2015.  All such Continued Objections with respect to Initial Assumed Real Property Leases and Initial Assumed Contracts will be set for a further hearing with notice (the "Continued Hearing Date").  All such Continued Objections with respect to a Designated Contract or Designated Real Property Lease will be set for a further hearing in accordance with the notice procedures set forth herein related to Designated Contracts and Designated Real Property Leases.

32.     Notwithstanding anything herein to the contrary, if any Continued Objections relate to an Initial Assumed Real Property Lease or an Initial Assumed Contract (in either case meaning a Real Property Lease or Contract assumed and assigned to Buyer on the

-23-

Closing Date), the Buyer shall be entitled to treat such Initial Assumed Real Property Lease or an Initial Assumed Contract as a Removed Real Property Lease or Removed Contract in the event the respective Cure Costs or other issue as determined by a Final Order of the Bankruptcy Court renders the assumption and assignment of such Initial Assumed Real Property Lease or an Initial Assumed Contract unfavorable to the Buyer in its sole judgment (the Buyer shall have fourteen (14) days following entry of such Final Order to make such determination).

33.     Following Closing, the Debtors shall promptly file with the Bankruptcy Court a list of the Initial Assumed Real Property Leases, the Initial Assumed Contracts, the Removed Real Property Leases, the Removed Contracts, the Remaining Real Property Leases and the Remaining Contracts.

34.     After the Closing,  the Debtors  shall  not terminate, amend, supplement, modify, waive any  rights under, or create any Claims with  respect  to  any  Contract or Real Property Lease,  or  take  any  affirmative   action  not  required  thereby, without the prior written consent of Buyer (not to be unreasonably  withheld or delayed) unless Buyer has provided written  notice to Debtors designating  such Contract or Real Property Lease for rejection pursuant to this Order and the Purchase Agreement.

35.     With respect to any Debtor Contract that is the subject of a Continued Objection, the provisions of this Order shall not apply to such Debtor Contract until such time as such Debtor Contract becomes an Assumed Contract and any Continued Objection related thereto is resolved by consent of the applicable parties or a subsequent order of the Bankruptcy Court.

-24-

US2008 7301773 12

## REJECTION OF CERTAIN CONTRACTS AND REAL PROPERTY LEASES

36.     In the case of any Contract or Real Property Lease that the Buyer does not want to assume and assign, within five (5) days following delivery of a notification by Buyer that a Contract or Real Property Lease is designated for rejection, the Debtors shall move to reject such Contract or Real Property Lease by filing with the Court a written notice of the Debtors' intent to reject such Contract or Real Property Lease (a "Rejection Notice"), substantially in the form attached hereto as Exhibit D.  Within three (3) Business Days of delivery of notification  by Buyer to the Debtors of its intention to reject a Contract or Real Property Lease, the Debtors shall serve such Rejection Notice via overnight delivery on each of the following parties (the "Rejection Notice Parties"): (a) each counterparty or landlord to any Contract or Real Property Lease (and their counsel, if known) to be rejected by the Debtors, (b) the Office of the United States Trustee, and (c) counsel to the Buyer.

37.     The Rejection  Notice will set forth the following information, to the best of the Debtors' knowledge: (a) the street address of the real property that is the subject of any Real Property Lease that the Debtors seek to reject or a description  of the Contract  that the Debtors seek to reject, (b) the name and address of the affected counterparties or landlords (and their counsel, if known), (c) a description of the deadlines and procedures for filing objections to the Rejection Notice (as set forth below), and (d) the proposed order approving the rejection (the "Rejection Order"), substantially in the form attached hereto as Annex 1 to the Rejection Notice.

38.     Should a party in interest object to the proposed rejection by the Debtors of a Contract or Real Property Lease, such party must file and serve a written objection so that such objection  is filed with this Court and actually received by the Debtors and the Rejection Notice Parties no later than ten (10) days after the date the Debtors served the Rejection Notice.

39.     If a timely objection is properly filed and served on the Rejection Notice Parties, unless the parties agree otherwise in writing, a hearing will be scheduled to consider that objection. If that objection is overruled by the Court or withdrawn, the rejection of the affected Contract or Real Property Lease shall be deemed effective as of the later of (a) the date of delivery of the Rejection Notice to the Contract or Real Property Lease counterparty or (b) in the case of a Real Property Lease, the date of surrender (including turning over keys and, if applicable, key codes and security codes to the affected landlord or its property manager) of the premises that are the subject of such Real Property Lease (the "Rejection Effective Date").

40.     If no timely objection is filed and served with respect to the rejection of a Contract or Real Property Lease within ten (10) days after delivery of a Rejection Notice, the Debtors may file a proposed order approving such rejection, which shall provide, among other things, that the rejection of such Contract or Real Property Lease shall become effective as of the applicable Rejection Effective Date.

41.     In connection with the rejection of a Real Property Lease, if the Debtors have deposited monies with a lessor as a security deposit or other arrangement, such lessor may not set off or recoup or otherwise use such deposit without the prior approval of the Court. Nothing in this Order shall constitute a waiver of any claims that may arise pursuant to section 365(d)(3) of the Bankruptcy Code.

42.     If an affected landlord or counterparty or any other party in interest (the "Rejection Claimant") asserts a claim or claims against the Debtors arising from the rejection of a Contract or Real Property Lease, such Rejection Claimant shall submit a proof of claim on or before the later of (a) the date that is 30 days after the entry of an order rejecting the relevant Contract or Real Property Lease or (b) the bar date established by this Court for filing proofs of

-26-

claim arising out of the rejection of Contract or Real Property Leases against the Debtors. If the Rejection Claimant does not timely file such proof of claim, such claimant shall be forever barred from asserting a claim against the Debtors for such rejection damages.

43.    As of the Closing Date in the case of the Removed Real Property Leases and the Removed Contracts, and as of the date of entry of an order approving the rejection of each of the subsequently designated Removed Property Leases and Removed Contracts, or in either case if applicable, upon the conclusion of the Post-Closing Occupancy Period, Sellers shall be deemed to have rejected such Removed Real Property Leases and Removed Contracts in accordance with Section 365 of the Bankruptcy Code.

## RELEASE

44.    Upon the Closing Date, each of the Releasing Parties hereby fully, completely and unconditionally release, remise and acquit, and forever discharge the Directors and Officers, their respective Successors and Affiliates, including, without limitation, all past and present officers, directors, employees, shareholders, managers and attorneys of or for Jackson Investment Group, LLC, and each of them, of and from any and all Released Claims.

45.    The Releasing Parties and each of them further covenant and agree that neither they, nor any of them, will assert, initiate, institute, prosecute, participate in or maintain, or will instigate, abet or encourage any other person or entity to assert, initiate, institute, prosecute, participate in or maintain, any claim or action of any kind, currently or in the future, against any of the above released parties with respect to any Released Claim.

46.    The Releasing Parties severally agree that such Releasing Party shall not pursue any claim or action of any type or nature that such Releasing Party may have, claim to have or assert to have, of any type or nature (including any such claims, demands and causes of

-27-

action that have not been discharged that may hereafter accrue or arise or which they may in the future acquire in any way), against any non-released Person, that would result in such non-released Person seeking damages, contribution, indemnity, right of set off or any other economic benefit or recovery against an above released party with respect to any Released Claim (a "Resulting Claim"), unless such Releasing Party shall have executed an indemnity in favor of, and in form and substance satisfactory to, the party released above, as applicable, for payment (not collection) of any liability, payment obligations and costs (including, without limitation, advancement of attorneys' and other litigation advisory fees and expenses) that may be incurred in connection with such Resulting Claim.

47.     The above releases are not intended to: (i) include non-consensual releases by third parties of any direct cause of action such third party may have against a released party; or (ii) have the effect of releasing any claim or cause of action, if any, arising under the Purchase Agreement, provided that the negotiation of the Purchase Agreement shall not form the basis for any claim or recovery therein.

48.     The above releases shall be effective upon the Closing Date without the need for the execution and delivery of additional documentation or the entry of any additional Orders of the Bankruptcy Court other than the Sale Order.

## BUYER'S STANDING AFTER CLOSING

49.     The Sellers shall assign to the Buyer any and all of the Sellers' and the Sellers' estates' rights, claims and defenses with respect to any and all Assumed Liabilities.

50.     The Buyer is granted, upon Closing, all rights of the Debtors and their estates, including derivative standing pursuant to Sections 105 and 1109 of the Bankruptcy Code, with respect to all Assumed Liabilities and Consignment Goods Litigation, with the right and

-28-

power to initiate, prosecute and settle any and all rights, claims, defenses, causes of action and objections related to any and all such Assumed Liabilities and Consignment Goods Litigation, and neither the Debtors' nor their estates, nor any other party granted derivative standing thereof, shall settle or otherwise validate or compromise any of the Assumed Liabilities or Consignment Goods Litigation without the prior written consent of the Buyer.

### ADDITIONAL PROVISIONS

51.     This Court shall retain exclusive jurisdiction to, among other things, interpret, enforce and implement the terms and provisions of this Sale Order and the Purchase Agreement, all amendments thereto, any waivers and consents thereunder (and of each of the agreements executed in connection therewith in all respects), to adjudicate disputes related to this Sale Order or the Purchase Agreement, and to enforce the injunctions set forth herein.

52.     All entities that are currently in possession of some or all of the Assets are hereby directed to surrender possession of such assets to Buyer as of the Closing.

53.     No bulk sales law, or similar law of any state or other jurisdiction shall apply in any way to the transactions contemplated by the Purchase Agreement, the Sale Transaction and this Sale Order.

54.     The transactions contemplated by the Purchase Agreement are undertaken by Buyer in good faith, as that term is used in section 363(m) of the Bankruptcy Code, and accordingly, the reversal or modification on appeal of the authorization provided herein of the Sale Transaction shall neither affect the validity of the Sale Transaction nor the transfer of the Assets to Buyer, free and clear of Claims, unless such authorization is duly stayed before the Closing pending such appeal.

-29-

55.    The terms and provisions of the Purchase Agreement and this Sale Order shall be binding in all respects upon, or shall inure to the benefit of, the Debtors, their estates and their creditors, Buyer, and their respective Affiliates, successors and assigns, and any affected third parties including all persons asserting Claims, notwithstanding any subsequent appointment of any trustee, examiner or receiver under any chapter of the Bankruptcy Code or any other law, and all such provisions and terms shall likewise be binding on such trustee, examiner or receiver and shall not be subject to rejection or avoidance by the Debtors, their estates, their creditors or any trustee, examiner or receiver.

56.    The failure specifically to include any particular provision of the Purchase Agreement in this Sale Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the Purchase Agreement be authorized and approved in its entirety.

57.    The Purchase Agreement, and any related agreements, documents or other instruments, may be modified, amended or supplemented by the parties thereto, in a writing signed by both parties, and in accordance with the terms thereof, without further order of the Court, provided that any such modification, amendment or supplement does not materially change the terms of the Purchase Agreement.

58.    In the event that there is a conflict between the terms of this Sale Order, the Purchase Agreement, the Confirmation Order, the Plan, the Disclosure Statement, any other order of the Court, or any other document, the item in the immediately preceding list that is first listed between the two items shall control.  Nothing contained in any chapter 11 plan hereinafter confirmed in these chapter 11 cases shall conflict with or derogate from the provisions of the Purchase Agreement or the terms of this Sale Order.

-30-

US2008 7301773 12

59.    Each and every federal, state and local governmental agency, department or official is hereby directed to accept any and all documents and instruments necessary and appropriate to consummate the transactions contemplated by the Purchase Agreement.

60.    Promptly after the Closing Date each Seller shall change its name to a name that is not (and that is not confusingly similar to) "Family Christian" or "FCS", and each Seller shall correspondingly change the caption of each of the Debtor's cases to reflect such new names.

61.    Notwithstanding anything to the contrary contained in this Order, this Order does not approve the sale or transfer of the software (the "Infor Software") of Infor (US), Inc., or grant any rights to possess or use the Infor Software, to any purchaser of any of the Debtors' assets.

62.    Furthermore,  the amount of $60,000 shall be set aside by the Debtors in a segregated account as adequate protection for the secured claims of Bexar County, Dallas County, City of Frisco, Hidalgo County, Hunt County and McLennan County (collectively, the "Local Texas Tax Authorities") and Henrico County, Virginia prior to the distribution of any proceeds to any other creditor.  The liens of the Local Texas Tax Authorities and Henrico County, Virginia shall attach to these proceeds to the same extent and with the same priority as the liens they now hold against the property of the Debtors. These funds shall be on the order of adequate protection and shall constitute neither the allowance of the claims of the Local Texas Tax Authorities and Henrico County, Virginia, nor a cap on the amounts they may be entitled to receive. Furthermore, the claims and liens of the Local Texas Tax Authorities and Henrico County, Virginia shall remain subject to any objections any party would otherwise be entitled to raise as to the priority, validity or extent of such liens. These funds may be distributed upon

-31-

agreement among the Local Texas Tax Authorities, Henrico County, Virginia and the Debtors, or by subsequent order of the Court, duly noticed to the Local Texas Tax Authorities and Henrico County, Virginia.  To the extent the Local Texas Tax Authorities and Henrico County, Virginia are not entitled to receive some or all of the $60,000 to be set aside pursuant to this paragraph, the funds to which the Local Texas Tax Authorities and Henrico County, Virginia are not entitled shall be transferred to Buyer and shall not become property of the Debtors' estates.

63.    Nothing in this Order or the Purchase Agreement shall be deemed to be a release, impairment, or modification of any Trade Creditor's right to assert or exercise defenses, setoff and/or recoupment rights on a dollar for dollar basis in reduction of the Trade Creditor's claim against the Debtors owing on the Petition Date (except that such rights shall be reduced on a dollar for dollar basis on account of payments made to such Trade Creditor under this Order, the Purchase Agreement or the Plan) with respect to (i) any books and other merchandise that the Debtors had purchased prior to Petition Date, and/or (ii) any claims of the Debtors against the Trade Creditor with respect to any transaction prior to the Petition Date that are transferred to the Buyer under the Purchase Agreement.  Other than with respect to Consignment Goods, the Buyer will not return to any Trade Creditor any Transferred Inventory the Debtors received from such Trade Creditor before the Petition Date, unless such Trade Creditor agrees to accept returns of such Transferred Inventory.

64.    Notwithstanding the provisions of Bankruptcy Rules 6004(h), 6006(d) or 7062, this Sale Order shall be effective and enforceable immediately and shall not be stayed.

Section 2.3(a)(iv)(2)(Payment Option 2) of the Purchase Agreement and Section 3.5(b)(i)(Payment Option 2) of the Plan are deleted in their entirety and replaced

-32-

with the following (underlined italic text indicates new language versus the

deleted text):

       Payment Option 2: Such Holder shall be entitled to an amount equal to thirty-five (35%) percent of the Debtors' *underlined undisputed* book value for such Consenting Consignment Vendor's Consignment Goods that are Transferred Inventory under the APA, paid in the month following the month in which such individual items of Transferred Inventory are sold by the Post-Closing Business. In addition, the Buyer will pay thirty-five (35%) percent of the Debtors' *undisputed* book value for such Consenting Consignment Vendor's Consignment Goods that are sold by the Debtors between June 15, 2015 and the Closing Date, paid no later than thirty (30) days following the Closing Date. *Upon the resolution of any disputed portion of the Debtors' book value for such Consenting Consignment Vendor's Consignment Goods, whether consensual or by Bankruptcy Court order, the Buyer will pay 35% of such resolved amount in the month following the month in which such resolution is finalized.*

       65.    Buyer shall maintain proper and adequate insurance for the Stores subject to the Real Property Leases occupied by the Buyer in accordance with such Real Property Leases.

**REMAINDER OF PAGE INTENTIONALLY BLANK**

-33-

66.     The objection of the landlords (the "<u>Kelley Drye Landlords</u>") listed in the objection at Docket No. 1070 is withdrawn on the basis that prior to the expiration of the existing deadline pursuant to section 365(d)(4) of the Bankruptcy Code set forth in the Court's prior Order [Dkt No. 861], the Debtors requested, and notwithstanding this Order, the Kelley Drye Landlords consented in writing to a further extension of such deadline to and including September 9, 2015.

**END OF ORDER**

*Order prepared and submitted by:*

A. Todd Almassian (P55467)
Greg J. Ekdahl (P67768)
Keller & Almassian, PLC
230 East Fulton Street
Grand Rapids, MI 49503
(616) 364-2100
ecf@kalawgr.com

− and −
Erich Durlacher (Ga Bar No. 235563)
Brad Baldwin (Ga Bar No. 034220)
Burr & Forman LLP
171 17th Street, N.W. – Suite 1100
Atlanta, Georgia 30363
Telephone:  (404) 815-3000
edurlacher@burr.com
bbaldwin@burr.com
***Attorneys to the Debtors***

**Signed: August 11, 2015**





John T. Gregg
United States Bankruptcy Judge

US2008 7301773 12