UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| In re: | Case No. GG 15-00643-jtg (Jointly Administered) |
| FKA FC, LLC, *et al.*,[1] | Chapter 11 |
| Debtors. | Hon. John T. Gregg |

_____ /

## MEMORANDUM DECISION REGARDING ASSUMPTION AND ASSIGNMENT OF UNEXPIRED LEASE

APPEARANCES: Erich Durlacher, Esq. and Brad Baldwin, Esq., BURR & FORMAN LLP, Atlanta, Georgia, A. Todd Almassian, Esq. and Greg J. Ekdahl, Esq., KELLER & ALMASSIAN, PLC, Grand Rapids, Michigan, for Gary Murphey, the Plan Administrator. Paul M. Rosenblatt, Esq., KILPATRICK TOWNSEND & STOCKTON, LLP, Atlanta, Georgia, and Ronald A. Schuknecht, Esq., SMITH HAUGHEY RICE & ROEGGE, Grand Rapids, Michigan, for Family Christian Stores, LLC f/k/a FCS Acquisition, LLC. Ronald J. Johnson, Esq., LAW OFFICES OF RONALD J. JOHNSON, San Antonio, Texas, and Robert F. Wardrop, II, Esq., WARDROP & WARDROP, P.C., Grand Rapids, Michigan, for Los Banos Gravel Co., Inc.

This matter comes before the court upon the request of Family Christian, LLC and its affiliated debtors (collectively, the "Debtors") to assume and assign an unexpired lease. Los Banos Gravel Co., Inc., the non-debtor-counterparty to the lease ("Los Banos"), objects to assumption and assignment because the proposed cure amount of $0.00 fails to include attorneys' fees incurred by Los Banos as a result of the Debtors' bankruptcy. For the following reasons, the court shall approve assumption and assignment of the lease and determine the cure claim to be $0.00.[2]

---

[1]  The Debtors are: FKA FC, LLC, f/k/a Family Christian, LLC (Case No. 15-00643-jtg), FKA FCH, LLC, f/k/a Family Christian Holding, LLC (Case No. 15-00642-jtg), and FCGC, LLC, f/k/a FCS Giftco, LLC (Case No. 15-00644-jtg).

[2]  The following shall constitute this court's findings of fact and conclusions of law under Fed. R. Bankr. P. 7052.

## JURISDICTION

The court has jurisdiction pursuant to 28 U.S.C. § 1334(b). This is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (O).

## BACKGROUND

Prior to the Petition Date (as defined below), the Debtors sold religious merchandise such as books, music, movies and other supplies at more than 250 brick and mortar retail stores throughout the country. The Debtors leased the premises for a retail store located in Bexar County, Texas from Los Banos pursuant to a certain Shopping Center Lease dated May 28, 2003 (as amended, the "Lease").[3] The Lease is characterized as a "triple-net lease," meaning that the Debtors were responsible for base rent, as well as other charges such as taxes, common area maintenance and insurance.

The Lease provides the following with respect to events of default:

15.     Defaults and Remedies.

(A)     Any one of the following shall be a default by Tenant: (1) if Tenant fails to pay Rent, Security Deposit, or other money, or to provide a certificate of insurance or to provide an estoppel certificate as required by Article 27 when due, or (2) if Tenant fails to perform or observe any agreement or condition on its part to be performed or observed, other than the defaults mentioned in the preceding clause (1) or in clause (3) through (8) below, or if Tenant defaults under any other lease or agreement between Tenant and Landlord or an affiliate of Landlord, or (3) if Tenant's leasehold interest is levied on, attached or taken by any process of law, or (4) if Tenant makes an assignment of its property for the benefit of creditors, or (5) if any bankruptcy, insolvency or reorganization proceeding or arrangement with creditors (whether through court or by proposed composition with creditors) is commenced by or against Tenant, or (6) if a receiver or trustee is appointed for any of Tenant's property, or (7) if this Lease is transferred to or devolves on, or the Lease Premises is occupied by, anyone other than Tenant except if specifically

---

[3]     The Lease was initially between Family Christian Stores, Inc., as tenant, and Kimco Forum At Olympia L.P., as landlord. As part of a series of transactions, the Lease was eventually assigned to Los Banos and Family Christian, LLC. Upon confirmation of the Plan (as defined below), a plan administrator was appointed to administer and windup the Debtors' affairs post-confirmation. The plan administrator has succeeded to the Debtors' rights and interests in connection with this dispute. For ease of reading, however, the court shall use the plural term "Debtors" even when referring to Family Christian, LLC or the plan administrator.

permitted by this Lease, or (8) if Tenant closes the Leased Premises or ceases doing business at the Lease Premises.

(Lease at Art. 15(A).)  The Lease further states that in the event that the Debtors fail to timely pay rent or other money, Los Banos is required to notify the Debtors in writing that they have ten days to cure the monetary default.  (*Id.*)  Under the Lease, the Debtors are responsible for any reasonable attorneys' fees incurred by Los Banos related to specific events.  (Lease at Arts. 5(A), 7, 8(F), 10(F), 11(A), 15(C), 18, 22 and 26.)

On February 11, 2015 (the "Petition Date"), the Debtors each filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code.  As of the Petition Date, the Debtors were current under the Lease in all respects.[4]  In March 2015, the Debtors filed a motion to sell substantially all of their assets and assume and assign executory contracts and unexpired leases.[5]  Pursuant to the bidding procedures established by the court [Dkt. No. 597], the Debtors identified certain executory contracts and unexpired leases, including the Lease with Los Banos, that they were seeking to assume and assign as part of the sale, as well as any cure amounts that would be paid in connection therewith [Dkt. No. 694].

Los Banos timely filed a "limited" objection to the proposed assumption and assignment of its Lease [Dkt. No. 813] (the "First Objection").  In the First Objection, Los Banos contended that the cure claim of $0.00 was incorrect because it should have included year-end tax adjustments and CAM reconciliations, the amounts of which would not be determined until January 2016.  Nonetheless, Los Banos recognized that "[t]he Debtor is not in default under the terms of the lease at this time," and that the First Objection was filed to "preserve" the rights of Los Banos under the

---

[4]     The Debtors and/or the Buyer (as defined below) also timely paid rent to Los Banos through the date of the evidentiary hearing in connection with this dispute.  (Buyer Ex. 1.)

[5]     The Debtors previously filed, but voluntarily withdrew, a similar motion.

Lease. (First Obj. at ¶¶ 1, 7.) For all intents and purposes, the First Objection was protective in nature.

On June 9, 2015, the court held a contested hearing regarding the sale motion, which the court ultimately denied. *See In re Family Christian, LLC*, 533 B.R. 600 (Bankr. W.D. Mich. 2015).[6]  Thereafter, the Debtors reformulated their restructuring strategy and filed a plan of liquidation, as amended [Dkt. Nos. 955, 979, 986 and 991] (the "Plan"). The Plan provided for the sale of substantially all of their assets to FCS Acquisition, LLC n/k/a Family Christian Stores, LLC (the "Buyer"). Although certain parties initially objected to confirmation of the Plan, all such objections were resolved by the Debtors prior to the confirmation hearing. As such, this court held an uncontested confirmation hearing, after which it entered an order confirming the Plan [Dkt. No. 1100]. As contemplated by the Plan, the court separately entered an order approving the sale and establishing procedures for the assumption and assignment of unexpired leases and executory contracts [Dkt. No. 1103] (the "Sale Order"). Consistent with the procedures established by the Sale Order, the Debtors filed a notice of assumption and assignment of executory contracts and unexpired leases [Dkt No. 1150], which included the Lease with Los Banos. The Debtors again identified the proposed cure amount under the Lease as $0.00.

On September 18, 2015, Los Banos filed an objection [Dkt. No. 1178] (the "Second Objection") to the notice of assumption. In the Second Objection, Los Banos objected to the proposed cure amount because it failed to include the attorneys' fees incurred by Los Banos in connection with the First Objection. (Sec. Obj. at ¶¶ 7, 9.) After the Debtors responded [Dkt. No. 1317], Los Banos filed a reply brief in which it attempted to identify defaults under the Lease, as

---

[6]     Los Banos, through counsel, appeared at the hearing.

well as the provision of the Lease that purportedly provides Los Banos with a right to reimbursement of attorneys' fees [Dkt. No. 1323].

On November 3, 2015, the court held a status conference. During the status conference, the court discussed the issues with the parties and informed them that an evidentiary hearing would be held, if necessary, to resolve the dispute. Hoping to avoid the expense associated with an evidentiary hearing, the parties advised the court that they would file a stipulation of facts. In a scheduling order entered on November 5, 2015 [Dkt. No. 1357], the court, among other things, (i) instructed the parties to conduct discovery (to the extent it had not already commenced), (ii) identified the outstanding issues, (iii) established a deadline for optional supplemental briefs, and (iv) scheduled an evidentiary hearing for January 14, 2016.

The Buyer and Los Banos timely filed supplemental briefs on January 5, 2016 [Dkt. Nos. 1449-1450].[7] In its supplemental brief, for the first time and a mere nine days before the evidentiary hearing, Los Banos asserted that the Debtors committed an event of default under the Lease when they failed to timely remit payment to a third party vendor for repair and maintenance at the premises.[8]

The court held an evidentiary hearing on January 14, 2016. At the hearing, the court admitted twenty-seven exhibits into evidence, as well as an affidavit from counsel to Los Banos regarding the reasonableness of its attorneys' fees. The parties agreed to proffered testimony from

---

[7]     Under the Sale Order, the Buyer is responsible for satisfaction of all cure claims and was granted derivative standing. (Sale Order at ¶¶ 19 and 50.)

[8]     On the same day Los Banos filed its supplemental brief, Los Banos filed a motion requesting that the court amend its scheduling order because Los Banos believed that the parties would not be able to stipulate as to the relevant facts [Dkt. No. 1448]. Two days later, the court held a hearing on the motion during which Los Banos indicated it would not be in a position to proceed with the evidentiary hearing and requested an adjournment to March 2016. The Debtors and the Buyer, however, stated their preference was to move forward with the hearing. Noting, among other things, that this matter has been pending for several months and that the parties had over two months to prepare for the evidentiary hearing, the court informed the parties that the hearing would proceed as scheduled.

Ronald Johnson, counsel to Los Banos, and Paul Neitzel, the Vice President of Real Estate and Construction for the Buyer.

At the conclusion of the hearing, the court took the matter under advisement. Upon careful consideration of the legal arguments presented and the evidence admitted into the record, the court shall approve assumption and assignment of the Lease and determine the cure amount to be $0.00.

## **DISCUSSION**

Section 365(a) of the Bankruptcy Code provides, in pertinent part, that "the trustee, subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor." 11 U.S.C. § 365(a). Although the Bankruptcy Code does not define the terms "executory contract" and "unexpired lease," the Sixth Circuit Court of Appeals has recognized that they are generally agreements where performance remains due to some extent on both sides. *In re Terrell*, 892 F.2d 469, 471 (6th Cir. 1989) (citations omitted) (recognizing that Congress adopted Countryman definition); *see also In re Jolly*, 574 F.2d 349, 351 (6th Cir. 1978) (adopting functional analysis approach).

In order to assume an executory contract or unexpired lease, the trustee must satisfy all requirements for assumption, including those under section 365(b)(1). Section 365(b)(1) provides, in pertinent part, that:

> (b)(1)  *If there has been a default in an executory contract or unexpired lease* of the debtor, the trustee may not assume such contract or lease unless, at the time of assumption of such contract or lease, the trustee –
>
> (A)  cures, or provides adequate assurance that the trustee will promptly cure, *such default*;
>
> (B)  compensates, or provides adequate assurance that the trustee will promptly compensate, a party other than the debtor to such contract or lease, for any actual pecuniary loss to such party *resulting from such default*; and

> (C)     provides adequate assurance of future performance under such contract or lease.

11 U.S.C. § 365(b)(1) (emphasis added).

The requirement that the trustee cure any defaults and compensate a non-debtor counterparty to an unexpired lease for actual pecuniary losses has been explained as follows:

> Section 365(b)(1)(B) requires that the Trustee compensate the landlord for any actual pecuniary loss resulting from a default under an expired lease, before assuming the lease. *See* 11 U.S.C.A. § 365(b)(1)(B). This mandate exists in order to strike a balance between landlord and tenant. The tenant who has defaulted under the terms of the lease can continue to possess property under favorable terms negotiated in better financial times, but in order to do so, the tenant must make the landlord whole for his losses and give him the benefit of his bargain – a bargain that the landlord has negotiated under state law. Thus, bankruptcy law, by ordering that a default be cured under § 365(b)(1)(A) and that pecuniary losses be paid under § 365(b)(1)(B), sends us back to state contract law for a determination of the terms of default and the landlord's rights upon default under the lease.

*Three Sisters Partners, L.L.C. v. Harden (In re Shangra-La, Inc.)*, 167 F.3d 843, 848 (4th Cir. 1999).

As the party moving to assume an executory contract or unexpired lease, the trustee has the ultimate burden of proving that (i) the agreement is subject to assumption, and (ii) all requirements for assumption have been satisfied. *In re Rachels Indus., Inc.*, 109 B.R. 797, 802 (Bankr. W.D. Tenn. 1990); *see Georgia Ports Auth. v. Diamond Mfg. Co., Inc. (In re Diamond Mfg. Co., Inc.)*, 164 B.R. 189, 199 (Bankr. S.D. Ga. 1994).[9]  Importantly, where a non-debtor counter-party disputes assumption because of a default under the agreement, the non-debtor counterparty has the initial burden of demonstrating the occurrence of such default. *In re Rachels Indus.*, 109 B.R. at 802. If the non-debtor counterparty proves the existence of a default, the burden

---

[9]     The Debtors, as debtors in possession, have all rights and powers of the trustee, including those under section 365. *See* 11 U.S.C. § 1107(a).

then shifts back to the trustee as the party seeking to assume the agreement to demonstrate that such default has been cured or will be cured, and that adequate assurance of future performance has been provided. *Id.*

Section 365(b)(1) does not create an independent basis for the recovery of attorneys' fees by a non-debtor counterparty. *See*, *e.g.*, *In re Shangra-La, Inc.*, 167 F.3d at 843; *In re Mid Am. Oil Co., Inc.*, 255 B.R. 839, 841 (Bankr. M.D. Tenn. 2000) (collecting cases). Instead, the following four criteria must be satisfied by the non-debtor counterparty before it is entitled to reimbursement of its attorneys' fees: (i) a default must have occurred, (ii) the agreement must specifically entitle the non-debtor party to reimbursement of attorneys' fees, (iii) applicable non-bankruptcy law must recognize a right to attorneys' fees, and (iv) the attorneys' fees must be reasonable. *In re Shangra-La, Inc.*, 167 F.3d at 840-41; *In re Crown Books Corp.*, 269 B.R. 12, 15-18 (Bankr. D. Del. 2001); *In re Mid Am. Oil Co.*, 255 B.R. at 849-50.

In this case, the parties agree that the Lease is an unexpired lease that may be assumed and assigned under section 365(a). The sole issue before the court is whether the Buyer must reimburse Los Banos for attorneys' fees in excess of $30,000 that Los Banos incurred in connection with the Debtors' bankruptcy. The court concludes that Los Banos has not satisfied its burden of demonstrating that the Debtors were ever in default under the Lease. For this reason alone, Los Banos is not entitled to its attorneys' fees. Assuming *arguendo* that a default is not required, the court concludes that neither the express terms of the Lease nor applicable non-bankruptcy law provide Los Banos with a right to reimbursement of its attorneys' fees under the circumstances.[10]

---

[10]    It is unnecessary for the court to determine the reasonableness of the attorneys' fees for the services of the four law firms retained by Los Banos in this case. However, the court feels compelled to comment that Los Banos' attorneys diligently represented the interests of their client throughout the case. Unfortunately for Los Banos, it must, like the majority of other parties in interest in this case, bear its own costs of representation.

*A.      The Debtors Did Not Commit an Event of Default Under the Lease*

In its numerous pleadings filed in this case, Los Banos makes several attempts to persuade the court that the Debtors were in default under the Lease.  First, Los Banos argues that the commencement of the Debtors' bankruptcy constituted an event of default.  Second, Los Banos contends that the year-end tax adjustments and CAM reconciliations constitute an event of default. Third, Los Banos asserts that the Debtors committed a post-petition default when they failed to increase their rent after receiving notice from Los Banos.  Finally, Los Banos argues that the Debtors committed a post-petition default by failing to remove a lien placed on the premises after the installation of, and non-payment for, an HVAC unit.  None of these arguments are availing.[11]

*1.      The Bankruptcy Filing Alone Does Not Constitute an Event of Default*

Relying on Article 15(A) of the Lease, Los Banos contends that the Debtors' bankruptcy filing constituted a default under the Lease.  The Debtors and the Buyer argue, however, that such provision is an *ipso facto* clause that is unenforceable in bankruptcy.  *See* 11 U.S.C. § 365(b)(2).

The court agrees with the Debtors and the Buyer.  Article 15(A) of the Lease is founded on nothing more than the commencement of a bankruptcy.  *See In re Dow Corning Corp.*, 244 B.R. 678, 696 (Bankr. E.D. Mich. 1999); *see also In re Child World, Inc.*, 161 B.R. 349, 354 (Bankr. S.D.N.Y. 1993) (breach rendered unenforceable by section 365(e)(1) if based solely on commencement of bankruptcy case) (citations omitted).  To adopt Los Banos' argument would contravene the express provisions of the Bankruptcy Code.  The court therefore concludes that the Debtors' bankruptcy filing alone did not trigger an event of default under the Lease.

---

[11]      It is important to keep in mind that in its First Objection, Los Banos recognized that the Lease was not in default.  Against this backdrop, the court strained to understand at the hearing whether a default under the Lease had in fact occurred.  Ultimately, in response to the court's questions, Los Banos could not identify a default.

2.      *The Debtors Complied with the Rent Increase Immediately Upon Receiving Notice*

Los Banos next contends that it is entitled to reimbursement of its attorneys' fees because the fees were incurred after Los Banos provided notice to the Debtors of an increase in tax estimates and CAM charges.  Los Banos cites to Article 15(C) of the Lease, which provides that:

> Notwithstanding any re-entry, dispossession or termination of the Lease by Landlord, Tenant will remain liable for damages to Landlord in an amount equal to the aggregate of all Rents and other charges required to be paid up to the time of such re-entry, dispossession or termination, and for Landlord's damages arising out of the failure of Tenant to observe and perform Tenant's covenants and, in addition, for each month of the period which would otherwise have constituted the balance of the Lease Term, Tenant shall pay any deficiency between the monthly installment of Base Rent plus the Tax Rent, Common Area Rent and all other Rent that would have been payable, less the net amount of the rents actually collected by Landlord from a new tenant, if any.  Tenant will not be entitled to any surplus.  Furthermore, Tenant will be liable to Landlord for all the expenses Landlord incurs for: legal fees related to obtaining possession and making a new lease with another tenant; brokerage commissions in obtaining another tenant; and expenses incurred in putting the Leased Premises in good order and preparing for re-rental. . . .

(Lease at Art. 15(C).)  Los Banos' argument fails on at least two grounds.

First, while it is true that Los Banos provided the Debtors with notice of an increase in tax rent and CAM charges, Los Banos' argument suffers from a fundamental flaw – upon receiving notice, the Debtors immediately increased their monthly payment.  The Lease provides that on the first of each month, the Debtors are required to pay to Los Banos one-twelfth of the Debtors' annual share of tax rent and CAM charges based on Los Banos' estimates of such amounts.  (Lease at Art. 5(B) and 8(D).)  On July 20, 2015, Los Banos sent a letter pursuant to Article 3(B) and Article 5(B) of the Lease notifying the Debtors that Los Banos was increasing the amounts that the Debtors were required to pay for taxes and CAM charges each month:

> Let this letter be your notice that *as of the 1st day of August* we are increasing your monthly tax retention to $3112.00 for a yearly total of $37,352.00.

> These changes are allowed as provided for under Article 3(B) and 5(B), as per lease and Exhibit "A, [sic] attached.
>
> We are also increasing your CAM retention to $978.00 per month for a yearly total of $11,736.00.

(Los Banos Ex. 7 at p. 1 (emphasis added).)

At the hearing, the court admitted into evidence a spreadsheet detailing the Debtors' payment history for the time period from February 2015 through January 2016. (Buyer Ex. 1.)  For all months prior to August 2015, the Debtors paid CAM charges of $700.00 per month and taxes of $2,500.00 per month.  After receiving the notice, the Debtors increased their CAM charges and tax payments to $978.00 and $3,112.00, respectively.  These are the exact amounts requested by Los Banos in its letter dated July 20, 2016.  Los Banos' argument cannot be reconciled with the facts in this case.  In light of the uncontroverted evidence, the court concludes that there was no default because the Debtors complied with the Lease by increasing their payment upon receiving notice.

Second, Los Banos seems to suggest that the phrase "and for Landlord's damages arising out of the failure of Tenant to observe and perform Tenant's covenants" in Article 15(C) of the Lease gives Los Banos a general right to reimbursement of attorneys' fees in the event that Los Banos incurs legal expenses in any way.  In response, the Debtors and the Buyer emphasize that Article 15(C) does not operate as broadly as Los Banos contends.  Rather, according to the Debtors and the Buyer, any relief afforded to Los Banos under Article 15(C) must be in connection with re-entry, possession, and reletting of the premises.

The court agrees with the Debtors and the Buyer.  Los Banos' argument misconstrues Article 15(C) of the Lease.  In essence, Los Banos is asking the court to read the aforementioned phrase in isolation by ignoring the context of the paragraph in which it is found.  The court declines

to adopt Los Banos' interpretation, as to do so would be to ignore basic principles of contract interpretation under Texas law.[12]  *See Comm'r of the Gen. Land Office of the State of Texas v. Sandridge Energy, Inc.*, 454 S.W.3d 603, 615 (Tex. App. 2014) (citing *Forbau v. Aetna Life Ins. Co.*, 876 S.W.2d 132, 134 (Tex. 1994)) (single phrases, sentences or sections of contract should not be isolated so as to consider them apart from other provisions).  Here, Los Banos has not demonstrated, or even alleged for that matter, that the Debtors committed a default related to re-entry, possession, and/or reletting of the premises.

>    3.    *The Annual Adjustments Do Not Give Rise to a Default Under the Lease*

Los Banos next contends that because the Lease contemplates an annual tax adjustment and reconciliation of CAM charges at the end of each year, the Debtors are somehow in default. Los Banos' argument is misplaced.  Los Banos' concerns, while perhaps prudently cautious, do not stem from any default under the Lease.   Rather, the Lease clearly provides that the tax reconciliation will occur at the end of the year:

> *If at the end of a calendar year* (or other accounting period used by the Landlord) the total of the monthly payments by Tenant for the year has exceeded or is less than the annual Tax Rent actually due, then an adjustment shall be made with appropriate payments to or repayment by Landlord.

(Lease at Art. 5(B) (emphasis added).)  The Lease similarly states that CAM charges are to be reconciled at the end of each accounting period, meaning at the end of each year.  (Lease at Art. 8(G); *see* First Obj. at ¶ 9.)

In its First Objection, Los Banos states that at the end of 2015 and after receipt of an invoice, the Debtor will be required to pay adjusted taxes, CAM and other charges as set forth in

---

[12]    The Lease does not contain a choice of law provision.  However, because the parties focused on Texas law in their pleadings and during the hearing, the court will apply it for purposes of this dispute.

the Lease. (First Obj. at ¶ 4.)  Moreover, Los Banos points out that unless a tax protest that it, not the Debtors, initiated is successful, "the Debtor *will owe* an additional amount. . . ."  Similarly, Los Banos recognizes that "[t]he $0.00 Cure Amount significantly understates the amount of taxes that *are owed at the end of 2015* and is less than the amount paid for taxes in 2014."  (*Id.* at ¶ 5.) Finally, Los Banos concedes that although "[t]he Cure Amount for tax retention, CAM, and other costs on the Los Banos Lease *remains unknown*, *it is estimated to be in a range* from a low amount of $10,688.92 to an estimated high amount of $25,000.00, *which is not due at assumption*, *but will be due at year end*."  (*Id.* at ¶ 9 (emphasis added).)

In its Second Objection, Los Banos' arguments all rely on the Debtors' prospective obligations, as opposed to the Debtors' current unsatisfied obligations.  Los Banos' concerns are not unreasonable.[13]  However, because the Debtors were not obligated to pay any additional amounts until adjustments and reconciliations were made by Los Banos in January 2016, the court rejects any contention that the Debtors were in default by failing to remit this unknown amount in June 2015. (*Id.* at ¶¶ 7, 9.)

In its Second Objection, Los Banos tries a different approach, albeit one that is also difficult to understand.  Los Banos argues that the Debtors cannot assume and assign the Lease because the Debtors have not accounted for legal fees incurred by Los Banos in connection with Los Banos' preparation of its First Objection.  Accordingly, Los Banos complains that it was forced to incur legal fees in connection with the sale motion in order to ensure that the Debtors and/or the Buyer would continue to be obligated for the aforementioned year-end tax adjustments and CAM reconciliations. (Sec. Obj. at ¶ 8.)  This argument, however, suffers from the same flaw as noted

---

[13]     Because no default had occurred, these concerns are more appropriately raised in connection with an objection to adequate assurance of future performance. *See* 11 U.S.C. § 365(f)(2)(B); *see also In re M. Fine Lumber Co., Inc.*, 383 B.R. 565, 569-70 (Bankr. E.D.N.Y. 2008) (adequate assurance of future performance under section 365(b)(1)(C) is not issue of contract enforcement that would entitle landlord to attorneys' fees). In this case, the Buyer proposed adequate assurance of future performance against which Los Banos has not offered any substantive legal argument or proof in support thereof.  The Debtors and the Buyer have therefore satisfied their burden in this regard.

above.  At that time, the Debtors cannot be said to have breached the Lease because neither the

year-end tax adjustments nor the CAM reconciliations were due.  And how could they be - they

had yet to be determined by Los Banos.

Los Banos also directs the court to the following paragraph in the Sale Order:

> Each non-Debtor counterparty to the Debtor contracts shall be forever barred, estopped, and permanently enjoined from (a) asserting against the Debtors or Buyer or their respective property any assignment fee, acceleration, default, breach, claim, pecuniary loss, or condition to assignment existing, arising by reason of the Closing or the transfer of the Assets, including any breach related to or arising out of change-in-control provision in such Debtor Contracts, or any purported written or oral modification to the Debtor Contracts, and (b) asserting against Buyer (or its property, including Assets) any claim, counterclaim, breach, or condition to assignment asserted or assertable against the Debtors existing as of the Closing applicable to the assignment to the Buyer of such Debtor Contract, or arising by reason of the transfer of the Assets, except for the Assumed Liabilities, *provided*, *however*, and notwithstanding anything to the contrary in this Order, the Sale Transaction or the Purchase Agreement, Buyer shall be responsible for continuing obligations under the Debtor Contracts, *cum onere*, including, without limitation, liabilities for any breach of such Debtor Contracts occurring after such assignment and obligations to pay year-end adjustment, reconciliation and indemnity obligation amounts that become obligations after the date of this Order (irrespective of whether such obligations accrued before, on, or after assumption or assignment of the Debtor contracts), including tax reconciliations, common area charges and insurance premiums, under the terms of the applicable unexpired lease of the real property, subject to any defenses provided by such Debtor Contract and unless otherwise agreed.

(Sale Order at ¶ 22.)   To the extent Los Banos contends that the Sale Order would have barred it

from collecting the tax adjustments and CAM reconciliations when due, Los Banos is mistaken.

The Sale Order expressly and conspicuously states that the Buyer is responsible for any "year-end

adjustment," including "tax reconciliations [and] common area charges."[14]  (*Id*. at ¶ 22.)  In sum,

---

[14]      During the evidentiary hearing, Los Banos argued that it was forced to file the First Objection and incur attorneys' fees because the Debtors had provided no assurance that the Buyer would pay the tax adjustments and CAM reconciliations when they came due at year end.  This argument is not convincing given Los Banos' admission in the First Objection that the Debtors were not in default under the Lease.

the Debtors' failure to pay undetermined year-end tax adjustments and CAM reconciliations does not constitute a default under the Lease.

### 4. *No Lien Was Placed on the Premises*

Los Banos also contends that the Debtors defaulted under the Lease by not timely paying a third party vendor for the installation of an HVAC unit at the premises. In its supplemental brief, Los Banos asserts the following:

> The lease requires the tenant to pay for maintenance and repairs. In August, 2015, service was performed on the air conditioning of Store No. 444, and the invoice for services was not paid. Los Banos received a Notice of Intent to Impose Lien from Morrison Supply Company, dated November 14, 2015. Los Banos paid the invoice on November 16, 2015. Copies of the Notice and Check are marked as Exhibit A and Exhibit B and are incorporated herein. The Debtor contends the failure to pay for repairs is not a breach of the lease, Los Banos states that failure to pay for repairs *that could result in a lien* imposed on the property under Texas Law is a breach of the lease.

(Los Banos Supp. Br. at ¶ 11 (emphasis added).)[15]

The Buyer responds by setting forth a comprehensive chronology of events regarding the installation of, and payment for, the HVAC unit, which can be summarized as follows: (i) the Debtors arranged for installation of the new unit in August 2015; (ii) Los Banos paid the third party vendor in November 2015; (iii) counsel for Los Banos notified counsel for the Buyer in late December 2015 that Los Banos, without first giving notice to the Debtors, had paid the invoice; and (iv) less than ten days later, the Buyer remitted payment to Los Banos. (Buyer Supp. Br. at ¶ 8.) The Buyer further notes that because no lien was asserted, the Debtors were not technically in default under the Lease.

---

[15]   Los Banos is seeking recovery of the fees it incurred beginning in April 2015. The court is confused, as it is unclear why Los Banos would be entitled to recover fees that were incurred several months *before* the alleged default. The court perceives this argument to be manufactured.

Upon review of the Lease and evidence admitted into the record, it is clear that no default occurred under the Lease because no lien was ever asserted.  The Lease provides that a default occurs "if Tenant's leasehold interest is levied on, attached or taken by any process of law. . . ." (Lease at Art. 15(A)(3).)  Los Banos has not demonstrated that the premises became subject to a lien.  In a letter dated November 13, 2015, the third party vendor apprised Los Banos that unless the outstanding amount was remitted, it would be taking steps to claim a lien.  (Los Banos Supp. Br., Ex. A.)[16]  However, Los Banos failed to introduce any proof that a lien was actually asserted by the third party vendor.  Moreover, upon inquiry from the court at the hearing, Los Banos acknowledged that no lien had ever been asserted.  As the Buyer stresses, the threat of a lien is not the same as the assertion of a lien.  The court therefore concludes that no default occurred under Article 15(A)(3) of the Lease.

To the extent that Los Banos contends that a default occurred when Los Banos paid the third party vendor on behalf of the Debtors, the argument is not convincing.[17]  Article 22 of the Lease allows Los Banos to cure the claim of the third party vendor, but treats any resulting claim of Los Banos against the Debtors as rent.  (Lease at Art. 22.)  As the Buyer astutely notes, claims for rent or other monetary obligations under the Lease are subject to a ten day cure period.  (Lease at Art. 15(A).)  Los Banos did not provide the Debtors with notice of the demand until December 28, 2015, when counsel to Los Banos informed counsel to the Buyer that Los Banos had satisfied the invoice in mid-November 2015.[18]  *See In re Rowland*, 292 B.R. 815, 819-20 (Bankr. E.D. Pa.

---

[16]     The demand letter from the third party vendor to Los Banos was not admitted into evidence.

[17]     The Buyer raised this potential argument, presumably out of an abundance of caution given Los Banos' tendency to introduce new arguments with each filing.

[18]     In an email sent on December 7, 2015 and admitted into evidence, counsel for Los Banos advised counsel for the Buyer that the Buyer should cease any attempts to communicate directly with Los Banos.  In light of the lack of any statement to the contrary from Los Banos at the hearing, the court infers that Los Banos severed all lines of communication with the Debtors and the Buyer on, if not prior to, December 7, 2015.  The court is concerned with

2003) (failure to mitigate damages by giving notice of default precluded recovery of attorneys' fees); *In re Mid Am. Oil, Inc.*, 255 B.R. at 843-44 (landlord failed to provide notice to debtor-tenant regarding unpaid taxes). Upon receiving notice, the Buyer immediately reimbursed Los Banos within the ten day period provided under the Lease, thereby satisfying the Debtors' obligations. In sum, the court rejects any argument that the demand from the third party vendor constituted a default under the circumstances.

**B.      *The Lease Does Not Entitle Los Banos to Attorneys' Fees***

Even if a default is not a prerequisite to the recovery of attorneys' fees, Los Banos has not directed the court to any provision of the Lease that would apply under the circumstances. Upon review of the numerous pleadings filed by Los Banos, the court notes that the only provision upon which Los Banos expressly relies is Article 15(C). (Reply at ¶¶ 5-6.)[19] Los Banos concludes, without any substantive explanation, that the Lease grants Los Banos the right to reimbursement of attorneys' fees. (*Id*. at ¶ 6; Sec. Obj. at ¶ 7.) Conversely, the Debtors and the Buyer thoroughly explained the reasons why the provisions entitling Los Banos to attorneys' fees are inapplicable under the circumstances in this case. (Resp. at ¶ 3; Buyer Supp. Br. at ¶¶ 14-26.)

The court declines to speculate as to the provisions in the Lease upon which Los Banos may or may not rely. *See*, *e.g.*, *Poss v. Morris (In re Morris)*, 260 F.3d 654, 665 (6th Cir. 2001). It is not sufficient for Los Banos to "mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones." *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) (quoting *Citizens Awareness Network, Inc. v. United States Nuclear Regulatory Comm'n*, 59 F.3d

---

the inherent unfairness in Los Banos' conduct. On the one hand, Los Banos is attempting to hold the Debtors accountable for their inaction. Yet, on the other hand, Los Banos failed to provide the Debtors with any notice that action needed to be taken.

[19]      As noted above, Article 15(C) does not entitle Los Banos to reimbursement of attorneys' fees because the fees were not incurred in connection with re-entry, dispossession or termination of the Lease.

284, 293-94 (1st Cir. 1995)).  Based on the convincing analysis provided by the Debtors and the Buyer, the court concludes that the provisions in the Lease that give rise to attorneys' fees are simply not broad enough under the circumstances. *See In re I-Mind Educ. Sys., In*c., 269 B.R. 47, 48 (Bankr. N.D. Cal. 2001).  As such, even if a default was not a prerequisite to cure and compensation for actual pecuniary loss under section 365(b)(1), the Lease would still not provide a basis for recovery of attorneys' fees.

### C.     *Applicable Non-Bankruptcy Law Does Not Entitle Los Banos to Attorneys' Fees*

Finally, Los Banos contends that it is entitled to reimbursement of its attorneys' fees based on applicable non-bankruptcy law.  Los Banos relies solely on section 38.001 of the Texas Civil Practice and Remedy Code, which provides for the recovery of attorneys' fees in an action upon a contract.  In response, the Buyer again emphasizes that because the Debtors were never in default under the Lease, Los Banos does not have any separate and valid underlying claim under Texas law that would give rise to a right to attorneys' fees.

Section 38.001 of the Texas Civil Practice and Remedy Code states that "[a] person may recover reasonable attorney's fees from an individual or corporation, in addition to the amount of a valid claim and costs, if the claim is for . . . an oral or written contract."  Tex. Civ. Prac. & Rem. Code § 38.001(8).  As a prerequisite to recovery of attorneys' fees under section 38.001, however, a person must establish that it holds a valid claim.  *MBM Fin. Corp. v. The Woodlands Operating Co., L.P.*, 292 S.W.3d 660, 666 (Tex. 2009) (citations omitted) (person must prevail on a breach of contract claim and recover damages in order to be entitled to attorneys' fees).  As noted by the Texas Supreme Court, "suits cannot be maintained solely for the attorney's fees; a client must gain something before attorney's fees can be awarded."  *Id.* at 663.

In support of its argument that Texas law entitles it to recovery of attorneys' fees, Los Banos cites to several decisions from Texas courts, all of which are distinguishable from the facts in this case. *See Schwertner Backhoe Servs. v. Kirk (In re Kirk)*, 525 B.R. 325 (Bankr. W.D. Tex. 2015) (attorneys' fees related to claims under Texas Construction Trust Fund Act non-dischargeable); *Richardson v. SV Almeda I Ltd. P'ship*, 2013 WL 4680392 (Tex. App. Aug. 29, 2013) (reversing award of attorneys' fees to defendant for successfully defending against claims for constructive eviction and remanding to trial court); *Bullet Concrete Materials, Inc. v. Texoga Technologies Corp.*, 2012 WL 586676 (Tex. App. Feb. 23, 2012) (entitlement to attorneys' fees recognized where plaintiff prevailed on underlying claim for breach of lease); *HMC Hotel Properties II L.P. v. Keystone-Texas Property Holding Corp.*, 2011 WL 5869608 (Tex. App. Nov. 23, 2011), *rev'd on other grounds*, 439 S.W.3d 910 (Tex. 2014) (party prevailing on claims for slander of title and tortious interference entitled to attorneys' fees); *see also FDIC v. First Heights Bank, FSB*, 1998 WL 34367203 (E.D. Mich. 1998) (applying Texas law to award attorneys' fees to prevailing party on breach of contract claims). As well reasoned as these decisions may be, they all involved situations where parties prevailed on their underlying claims, thereby giving rise to recovery of attorneys' fees under Texas law.

For reasons already stated, Los Banos has failed to demonstrate that any default occurred. In the absence of a default, there can be no claim under Texas law, a prerequisite to the recovery of attorneys' fees. Los Banos therefore has no basis to recover attorneys' fees under the circumstances in this case.[20]

---

[20] Los Banos is also not a prevailing party under section 38.001 of the Texas Civil Practice and Remedy Code. A prevailing party is "one of the parties to a suit who successfully prosecutes the action or successfully defends against it, prevailing on the main issue, even though not to the extent of its original contention." *Fed. Deposit Ins. Corp. v. Graham*, 882 S.W.2d 890, 900 (Tex. App. 1994) (citation omitted). While Los Banos has sought to protect its interests, Los Banos has not successfully enforced its rights under the Lease.

## **CONCLUSION**

For the foregoing reasons, the court shall approve assumption and assignment of the Lease and determine the cure amount to be $0.00.  The court shall enter a separate order consistent with this Memorandum Decision.

**Signed: February 12, 2016**





John T. Gregg
United States Bankruptcy Judge